IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| BARBARA H. LEE, et al., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) <br> ) |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) Civil Action No.: 3:15-cv-357 <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE OF SENATOR MARK OBENSHAIN,
VIRGINIA COUNTY ELECTION OFFICIALS, AND VIRGINIA VOTERS**

Proposed Intervenors Senator Mark Obenshain, Tammy Alexander, Sherman Cain, Tony Guiffre, Dawn Williams, Frank Birckhead, Joan Elaine Salm, John William Salm, III, Tom Lester, and Jean Gannon hereby move to intervene as defendants in this case under Federal Rule of Civil Procedure 24.  The Court should grant the Motion because Proposed Intervenors each have a direct and tangible interest in this litigation that will necessarily be impaired if Plaintiffs prevail and that is not adequately represented by any Defendant, and because Proposed Intervenors' defense of Virginia's Voter ID law shares common questions of law and fact with the claims and defenses raised in this case.

Proposed Intervenor Senator Mark Obenshain is a candidate for reelection to the Virginia Senate in 2015 and intends to be a candidate for office in Virginia in the future.  Proposed Intervenors Alexander, Cain, and Guiffre are members of County Electoral Boards, and are responsible for implementing Virginia's voting laws and conducting the electoral process in a

1

fair and orderly fashion in their respective counties.  Proposed Intervenor Dawn Williams is a county-level General Registrar in Virginia.  Proposed Intervenors Birckhead, Salm, Salm III, Lester, and Gannon are registered voters in Virginia.  Each of the Proposed Intervenors has strong interests related to the integrity and orderly operation of Virginia's electoral process, and Plaintiffs' lawsuit unquestionably threatens to harm those interests by seeking to invalidate Virginia's Voter ID requirement and impose other sweeping and disruptive changes to the Commonwealth's electoral system.

The State officials named as Defendants will not adequately represent Proposed Intervenors' interests—as reflected in the fact that they do not oppose intervention.  The State official charged with representing the named Defendants, Attorney General Mark Herring, is not an adequate representative for Proposed Intervenors' interests: Mr. Herring has been a vocal opponent of the Voter ID law; he voted against the law when he was a Virginia Senator; he recently issued a public statement declaring the law unconstitutional; and his personal lawyer, Marc Elias, is lead counsel for the Plaintiffs in this lawsuit.  Moreover, Proposed Intervenors intend to raise arguments that the State will not raise, including the argument that the Constitution prohibits the type of race-conscious decisionmaking required under the aggressive interpretation of the Section 2 "results" test embraced by Plaintiffs.  Because the State cannot be counted on to vigorously defend this lawsuit or to raise the full range of arguments that Proposed Intervenors will raise, intervention should be granted as of right.  At a minimum, permissive intervention is plainly warranted.

**I.      THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT**

Upon filing of a "timely motion," Federal Rule of Civil Procedure 24(a)(2) requires this Court to "permit anyone to intervene" who demonstrates that he has "an interest in the subject matter of the action . . . [that] would be impaired because of the action," unless the interest is

2

"adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991). It is well settled that Rule 24(a) should be construed liberally in favor of permitting intervention. *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) ("[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process.") (citation and internal quotation marks omitted). Proposed Intervenors easily meet this liberal standard for intervention as of right.

    A.    **Proposed Intervenors' Motion is Timely**

The Motion is timely. The most important timeliness consideration is whether intervention will cause any delay that will "prejudice[] the other parties." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). But "[w]here a case has not progressed beyond the initial pleading stage, a motion to intervene is timely." *United States v. Commonwealth of Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012). That is the case here. Plaintiffs' amended complaint is not due to be filed until August 14, and Defendants' answer is not due until August 28. Proposed Intervenors thus have acted promptly and timely to protect their interests, and allowing them to intervene would cause no delay or prejudice to anyone. Proposed Intervenors will work closely with Defendants to minimize any duplicative, overlapping, or additional discovery and testimony.[1]

---

[1] Because Plaintiffs are scheduled to file an amended complaint on August 14, Proposed Intervenors cannot yet file an answer as contemplated by Fed. R. Civ. P. 24(c). Proposed Intervenors suggest that they be required to file an answer on August 28 (the same day the named Defendants' answer is due) or seven days after this Motion is granted, whichever is later.

