IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)

| | |
|---|---|
| BARBARA LEE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:15CV357-HEH |
| ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE
OF SENATOR MARK OBENSHAIN, VIRGINIA COUNTY ELECTION OFFICIALS,
AND VIRGINIA VOTERS**

Defendants Virginia State Board of Elections, James B. Alcorn, Dr. Clara Belle Wheeler, Singleton B. McAllister, Virginia Department of Elections, and Edgardo Cortés (collectively "Defendants") oppose the Motion to Intervene filed by Senator Mark Obenshain, Tammy Alexander, Sherman Cain, Tony Guiffre, Dawn Williams, Frank Birckhead, Joan Elaine Salm, John William Salm, III, Tom Lester, and Jean Gannon (collectively "Proposed Intervenors").

As explained below, Defendants share Proposed Intervenors' stated interest in "the integrity and orderly operation of Virginia's electoral process." *See* Memorandum in Support of Motion to Intervene ("Memorandum in Support") (D.I. 35) at p. 4.  Moreover, Defendants and their counsel can and will zealously protect that shared interest.  Finally, granting Proposed Intervenors' motion will create an unreasonable risk of inefficiency and delay in an important case that should be litigated as expeditiously as practicable, given the need for a decision prior to the looming November 2016 presidential elections.

## I. INTRODUCTION

Plaintiffs commenced this litigation challenging certain provisions of Virginia's election laws on June 11, 2015. Mark R. Herring (the "Attorney General") is Virginia's Attorney General and, as such, is obligated to "represent the interests of the Commonwealth, its departments, boards, institutions and commissions in matters before or controversies with the officers and several departments of the government of the United States." *See* Va. Code Ann. § 2.2-513. The Attorney General has been faithfully and zealously representing the interests of the Commonwealth by defending Virginia's laws -- including the statutes Plaintiffs have challenged in this case.

Virginia state senator Mark Obenshain and nine other individuals now want to intervene and participate in this lawsuit as defendants.[1] Senator Obenshain, and the other Proposed Intervenors, say this Court must allow them to intervene because they "have a direct and tangible interest in this litigation that will necessarily be impaired if Plaintiffs prevail and that [the intervenors' interest] is not adequately represented by any Defendant." *See* Memorandum in Support at p.1. Senator Obenshain and the others want to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, under Rule 24(b) allowing permissive intervention.

---

[1] Contrary to Proposed Intervenors' representation in their moving papers that "Defendants have consented to this Proposed Intervention," *see* Motion to Intervene (D.I. 34) at p. 1, Defendants have given no such consent. Before filing their motion, counsel for Proposed Intervenors contacted Defendants' counsel and asked whether Defendants would support the motion to intervene. Defendants' counsel said they did not anticipate recommending Defendants oppose the motion. But after receiving and reading the motion -- which unfortunately reads like a partisan press release by a candidate for office attacking a political opponent (as opposed to a reasoned legal argument in favor of the relief sought) -- they called counsel for Proposed Intervenors to tell them they would oppose intervention.

The fundamental premise underlying Proposed Intervenors' motion is their notion that the Attorney General (and the outside counsel the Attorney General retained) will not "adequately" defend the laws of Virginia. This premise is entirely without merit. The Attorney General has faithfully defended, and will continue to defend, Virginia's laws. Not only that, allowing these additional individuals to intervene will unnecessarily delay resolution of this litigation and will increase its cost -- a cost ultimately borne by Virginia taxpayers.

## II.    BACKGROUND

Justice Frankfurter famously cautioned against the Supreme Court (and lower federal courts) being thrown into the "political thicket." *Colegrove v. Green*, 328 U.S. 549, 556 (1946). And that is what Proposed Intervenors ask this Court to do here. But because the issue before this Court is whether the challenged provisions of Virginia's election law are, or are not, constitutional, political agendas or rivalries should not color this litigation.[2]

Proposed Intervenors' moving papers rely on numerous factual inaccuracies. Once those inaccuracies are identified and corrected, the premise for Proposed Intervenors' motion falls apart.