### B. Proposed Intervenors' Strong Interests In Defending Virginia's Voter-Integrity Laws Will Be Impaired If Plaintiffs Prevail

To satisfy the standard for intervention as of right, a movant must "claim[] an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2); *see also Teague*, 931 F.2d at 260–61. Here, Proposed Intervenors each have several strong interests related to the integrity and orderly operation of Virginia's electoral process, and those interests will be directly impaired if Plaintiffs prevail.

#### 1. Senator Mark Obenshain

Senator Mark Obenshain represents Virginia's 26th district in the Virginia Senate. He is a declared candidate for office in 2015 and will be a candidate in future Virginia elections. Accordingly, he has strong personal interests that are threatened by Plaintiffs' lawsuit.

First, as an incumbent officeholder and future candidate for office in Virginia, Senator Obenshain has a direct interest in the process for determining qualified voters and votes in elections where he is a candidate, particularly those parts of the process which implicate fraudulent votes that could cancel out his supporters' votes. Courts have recognized that elected officials have a "personal interest[] in their office," and that this interest is sufficient to support intervention in a lawsuit seeking to change the parameters of elections for their office. *Johnson v. Mortham*, 915 F. Supp. 1529, 1538 (N.D. Fla. 1995); *see also Hall v. Virginia*, 276 F. Supp. 2d 528, 529 (E.D. Va. 2003) (noting the intervention of individual officeholders), *aff'd*, 385 F.3d 421 (4th Cir. 2004); *Burton on Behalf of the Republican Party v. Sheheen*, 793 F. Supp. 1329, 1338 (D.S.C. 1992) (noting intervention as of right of Congressman Robin A. Tallon), *vacated on other grounds by Statewide Reapportionment Advisory Comm. v. Theodore*, 508 U.S. 968 (1993) (mem.) & *Campbell v. Theodore*, 508 U.S. 968 (1993) (mem.); *Prince v. Kramer*, No.

4

Civ. No. 9668, 1972 WL 123242, at *2 (W.D. Wash. Apr. 21, 1972) (noting intervention of Congressman Brock Adams). A candidate's interest in defending his "chances for reelection" is so concrete that it suffices even to confer Article III standing. *Meese v. Keene*, 481 U.S. 465, 474-75 (1987); *cf. San Juan Cnty. v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) ("[P]arties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case."). Here, Senator Obenshain has an interest not only in ensuring that he is not defeated in an election through fraudulent means, but also in guarding against corruption or "the appearance of corruption in the electoral process," which would undermine public confidence in and diminish the legitimacy of his office. *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (per curiam); see also *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008) (holding that requiring photographic Voter ID not only "prevent[s] voter fraud" but also enhances "public confidence in the integrity of the electoral process," which "encourages citizen participation in the democratic process." (citing Carter-Baker Report, "Building Confidence in U. S. Elections" § 2.5 (Sept. 2005))).

Moreover, Senator Obenshain has devoted a considerable portion of his personal time and resources to advocating for voter-integrity measures—and, in fact, sponsored and carried the bill that became the Voter ID law challenged in this case. If Plaintiffs succeed in having the law declared invalid under the federal Constitution or the Voting Rights Act, all of this time and effort will have been wasted, and Senator Obenshain will be foreclosed from meaningfully pursuing similar measures in the future. Relatedly, given his close association with the Voter ID law in the public eye, a victory for Plaintiffs on their false claims of racial discrimination would inevitably tar him with the brush of sponsoring such invidious discrimination.

### 2. County Registrars and Electoral Board Members: Alexander, Cain, Guiffre, and Williams

Proposed Intervenors who are Electoral Board Members and General Registrars in Virginia have "a substantial interest in the subject matter" of this case because they are responsible for running clean, fair, and orderly elections in their respective counties and they will be "directly affected by" the injunctive relief sought by Plaintiffs. *James v. Beaufort Cnty. Bd. of Ed.*, 465 F.2d 477, 478 (4th Cir. 1972). In general, persons have a "right to intervene" in a case where they may be "directly affected by the District Court's orders." *Sixty-Seventh Minnesota State Senate v. Beens*, 406 U.S. 187, 194 (1972). And in particular, a government official has a sufficient interest to intervene if an adverse decision would make it "harder for him" to carry out his "statutory duty" or otherwise "directly affect him in the performance of his [statutory] obligations." *I.T.O. Corp. of Balt. v. Benefits Review Bd.*, 542 F.2d 903, 908 (4th Cir. 1976), *vacated on other grounds, Adkins v. I.T.O. Corp. of Baltimore*, 433 U.S. 904 (1977); *see also Bd. of Ed. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236, 241 n.5 (1968) (state officials have a "personal stake in the outcome of" a case if it may directly affect them in carrying out their duties, especially if they may be forced to "violate[] their oath" by acting contrary to their sworn obligations). *Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977) ("A state official has a sufficient interest [to intervene] in adjudications which will directly affect his own duties and powers under the state laws." (citing *Hines v. D'Artois*, 531 F.2d 726, 738 (5th Cir. 1976))). That is the case here.