### A.    *Inaccuracies Concerning Attorney General Mark R. Herring.*

A recurrent theme in Proposed Intervenors' papers is the supposed unwillingness and/or inability of the Attorney General -- the state official charged with representing the named

---

[2] Senator Obenshain issued a press release shortly after the filing of the Motion to Intervene. *See* Exhibit 1 (August 14, 2015 Press Release). This press release, like Proposed Intervenors' motion, attacks the Attorney General by accusing him of not zealously defending the Virginia voter ID statute at issue in this litigation. Senator Obenshain "is a candidate for reelection to the Virginia Senate in 2015 and intends to be a candidate for office in Virginia in the future." *See* Memorandum in Support at p. 1. Senator Obenshain also unsuccessfully ran against Mr. Herring for the Office of Attorney General in the November 2013 elections. *See* Exhibit 2 (December 18, 2013 *Washington Post* article "Obenshain concedes Virginia attorney general's race to Herring"). That Proposed Intervenors' motion is grounded and driven primarily by a political agenda -- as opposed to sound legal theory -- is glaringly obvious.

3

Defendants in this litigation -- to zealously defend the Virginia statutes at issue in this case. These accusations have little basis in fact and are easily refuted.

For example, Proposed Intervenors state that the Attorney General "has demonstrated a consistent propensity -- particularly in voting-rights cases -- not to adhere to his statutory duty to defend the Commonwealth's laws." *See* Memorandum in Support at p. 10. This is untrue. As a threshold matter, the statute cited by Proposed Intervenors states that the Attorney General "***shall represent the interests*** of the Commonwealth, its departments, boards, institutions and commissions in matters before or controversies with the officers and several departments of the government of the United States." *See* Va. Code Ann. § 2.2-513 (emphasis added). The "duty" Proposed Intervenors accuse the Attorney General of dodging (the "duty to defend the Commonwealth's laws") is nowhere to be found in that or any other statute they cite.

The reality is that the Attorney General has consistently represented the interests of "the Commonwealth, its departments, boards, institutions and commissions" in voting-rights litigation, including in this and other cases. In the congressional redistricting case referenced in Proposed Intervenors' moving papers (*Page v. State Board of Elections*, No, 3:13cv00678-REP-GBL-BMK), the Office of the Attorney General actively defended the State Board of Elections, and was the Board's counsel at the May 2014 trial. It was only after the three-judge panel held that the congressional districts violated the Voting Rights Act that the Attorney General chose not to appeal the decision because there was no valid basis to do so.[3]

---

[3] Proposed Intervenors make much of the fact that in *Page*, the three-judge panel granted a motion for leave to intervene filed by Republican members of Congress. *See* Memorandum in Support at p. 11. Proposed Intervenors fail to tell this Court that the intervention motion in *Page* was unopposed by plaintiffs and defendants, *see* Exhibit 3 (*Page* D.I. 24), and that neither the motion nor the panel's Order granting leave to intervene provide any basis whatsoever for Proposed Intervenors' conclusory assertion that the "Court…conclud[ed] by implication that the Attorney General did not adequately represent their interests." *Id.*

4

As a further example of the Attorney General's supposed inability and/or unwillingness to defend Virginia's laws, Proposed Intervenors claim that he "initially defended Virginia's marriage laws but then reversed course in the middle of the case and began attacking the laws on appeal as unconstitutional." *See* Memorandum in Support at p. 11.  Proposed Intervenors have the facts wrong again.  Attorney General Herring never defended the laws banning same-sex marriage -- it was his predecessor (Republican Kenneth T. 'Ken" Cuccinelli, II) who defended the laws.  After he took office, Attorney General Herring reasonably concluded that the marriage laws likely were unconstitutional -- a conclusion the United States Supreme Court subsequently vindicated in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) -- and that it was not in the best interests of the Commonwealth or its citizens to defend the laws.  From this false premise, Proposed Intervenors draw the improper conclusion that it "appears likely that [the Attorney General] will not only fail to defend Virginia's Voter ID law with sufficient 'vigor,' but that he may decide to abandon it altogether." *Id*.  The two issues have nothing to do with each other.