In each Virginia county, the Electoral Board Members and General Registrars must swear an oath to faithfully carry out "the duties of [their] office," Va. Code Ann. § 24.2-120, including "the preparation of ballots, the administration of absentee ballot provisions, the conduct of the election, and the ascertaining of the results of the election," *id.* § 24.2-109. If Plaintiffs prevail in

their lawsuit, the Electoral Board Members and County Registrars will no longer have the "power" to require a Voter ID to prevent fraud during the "conduct of the election," and will instead be saddled with a "duty" not to enforce the Voter ID requirement. Under the black-letter law discussed above, any such limitation on the exercise of their official duties is the paradigmatic interest justifying intervention—indeed, it is an interest that is functionally the same as that of the State Defendants themselves.

In addition, Electoral Board Members and General Registrars would be significantly burdened by the requirement to engage in new training and adopt new procedures in response to whatever relief Plaintiffs may obtain. State law provides that "[e]ach electoral board . . . shall conduct training of the officers of election consistent with the standards set by the State Board." Va. Code Ann. § 24.2-115. The Electoral Board Members who seek to intervene here have already conducted many hours of training, and the General Registrars who seek to intervene here have already undergone considerable training, in accordance with Virginia's existing laws. To conduct and undergo retraining for a new regime would require considerable time, effort, and inconvenience.

Finally, if Plaintiffs prevail, it may expose these officials to lawsuits in their personal capacities for carrying out their sworn duty to faithfully conduct elections. If this case sets a precedent "clearly establish[ing]" that even a neutral and non-discriminatory Voter ID requirement is unlawful, then Electoral Board Members and General Registrars could be held personally liable for enforcing other sensible, nondiscriminatory measures to verify voter identity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### 3. Virginia Voters: Birckhead, Salm, Salm III, Lester, and Gannon

Individual Virginia voters have a strong personal interest in this case because they have a right not to have their votes canceled out by fraudulent ballots. The Supreme Court has long recognized that individuals have the "right to a vote" that is free of "dilution by a false tally." *Baker v. Carr*, 369 U.S. 186, 208 (1962). That interest will be impaired if Plaintiffs' challenge succeeds, because the elimination of Voter ID will increase voter fraud and dilute the legitimate votes of Proposed Intervenors. Every unqualified vote inherently disenfranchises a qualified voter by cancelling out his or her vote. Thus, the increased potential for unqualified votes caused by invalidating Voter ID directly threatens Proposed Intervenors' right to have their vote counted.

In addition, if Plaintiffs' claims were to succeed, individual voters would face the same sort of burdens that Plaintiffs claim unconstitutionally infringe on the right to vote. Poll workers and county election officials would need to be retrained, and the voting public would need to be educated about whatever new procedures may be ordered. This would likely lead to confusion among voters and poll workers, which would in turn cause longer lines and wait times at polling places, which under Plaintiffs' own theory would constitute a significant burden on the individual right to vote. *See* Compl. ¶ 84.

### C. Defendants Will Not Adequately Protect Proposed Intervenors' Interest In The Integrity of Virginia Elections

The State officials who are the nominal Defendants in this case cannot and will not adequately represent the Proposed Intervenors' interests. Supreme Court precedent dictates that the burden to prove inadequacy "should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Most obviously, where there is reason to believe that a defendant may provide a "less vigorous" defense than the proposed intervenors or

"when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical," another party "should be entitled to intervene" to represent those interests vigorously. *Teague*, 931 F.2d at 262; *United Guaranty Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987). Thus, the entitlement to intervention is crystal clear when putative intervenors find themselves at "cross purposes" with the defendants. *Stuart v. Huff*, 706 F.3d 345, 349, 352 (4th Cir. 2013).