Proposed Intervenors also claim that the Attorney General publicly declared unconstitutional the voter ID law at issue in this case.  A review of the August 5, 2014 article cited by Proposed Intervenors demonstrates that the Attorney General's Office, as part of a regulatory review of a proposed definition contained in a regulation designed to execute the voter ID law, merely "warned state election officials that their new definition of what constitutes a valid photo ID…would likely lead to unconstitutionally unequal treatment of voters." *See* Exhibit 4 (August 5, 2014 *Richmond Times-Dispatch* article).  As the article points out, the Board of Elections was scheduled to meet to discuss the problematic definition following a 21-day public comment period on the issue. *Id*.  Proposed Intervenors fail to tell the Court that the Board of Elections subsequently changed the problematic definition to address these concerns.

This is a far cry from Proposed Intervenors' statement that the Attorney General declared the voter ID law unconstitutional.[4]

But the most compelling demonstration of Attorney General Herring's commitment to faithfully defend the Commonwealth in this challenge is his decision to retain outside counsel with particular expertise in this type of election litigation. Contrary to Proposed Intervenors' accusation that the hiring of outside counsel "reflects [the Attorney General's] acknowledgement that there are legitimate grounds to question the vigor and adequacy of his defense" of the voter ID law, *see id.*, the simple and non-paranoid answer is that the hiring of outside counsel was done precisely to allay such concerns and the types of partisan arguments Proposed Intervenors are now making. Defendants' counsel is highly qualified to defend the statute at issue here, as shown by a description of the backgrounds of the Arent Fox, L.L.P. partners on the case:

- Mark F. (Thor) Hearne has won key election law cases around the nation over the past twenty years. He served as national election counsel to President George W. Bush's 2004 reelection campaign and managed the campaign's response to more than seventy-five federal and state election lawsuits -- including numerous appeals to state supreme courts, federal courts of appeal, and an emergency writ to the United States Supreme Court. The ultimate outcome in every one of these cases was favorable to the campaign's position. Mr. Hearne was recently selected by the *National Law Journal* as one of the nation's Top Fifty "Litigation Trailblazers" of 2014 after his precedent-setting work "fighting for land-holders, small businesses, and farmers against the government's right to take their property," and ensuring they are fairly compensated when it does. The *National Law Journal* reported that Mr. Hearne was recognized as one of the best litigators in the country for demonstrating a "deep passion and perseverance," and "having achieved remarkable successes along the way." Mr. Hearne served as counsel in *Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008), for the leadership of United States Senate and House of Representatives in their amicus brief filed in support of the Indiana Secretary of State. Mr. Hearne currently serves as lead counsel representing a Republican challenge to Arizona's state legislative redistricting plan in *Harris v. Arizona Independent Redistricting Commission*, which he will argue before the U.S. Supreme Court this December. Mr. Hearne was senior advisor to Secretary of State James A. Baker on the Carter-Baker Commission on federal election reform.

---

[4] If anything, it is merely evidence that the Attorney General is keenly interested, as any public official should be, in enforcing the law in a constitutional manner.

- Former U.S. District Court Judge Stephen G. Larson is chair of Arent Fox's Complex Litigation practice group, which includes both civil and criminal litigation. Judge Larson brings more than twenty-four years of litigation experience, including serving as an Assistant U.S. Attorney in the Criminal Division in Los Angeles, where he led twenty-four criminal trials and received the US Department of Justice Director's Award for Superior Performance. A respected and accomplished jurist, he served as a federal judge for nearly a decade, first as a U.S. Magistrate Judge, and then upon elevation, as a US District Judge in the Central District of California, where he adjudicated over a thousand federal cases. During that time, the Chief Judge of the Ninth Circuit Court of Appeals designated him to sit on seven appellate panels, on which he participated in the decision of thirty-seven Ninth Circuit cases. Since leaving the federal bench to resume private practice, he has quickly emerged as one of California's foremost litigators in white collar and commercial litigation defense, with a string of dismissals in highly complex criminal and civil matters. Judge Larson was featured earlier this month in the *Los Angeles Business Journal* as one of Southern California's "Most Influential" white collar lawyers.