Here, the Proposed Intervenors are at "cross purposes" with the Attorney General, who is in charge of defending this lawsuit.[2] He voted against Virginia's Voter ID law when he was in the State Senate; he recently declared it unconstitutional in a public statement; and his own personal attorney is now lead counsel for the Plaintiffs in this case. One need not question Mr. Herring's professionalism and integrity to conclude that his defense "might be less vigorous" than that of Proposed Intervenors. *Teague*, 931 F.2d at 262. At a minimum, the tension between his vociferous public opposition to the law and his official duty to defend it gives rise to a clear public perception of compromised advocacy.

Specifically, before his election as Attorney General, Mr. Herring served in the Virginia Senate where he led the opposition to the Voter ID law challenged in this suit and voted against its passage. The chief sponsor of the bill was State Senator (and Proposed Intervenor) Mark Obenshain, who also happened to be Herring's opponent in the 2013 attorney general's race. Herring won the 2013 election by slightly more than 900 votes following a highly contested

---

[2] Although the Attorney General has hired outside counsel to defend the suit, he remains the ultimate decisionmaker because he is statutorily authorized to "represent the interests of the Commonwealth" in all controversies in federal court, Va. Code Ann. § 2.2-513, and controls all expenditures for outside counsel, *id*. § 2.2-510(2)-(3). Indeed, the fact that the Attorney General felt the need to hire outside counsel (albeit under his supervision) presumably reflects his acknowledgement that there are legitimate grounds to question the vigor and adequacy of his defense of a law that he has publicly condemned as unconstitutional.

statewide recount. Herring's attorney in that recount proceeding was Marc Elias—the same attorney who represents Plaintiffs in the present challenge.[3]

Most important, Attorney General Herring has publicly opined that the law is "unconstitutional" because of its alleged "unequal treatment of voters."[4] Indeed, in his announcement appointing outside counsel to litigate the case, the Attorney General trumpeted his hostility to the Voter ID law: "Nothing is more fundamental than the right to vote *and my position on these issues is clear. I have consistently opposed these measures and worked hard in the legislature to combat them*."[5] Thus, the budget, related resources, and ultimate control over the Defendants' legal strategy are in the hands of an office led by an avowed opponent of the law under challenge. *Cf. Teague*, 931 F.2d at 262 (holding that intervention as-of-right is required where there is a doubt that the necessary funds will be available to mount the strongest defense possible). As a result, the Attorney General cannot be relied upon to defend this suit in the same "vigorous" manner as Proposed Intervenors. *Id*.

Moreover, the Attorney General has demonstrated a consistent propensity—particularly in voting-rights cases—not to adhere to his statutory duty to defend the Commonwealth's laws, Va. Code Ann. § 2.2-513. For example, the Attorney General represents the same Defendants and other state officials in the congressional redistricting case filed in this Court and currently on

---

[3] *See* Laura Vozella & Ben Pershing, *Obenshain Concedes Virginia Attorney General's Race to Herring*, Wash. Post, Dec. 18, 2013, *available at* http://www.washingtonpost.com/local/virginia-politics/obenshain-to-concede-virginia-attorney-generals-race-on-wednesday-in-richmond/2013/12/18/fe85a31c-67e7-11e3-8b5b-a77187b716a3_story.html.

[4] Markus Schmidt, *Va. Attorney General Warns Voter ID Definition May Be Unconstitutional*, Rich. Times-Dispatch, Aug. 5, 2014, *available at* http://www.richmond.com/news/virginia/article_baffec5c-1cc7-11e4-b8d9-001a4bcf6878.html.

[5] Travis Fain, *Herring Hires Outside Counsel for Virginia Voter ID Case,* Daily Press, June 19, 2015 (emphasis added), *available at* http://www.dailypress.com/news/politics/dp-nws-voting-lawsuit-thor-20150619-story.html.

appeal in the United States Supreme Court, *Page v. Virginia State Board of Elections*, No. 3:13-cv-00678. The *Page* plaintiffs are Democratic voters represented by Mr. Elias, the same counsel shared by Mr. Herring and the Plaintiffs here. Mr. Herring's predecessor as Attorney General initially defended the state statute challenged in *Page*, but this Court nonetheless allowed Republican members of Congress to intervene to defend that statute, concluding by implication that the Attorney General did not adequately represent their interests. *See* Order, *Page v. Virginia State Board of Elections*, No. 3:13-cv-00678 (DE 26). After the district court decision in the *Page* case, Mr. Herring reversed position and sided with the Democratic plaintiffs, contending in the Supreme Court that the General Assembly's duly enacted, pro-Republican congressional redistricting statute violated the Fourteenth Amendment. *See* Defs.' Br., *Page v. Virginia State Board of Elections*, No. 3:13-cv-00678 (DE 145); Defs.' Reply, *Page v. Vorgomoa State Board of Elections*, No. 3:13-cv-00678 (DE 153).