- Dana J. Finberg is a former law clerk in the United States District Court for the Eastern District of Virginia, having served in that position for District Judge Robert E. Payne in 1992-1993 (in both the Norfolk and Richmond divisions). Subsequent to his clerkship, Mr. Finberg has appeared as counsel of record in over 100 cases in the Eastern District of Virginia, including voting rights, intellectual property and complex civil litigation matters. He has first-chaired over a dozen trials in federal and state courts throughout the United States, including both jury and bench trials. He has previously represented both the cities of Hampton and Newport News, Virginia, in Voting Rights Act litigation.

Defendants' counsel intend to zealously defend the Virginia voter ID statute and other laws at issue in this case and to exercise their best professional judgment -- which has been developed through years of experience litigating voting rights cases and other complex litigation matters -- in doing so. As the Speaker of the Virginia House of Delegates stated when the Attorney General announced the engagement of outside counsel in this case, "[t]he Speaker is glad to see that the Attorney General recognizes the validity of Virginia's photo ID law and agrees that it deserves to be fully defended in court…." *See* Exhibit 5 (June 19, 2015 *Daily Press* article "Herring hires outside counsel for Virginia voter ID case"). It is too bad that Proposed Intervenors have chosen to make unfounded accusations against the Attorney General instead of reaching the same common-sense conclusion as the Speaker: the hiring of outside counsel reflects the Attorney General's intent to fully defend Virginia's voter ID law.

Finally, one of Proposed Intervenors' most egregious mischaracterizations directed towards the Attorney General is the oft-repeated statement that the Attorney General's "personal lawyer, Mark Elias, is lead counsel for the plaintiffs in this lawsuit." *See, e.g.,* Memorandum in Support at p. 2, 11. While Mr. Elias represented Attorney General Herring in 2013 in connection with a recount requested by proposed intervenor Senator Obenshain, that representation ended when Senator Obenshain conceded defeat in December 2013. There was no attorney-client relationship between the Attorney General and Mr. Elias before the 2013 recount, and there has been no ongoing relationship since.

### B. *Inaccuracies Concerning the Named Defendants.*

Proposed Intervenors also make numerous false assertions concerning the named Defendants in the case, including the accusation that they "have also demonstrated a lack of interest in defending Virginia's statutory provisions protecting the integrity of the voter rolls." *See* Memorandum in Support at p. 12. First, and foremost, the named Defendants have a *de minimis* role in the actual conduct of this litigation. They find themselves nominal defendants because, as Proposed Intervenors correctly point out, they are charged with administering elections in Virginia. *Id*. However, this does not mean that Defendants have the ability to make decisions regarding whether the Virginia laws at issue in this case will be zealously defended.

Proposed Intervenors go on at some length regarding a proposal considered by the Board of Elections characterize as a non-material omission an applicant's failure to certify that they are: (a) U.S. citizens; and (b) not convicted felons. *Id*. at 12-13. But they have neglected to inform the Court that the Board abandoned that proposal on August 11, 2015, ***three days before*** Proposed Intervenors filed their Motion for Leave to Intervene. *See* Exhibit 6 (August 11, 2015 Washington Post article "Voter registration changes that worried GOP are delayed in Virginia").

This omission speaks volumes, undermining Proposed Intervenors' unfair suggestion that Defendants will ignore their oaths of office and fail to defend Virginia law.

Finally, Proposed Intervenors also assert that they "intend to raise arguments that the State will not raise…." *See* Memorandum in Support at 2. This is sheer speculation on their part because at this point in the litigation, even before responsive pleadings have been filed, Proposed Intervenors simply have no idea what arguments Defendants intend to raise or not.

### III. ARGUMENT

#### A. *Fourth Circuit Standard for Intervention as of Right.*

"In the Fourth Circuit, a party seeking intervention as of right must demonstrate, 'first, an interest sufficient to merit intervention; second, that without intervention, its interest may be impaired; and third, that the present litigants do not adequately represent its interest.'" *Cooper Tech., Co. v. Dudas*, 247 F.R.D. 510, 514 (E.D. Va. 2007) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). Proposed Intervenors must satisfy all three prongs of this test to prevail on their motion. *See Westinghouse*, 542 F.2d at 216. The nature of the interest under Federal Rule of Civil Procedure 24 is a "significantly protectable interest." *See Dudas,* 247 F.R.D. at 514 (quoting *Donaldson v. United States*, 400 U.S. 517, 542 (1971)). This means that the "putative intervenor's claim must bear a close relationship to the dispute between the existing litigants and therefore must be direct, rather than remote or contingent." *Id.* (quoting *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109 (E.D. Va. 1993).