Similarly, in the recent same-sex marriage litigation, Mr. Herring initially defended Virginia's marriage laws but then reversed course in the middle of the case and began attacking the laws on appeal as unconstitutional.[6] Notably, he justified that decision based on his opinion that Virginia's marriage laws were unconstitutional—the same opinion he has voiced about the Voter ID law under challenge here. *See infra* note 4. It thus appears likely that he will not only fail to defend Virginia's Voter ID law with sufficient "vigor," but that he may decide to abandon it altogether.

---

[6] *See Bostic v. Schaefer*, 760 F.3d 352, 369 (4th Cir. 2014) ("Attorney General Mark Herring . . . submitted a formal change in position and refused to defend the Virginia Marriage Laws, although Virginia continues to enforce them."); *see also* Timothy Williams & Trip Gabriel, *Virgina's New Attorney General Opposes Ban on Gay Marriage*, N.Y. Times, Jan. 24, 2014, at A12, *available at* http://www.nytimes.com/2014/01/24/us/new-virginia-attorney-general-drops-defense-of-gay-marriage-ban.html.

Indeed, even Plaintiffs' counsel has implicitly acknowledged that, in voting-rights cases, the Attorney General will not provide representation adequate to forestall intervention. In a redistricting case involving yet another group of Democratic voters represented by Mr. Elias, this Court recently granted intervention to the Virginia House of Delegates to defend the Commonwealth's duly enacted state-level redistricting plan. *See* Order, *Bethune-Hill v. State Board of Elections*, No. 14-cv-00852 (DE 26). Mr. Elias and the Attorney General did not object to the intervention motion, thus tacitly conceding that outside intervention was needed to ensure a vigorous defense. *See* Plfs.' Resp. to Motion to Intervene, *Bethune-Hill v. State Board of Elections*, No. 14-cv-00852 (DE 22) (filing by Mr. Elias stating "no objection to the Motion to Intervene").

Moreover, wholly apart from the Attorney General, the named Defendants themselves have also demonstrated a lack of interest in defending Virginia's statutory provisions protecting the integrity of the voter rolls. Defendants include the Commissioner and individual members of the Virginia State Board of Elections. Each is charged with administering elections in Virginia. But despite its clear duty to uphold the integrity of Virginia's elections, the Board is currently considering making optional the requirement for prospective voters to certify upon registration that they are (1) U.S. citizens and (2) not convicted felons. The Board is persisting in this plan despite the proposal's being met with "universal skepticism from registrars and elected officials."[7] As the *Washington Post* has noted, the Board's proposal appears to be a "way of inflating Democratic voter rolls ahead of the 2016 presidential election."[8] Fellow Defendant

---

[7] *See* Laura Vozella, *Questions About Citizenship and Felony Status Would Become Optional on Virginia Voter Registration Forms*, Wash. Post, July 28, 2015, *available at* http://www.washingtonpost.com/local/virginia-politics/voter-registration-changes-proposed-for-va-draw-hundreds-to-hearing/2015/07/28/f42af2ca-3566-11e5-94ce-834ad8f5c50e_story.html.

[8] *Id.*

Edgardo Cortes, the current Commissioner of the Department of Elections and an appointee of Governor McAuliffe, has publicly supported the proposal.[9] Since the named Defendants have sought to weaken Virginia's voter-protection laws in a context having a perceived partisan effect, there is at least a credible reason to believe that they will not mount a vigorous defense in the present case. By contrast, Proposed Intervenors have no such qualms about protecting the integrity of the ballot.