A putative intervenor must demonstrate why its interest would be "impaired or impeded without intervention" in order to intervene as a matter of right. *Linkous v. Am. Alternative Ins. Corp.*, 2011 WL 4894233, at *2 (W.D. Va. Oct. 13, 2011) (denying party intervention of right because it wanted "a seat at the table"). "When the party seeking intervention has the same

9

ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *United States v. B.C. Enter., Inc.*, 667 F. Supp. 2d 650, 656 (E.D. Va. 2009) (quoting *Westinghouse*, 542 F.2d at 216).

### B. Proposed Intervenors Can Demonstrate an Interest Sufficient to Merit Intervention.

For the purposes of this Opposition, Defendants do not challenge Proposed Intervenors' assertion that they "each have several strong interests related to the integrity and orderly operation of Virginia's electoral process…." *See* Memorandum in Support at p. 4. This, by itself, is insufficient to justify the granting of their motion.[5] As explained below, because Proposed Intervenors cannot satisfy the second or third prongs of the Fourth Circuit's standard for intervention as of right, their motion should be denied.

### C. Because Defendants Can and Will Adequately Represent Proposed Intervenors' Interests, Proposed Intervenors' Interests Will Not Be Impaired if Their Motion is Denied.

Proposed Intervenors' conclusory assertions that their interests may be impaired if they are not allowed to intervene are intertwined with their arguments that Defendants either can or will not adequately represent their interests. Accordingly, Defendants will address these prongs together.

As the Fourth Circuit has explained, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or

---

[5] In *Virginia v. Westinghouse Elec. Corp.*, the Fourth Circuit assumed that the first prong of the test for intervention as of right had been satisfied, but nevertheless went on to affirm the district court's denial of the motion for leave to intervene. 542 F. 2d at 216 ("For purposes of analyzing the second and third requisites of Rule 24(a)(2), we assume that Virginia's interest is adequate.").

nonfeasance." *Westinghouse*, 542 F.2d at 216. Defendants have the same "ultimate objective" as Proposed Intervenors: upholding the integrity and orderly operation of Virginia's electoral process and defending the Virginia laws at issue against the constitutional challenges plaintiffs have asserted. For example, the County Registrars and Electoral Board Members seeking to intervene (Alexander, Cain, Guiffre and Williams) assert that they have an interest in the subject matter of this litigation because they "are responsible for running clean, fair, and orderly elections in their respective counties and they will be 'directly affected by' the injunctive relief being sought by Plaintiffs." *See* Memorandum in Support at p. 6. Defendant Board of Elections is charged by statute with the duty to "supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." *See* Va. Code Ann. § 24.2-103. Clearly, the interests of these Proposed Intervenors on the one hand, and of the Board of Elections on the other, are practically identical.[6]

The interests and objectives of Defendants and Proposed Intervenors are, for all practical purposes, the same. The resulting legal presumption is that Defendants can and will ably represent those interests and objectives. Thus, Proposed Intervenors must try to demonstrate collusion or nonfeasance. They have offered no evidence of collusion. And nonfeasance is defined as: "Nonperformance of some act which ought to be performed, omission to perform a

---

[6] These Proposed Intervenors also assert that they would be "significantly burdened" by any requirement to "engage in new training and adopt new procedures in response to whatever relief Plaintiffs may obtain." Of course, any requirement to engage in new training or adopt new procedures would also impose a burden on Defendants, and in particular the Board of Elections, as it is required to set new standards in the event that plaintiffs prevail in obtaining injunctive relief. *See* Va. Code Ann. § 24.2-115. Because each locality in Virginia is required to certify before the annual general election that the election officers have been properly trained, *see* Va. Code Ann. § 24.2-103, training takes place on an annual basis as a matter of course. Consequently, Proposed Intervenors' claim that they will be "significantly burdened" is an overstatement.