Finally, Proposed Intervenors intend to raise arguments that the State cannot and will not raise. Specifically, Proposed Intervenors will argue that the aggressive view of the Section 2 "results" test embraced by Plaintiffs raises serious constitutional concerns under the Equal Protection Clause. Plaintiffs' claims under Section 2 of the Voting Rights Act are based on an expansive notion of disparate-impact liability that overrides reasonable and neutral laws to favor certain racial groups. Under Plaintiffs' theory, the Voting Rights Act would "place a racial thumb on the scales, often requiring [defendants] to evaluate the racial outcomes of their policies, and to make decisions based on (because of) those racial outcomes"—a "type of racial decisionmaking" that is clearly "discriminatory." *Ricci v. DeStefano*, 557 U.S. 557, 594 (2009) (Scalia, J., concurring); *see also Georgia v. Ashcroft*, 539 U.S. 461, 491 (2003) (Kennedy, J., concurring) (noting that "considerations of race" to achieve racial targets under the Voting Rights Act could "doom a redistricting plan under the Fourteenth Amendment"). Proposed Intervenors will argue that Plaintiffs' interpretation of the Voting Rights Act would violate the Equal Protection Clause by sacrificing Virginia's nondiscriminatory ballot-integrity measures for

---

[9] Travis Fain, *Backlash over Boxes: Intent Questioned on Voter Registration Form Edits*, Daily Press, July 28, 2015, *available at* http://www.dailypress.com/news/politics/dp-nws-voter-registration-20150728-story.html.

the sake of benefiting particular racial groups. The State will not pursue this argument because it conflicts with the State's ability to pursue various race-based initiatives.

For all these reasons, Proposed Intervenors have more than overcome their "minimal" burden of showing that the existing parties cannot adequately represent their interests, *Trbovich*, 404 U.S. at 538 n.10, and the Court should grant the Motion.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court nonetheless determines that Proposed Intervenors are not entitled to intervene as of right, it should grant permissive intervention. Federal Rule of Civil Procedure 24(b) authorizes the Court to grant permissive intervention to "anyone . . . who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Proposed Intervenors satisfy this requirement because their defense of the Virginia Voter ID law obviously involves *all* of the same questions of law and fact as Plaintiffs' challenge to that law. And, as explained, their intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see supra* Part I.A. Particularly given the importance of the issues involved and the strong appearance of a conflict of interest on the part of the Attorney General, there is strong reason for this court to exercise its discretion to grant permissive intervention.

## CONCLUSION

The Court should grant this motion to intervene as of right or, in the alternative, permissive intervention.

Dated: August 14, 2015				Respectfully submitted,


						/s/ Mark R. Lentz
						Michael A. Carvin (*pro hac vice* pending)
						Anthony J. Dick (*pro hac vice* to be filed)
						Michael Murray (*pro hac vice* to be filed)
						Stephen A. Vaden (*pro hac vice* pending)
						Mark R. Lentz (VSB No. 77755)
						JONES DAY
						51 Louisiana Avenue, N.W.
						Washington, DC 20001
						Tel: (202) 879-3939
						Fax: (202) 626-1700
						macarvin@jonesday.com
						ajdick@jonesday.com
						mmurray@jonesday.com
						svaden@jonesday.com
						mrlentz@jonesday.com

						*Counsel for Proposed Intervenors*

## CERTIFICATE OF SERVICE

I certify that on August 14, 2015, a copy of the Memorandum in Support of the Motion to Intervene was filed electronically with the Clerk of Court using the ECF system which will send notification to the following ECF participants:

Marc Erik Elias
Bruce V. Spiva
Elisabeth C. Frost
Aria C. Branch
Amanda R. Callais
PERKINS COIE, LLP
700 13th Street, N.W., Suite 600
Washington, D.C. 20005-3960
Tel. (202) 434-1627
Fax (202) 654-9106
MElias@perkinscoie.com
BSpiva@perkinscoie.com
EFrost@perkinscoie.com
ABranch@perkinscoie.com
ACallais@perkinscoie.com

Joshua L. Kaul
PERKINS COIE, LLP
1 East Main Street, Suite 201
Madison, WI 53703-5118
Tel. (608) 663-7460
Fax (608) 283-1007
JKaul@perkinscoie.com

*Counsel for Plaintiffs*

Mark Fernlund (Thor) Hearne, II
ARENT FOX LLP
112 S. Hanley Road
Clayton, MO 63105
Tel. (314) 296-4000
Fax (202) 857-6395
thor.hearne@arentfox.com

Stephen Gerard Larson
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel. (213) 443-7616
Fax (202) 857-6395
stephen.larson@arentfox.com

Dana Johannes Finberg
ARENT FOX LLP
55 2nd Street, 21st Floor
San Francisco, CA 94150
Tel. (650) 798-0375
Fax (650) 798-0310
dana.finberg@arentfox.com

*Counsel for Defendants*


Dated: August 14, 2015

        /s/ Mark R. Lentz
        Mark R. Lentz
        *Counsel for Proposed Intervenors*