required duty at all, or total neglect of duty." Black's Law Dictionary 950 (5th Ed. 1979). Stripped of its partisan rhetoric (the gloss Proposed Intervenors use to embellish their factually barren claim of nonfeasance on the part of Defendants and the Attorney General) Proposed Intervenors' position is reduced to little more than conjecture and speculation, couched in conclusory language. Defendants have amply demonstrated that Proposed Intervenors' attempts to show that their interests are adverse from those of Defendants, and that Defendants will fail to carry out their duties as they relate to the subject matter of this lawsuit, are based on an incomplete and misleading recitation of the relevant background. *See* pp. 4-9, *supra*. In the face of this showing by Defendants, Proposed Intervenors' conclusory arguments must fail. *See, e.g.*, *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (4th Cir. 1973) (affirming district court's denial of motion to intervene where movant relied on "conclusory language only").

### D. Granting Proposed Intervenors' Motion Creates a Significant Risk of Inefficiency and Delay.

Because they cannot satisfy all three prongs of the Fourth Circuit's standard for intervention as of right, Proposed Intervenors' motion should be denied. The motion should also be denied because granting the motion creates an unreasonable risk of unduly complicating the litigation and delaying the resolution of plaintiffs' challenge to the constitutionality of the Virginia laws at issue. The need for this litigation to proceed in an efficient and expeditious manner is particularly acute in light of the November 2016 elections which, of course, are expected to attract heavy voter turnout.

In *Westinghouse*, the Fourth Circuit explained that "the potential unmanageability of the … litigation should we allow intervention" must be considered on a motion for intervention. 542 F.2d at 217. The Fourth Circuit elaborated:

> The resultant complexity of the litigation, combined with increases in cost and judicial time, would hinder resolution of the present conflict. The trial court, deluged with additional briefs and pleadings, would be provided with no new viewpoints and little if any illumination….

*Id*. In light of these considerations, the Fourth Circuit affirmed the district court's decision to deny a motion to intervene. *See also Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (explaining that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons *as is compatible with efficiency and due process*") (emphasis added).

Here, there can be little question that granting Proposed Intervenors' motion would increase the complexity of the litigation, multiply the number of briefs and pleadings, prolong discovery, and tax the resources of the existing parties and the Court. The Court will be forced to consider additional briefing submitted by Proposed Intervenors even though, as shown above, their interests and objectives align with those of the named Defendants. Depositions will take longer to complete because, presumably, counsel for Proposed Intervenors will want to participate in the questioning. All of this will lead to delay and inefficiency, which can only harm the interest shared by Defendants and plaintiffs in expeditiously resolving this case.

### E. Permissive Intervention Should Also Be Denied.

Identical concerns about judicial economy, and the current parties' keen interest in the efficient and expeditious resolution of this litigation, also militate against granting Proposed Intervenors' request for permissive intervention pursuant to Fed. R. Civ. P. 24(b). Rule 24(b) provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Booker v. Dominion Virginia Power*, 2010 WL 1286698, at *2 (E.D. Va. Mar. 26, 2010) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2nd Cir. 1994)) (internal quotation omitted). "Intervention is

a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *Id.* According to the Fourth Circuit, "the most important consideration in a claim for permissive intervention is whether the original parties will be prejudiced." *James City Cnty., Va. v. U.S. E.P.A.*, 131 F.R.D. 472, 474-75 (E.D. Va. 1990) (quoting *Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 386 (4th Cir. 1982)) (internal quotation omitted). Even when the parties share a common claim or defense, permissive intervention "should not be allowed if it would unduly delay or prejudice the original parties." *Id.* at 474.

Proposed Intervenors' conclusory assertion that permitting their intervention will not unduly delay or prejudice the adjudication of this case, *see* Memorandum in Support at p. 14, is wishful thinking. For all of the reasons cited by Defendants in opposition to Proposed Intervenors' attempts to intervene as of right, their alternative request for permissive intervention should similarly be denied. *See Ordnance Container*, 478 F.2d at 845-46 (finding that treating movant's motion for intervention as of right as one for permissive intervention, the district court was still within its discretion to deny the motion).

### F. Proposed Intervenors' Voices Could Still Be Heard Through Amicus Filings.

To the extent that Proposed Intervenors may have a contribution to make to this case -- or wish to advance arguments not raised by Defendants at certain phases in the litigation -- this could easily be accomplished by means other than intervention as a party pursuant to Fed. R. Civ. P. 24. Defendants respectfully suggest that the Court could afford Proposed Intervenors the same opportunity for participation it recently afforded the Public Interest Legal Foundation, Inc.

14

("PILF"). As the Court will recall, it recently denied PILF's motion for leave to participate in the case as *amicus curiae*, but stated that:

> The Court is inclined to permit PILF to file an *amicus* brief in response to any dispositive motion which may be filed in the above-captioned matter. No such motion having been filed, the Court finds PILF's request premature. Upon filing of a dispositive motion by one of the parties, PILF may renew its Motion for Leave to Participate as *Amicus Curiae*, and is DIRECTED to attach to such motion its proposed brief, which shall not exceed twenty (20) pages, as well as a proposed order in support thereof.

*See* Exhibit 7 (D.I. 29).

There is no reason that this common-sense approach could not apply to Proposed Intervenors as well, and it is an approach adopted by other courts in challenges to voter ID laws. For example, in *Veasey v. Perry*, No. 2:13-CV-00193 (S.D. Texas), the district court denied a motion for intervention by True the Vote. While the court found that True the Vote had not satisfied its burden to intervene under either Rule 24(a) or (b), it found "that True the Vote's intended contribution to this case may be accomplished without the necessity of, or the burden incident to, making it a party. The Court, instead, will duly consider any motion for leave to file briefing as amicus curiae that True the Vote may feel compelled to file." *See* Exhibit 8 (*Veasey* D.I. 113, December 11, 2013 Order).

## IV.   CONCLUSION

Proposed Intervenors have failed to carry their burden of satisfying the three factors required for intervention as of right, and have also failed to show that permissive intervention is appropriate in this case. Moreover, Defendants have shown that Proposed Intervenors' motion is based on little more than partisan rhetoric and conclusory accusations which do not stand up to any degree of serious scrutiny. Accordingly, and in view of the unreasonable risk that granting

15

Proposed Intervenors' motion will delay these proceedings and result in inefficiency and wasting of judicial resources, their Motion for Leave to Intervene should be denied.

Dated:  August 25, 2015.                           Respectfully submitted,


                                          */S/  Dana J. Finberg*
                                   By:_____
                                              Counsel


DANA J. FINBERG (VSB 34977)
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel:  (415) 757-5500.
Fax:  (415) 757-5501
dana.finberg@arentfox.com
MARK F. (THOR) HEARNE, II (admitted *pro hac vice*)
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel:  (314) 296-4000
Fax:  (202) 857-6395
thornet@ix.netcom.com


STEPHEN G. LARSON (admitted *pro hac vice*)
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel:  (213) 629-7400
Fax:  (213) 629-7401
stephen.larson@arentfox.com


*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 25th day of August, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

JOSHUA L. KAUL
Perkins Coie LLP
1 East Main Street, Suite 201
Madison, WI 53703
Tel: (608) 294-4007
Fax: (608) 663-7499
jkaul@perkinscoie.com

MARC E. ELIAS
BRUCE V. SPIVA
ELISABETH C. FROST
ARIA C. BRANCH
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005-3690
Tel: (202) 628-6600
Fax: (202) 654-9996
melias@perkinscoie.com
bspiva@perkinscoie.com
efrost@perkinscoie.com
abranch@perkinscoie.com

*Counsel for Plaintiffs*

MICHAEL A. CARVIN
MARK R. LENTZ
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
macarvin@jonesday.com
mrlentz@jonesday.com

*Counsel for Proposed Intervenors*

                                          /S/ Dana J. Finberg
                                      _____

DANA J. FINBERG (VSB 34977)
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel: (415) 757-5500.
Fax: (415) 757-5501
dana.finberg@arentfox.com
*Counsel for Defendants*