IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| BARBARA H. LEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Civil Action No. 3:15-CV-357-HEH |

## PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

Plaintiffs Barbara H. Lee, Gonzalo J. Aida Brescia, and the Democratic Party of Virginia (collectively, "Plaintiffs") submit this opposition to the motion to intervene of Senator Mark Obenshain, Tammy Alexander, Sherman Cain, Tony Guiffre, Dawn Williams, Frank Birckhead, Joan Elaine Salm, John William Salm, III, Tom Lester, and Jean Gannon (collectively, "Proposed Intervenors").  Proposed Intervenors are not entitled to intervention as of right under Rule 24(a)(2) because they have failed to establish that they have a legally protectable, direct interest that would be impeded or impaired by this action and because, even if Proposed Intervenors had such an interest, Defendants will zealously and vigorously protect that interest. *See* ECF No. 44 ("Def. Br.") at 10-12.  Moreover, given the need for swift resolution of this case ahead of the November 2016 election and the delay, increased litigation costs, and unnecessary complications that would inevitably result from the addition of Proposed Intervenors to the case, this Court should exercise its discretion under Rule 24(b)(1) to deny permissive intervention.

I. STATEMENT OF FACTS

Plaintiffs filed this action against the Virginia State Board of Elections, its Chairman, Vice-Chair, and Secretary, in their official capacities, and the Virginia Department of Elections and its Commissioner, in his official capacity (collectively, "Defendants"), on June 11, 2015. Plaintiffs filed an Amended Complaint on August 14, 2015. Plaintiffs allege that Virginia's voter ID law, codified at Va. Code Ann. § 24.2-643-B (the "photo ID law" or "voter ID law"), and its long wait times to vote and failure adequately to address those long wait times violate Section 2 of the Voting Rights Act and the First, Fourteenth, Fifteenth, and Twenty-Sixth Amendments; and that Virginia's requirement that voting rights be restored to nonviolent felons on an individual basis rather than through a single executive action has no rational basis and therefore violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs seek declaratory and injunctive relief to ensure that the voting rights of the Commonwealth's citizens are not burdened, abridged, or denied in violation of the Voting Rights Act or the U.S. Constitution.

Proposed Intervenors filed a motion to intervene in this lawsuit on August 14, 2015. *See* ECF Nos. 34-35. Defendants filed an opposition to that motion on August 25, 2015. *See* Def. Br. Plaintiffs likewise oppose the motion to intervene.

II. ARGUMENT

    A. **PROPOSED INTERVENORS HAVE NOT ESTABLISHED THAT THEY MAY INTERVENE AS OF RIGHT UNDER RULE 24(a)(2)**

The Proposed Intervenors are not entitled to intervention as of right. This manner of intervention is available if, by timely motion, a movant can show (1) an interest relating to the property or transaction that is the subject of the action; (2) that it is so situated that disposing of the action, as a practical matter, may impair or impede its ability to protect its interest; and (3)

that its interest is not adequately represented by existing parties to the litigation.  Fed. R. Civ. P. 24(a)(2); *Cooper Tech., Co. v. Dudas*, 247 F.R.D. 510, 514 (E.D. Va. 2007) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).  The failure to satisfy even one of these prerequisites precludes intervention as of right.  *See, e.g.*, *Westinghouse Elec.*, 542 F.2d at 216 (intervention as of right was properly denied because Virginia's interests in the litigation were already adequately represented).  Additionally, the party seeking to intervene "bears the burden of demonstrating to the court a right to intervene."  *Richman v. First Woman's Bank (Matter of Richman)*, 104 F.3d 654, 658 (4th Cir. 1997).  Here, Proposed Intervenors have failed to meet their burden of demonstrating either that they have the type of interest in this litigation that is necessary to intervene as of right or that their purported interests are not adequately represented by Defendants.

### 1. Proposed Intervenors have not established that they have any significantly protectable interest in this case

To meet the first criterion for intervention as of right—an interest relating to the property or transaction that is the subject of the action—a proposed intervenor must demonstrate an interest in the litigation that is "'significantly protectable.'"  *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).  "[A] general interest in the subject matter of pending litigation does not constitute a protectable interest within the meaning of Rule 24(a)(2)."  *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993).  Rather, the interest "must bear a close relationship to the dispute between the existing litigants and therefore must be direct, rather than remote or contingent."  *Id*.  This standard is distinct from, but related to, the test for establishing standing pursuant to Article III of the Constitution, *see Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) (discussing the "related standing context" in determining a request for intervention), under which a party must

- 3 -

demonstrate that it has (1) suffered an injury in fact; (2) which was caused by the conduct at issue; and (3) which will likely be redressed by a favorable decision, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  None of the Proposed Intervenors has demonstrated a significantly protectable interest in this case that justifies intervention as of right.

### a. Senator Mark Obenshain

Proposed Intervenor Senator Mark Obenshain claims a stake in this lawsuit based on a purported "direct interest in the process for determining qualified voters and votes in elections where he is a candidate, particularly those parts of the process which implicate fraudulent votes that could cancel out his supporters' votes." ECF No. 35 ("Prop. Int. Br.") at 4.  This asserted interest fails to justify intervention as of right.  Courts have consistently denied intervention in cases where proposed intervenors assert a speculative or remote, instead of "direct and substantial," interest in the action. *See Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 393 (4th Cir. 1981) (Widener, J., dissenting) (finding no abuse of discretion by trial court that denied movants' motion to intervene because their impaired interest was "doubtful at best, and certainly 'too speculative and too contingent on unknown factors'") (internal citation omitted); *ManaSota-88 v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990) (denying motion to intervene because proposed intervenors' interest in the case was "purely a matter of speculation" that would not impart the "kind of legally protectable interest" necessary to support intervention as of right); *Dairy Maid Dairy*, 147 F.R.D. at 111 (denying intervention because the putative intervenor's claim was not "direct, rather than remote or contingent").

Here, Proposed Intervenors have not made any showing—much less met their burden of showing—that the success of Plaintiffs in this case would result in an increase in voter fraud or

otherwise impact Senator Obenshain's ability to win elections.  *See* Prop. Int. Br. at 4-5.[1]  Indeed, as set forth in the Amended Complaint, careful research has discredited the notion that there is a significant amount of voter fraud anywhere in the United States that could be prevented by voter ID laws.  ECF No. 36 ("Am. Compl.") ¶ 73.  For instance, "'[a] study of 2,068 alleged cases conducted by the News21 journalism consortium found that since 2000 there have only been *ten* cases of in-person voter fraud that could have been prevented by photo ID laws . . . . [T]his is a ratio of one case of voter fraud for every 14.6 million eligible voters—more than a dozen times less likely than being struck by lightning.'"  *Frank v. Walker*, 773 F.3d 783, 791 (7th Cir. 2014) (Posner, J., dissenting from denial of rehearing en banc) (emphasis added) (quoting Richard Sobel, *The High Cost of 'Free' Photo Voter Identification Cards* 7 (2014), *available at* www.charleshamiltonhouston.org/wp-content/uploads/2014/08/FullReportVoterID June2014.pdf); *see also* Am. Compl. ¶¶ 73-74.

Furthermore, Virginia's photo ID law would not combat voter-impersonation fraud even if any material amount of it existed.  The Commonwealth of Virginia Voter Photo Identification Card Application requires an applicant to provide only the following information in order to obtain a free photo ID: (1) name; (2) birth date; (3) social security number; and (4) an affirmation that the information provided on the form is true.  *See* Commonwealth of Virginia Voter Photo Identification Card Application, *available at* http://elections.virginia.gov/Files/ Forms/VoterForms/VoterPhotoIdApplication.pdf.  In other words, Virginians can obtain a free voter ID *without showing any form of identification*, which means that the voter ID law makes it easier, not more difficult, to commit voter-impersonation fraud.  For this reason and because in-

---

[1] To be sure, the decrease in turnout that results from the voter ID law, Virginia's long wait times to vote, and Virginia's required manner of reenfranchising nonviolent felons will improve Republicans' electoral prospects.  But an interest in the suppression of votes plainly is not cognizable.

person voter-impersonation fraud is virtually nonexistent, the purported connection between this case and voter fraud and Senator Obenshain's electoral prospects is "doubtful at best," and Senator Obenshain's interest in this case is too speculative to support a motion to intervene as of right.  *See Hill*, 672 F.2d at 393 (Widener, J., dissenting).

Similarly, Senator Obenshain's asserted interest in "guarding against corruption or the appearance of corruption" in the political process, which would "undermine public confidence in and diminish the legitimacy of his office," Prop. Int. Br. at 5, is too speculative to justify intervention as of right.  Proposed Intervenors have provided no evidence that the result of this case will impact voters' confidence in the electoral system.  In fact, that evidence is to the contrary.  As set forth in the Amended Complaint at paragraph 76, scholars have found that "[w]hether [a] state or local election administration frequently asks for voter identification or not seems to have no relationship to individuals' beliefs about the frequency of" voter-impersonation fraud or the casting of illegal votes by noncitizens or multiple ballots.  Nathaniel Persily & Stephen Ansolabehere, *Vote Fraud in the Eye of the Beholder: The Role of Public Opinion in the Challenge to Voter Identification Requirements*, 121 Harv. L. Rev. 1737, 1756 (2008).  Accordingly, Senator Obenshain has not established a substantial and direct interest in this lawsuit.[2]

---

[2] Senator Obenshain's claims to an interest in this case on the grounds that he spent time working on the voter ID bill and that the results of this case could affect his ability to pursue similar measures in the future and his public image, *see* Prop. Int. Br. at 5, are also insufficient to justify intervention as of right.  Under the logic of these claims, any legislator who supported a bill would be permitted to intervene as of right in the defense of that bill.  The argument thus proves too much.  *See generally Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000) ("[W]hen a court declares an act of the state legislature to be unconstitutional, individual legislators who voted for the enactment have no standing to intervene.") (internal quotation marks omitted).  Moreover, the fact that Senator Obenshain expended time and effort on the voter ID law in the past clearly does not mean that he has an ongoing interest in that law.

### b.    County Electoral Board Members and General Registrar

The county election officials seeking to intervene in this lawsuit (the "county officials") have failed to satisfy their burden for intervention as of right because they, too, have failed to show that they have a "direct and substantial interest" that would be impaired or impeded by this action. *Richman*, 104 F.3d at 659.  Proposed Intervenors claim that Plaintiffs' success in this suit will mean that the county officials (1) will face more difficulty carrying out their statutory duties to run clean, fair, and orderly elections and (2) will be burdened with the need to "engage in new training and adopt new procedures in response to whatever relief Plaintiffs may obtain." Prop. Int. Br. at 7.  But this does not accurately represent what Plaintiffs' success in this suit would mean for the county officials.

Plaintiffs seek, among other things, a permanent injunction enjoining Defendants from enforcing the voter ID law and requiring Defendants to implement and effectuate changes that will prevent long wait times from recurring in future Virginia elections.  *See* Am. Compl. at 38. This requested relief would simplify, not complicate, the process of voting in Virginia.  An order enjoining the voter ID law, for instance, would almost certainly have the effect of reducing the number of voters who need to cast provisional ballots, meaning that election officials would be able to spend less time instructing voters about provisional ballots and less time ascertaining whether such ballots should be counted.  In addition, relief that results in shorter lines at the polls would surely reduce complaints and the need to undertake efforts to remediate long lines.  The requested relief, in short, will make it easier, not harder, for the county officials to do their jobs; and the county officials certainly have not met their burden of showing otherwise.

The county officials' purported interest in avoiding the need to "engage in new training and adopt new procedures in response to whatever relief Plaintiffs may obtain," Prop. Int. Br. at 7, also does not support intervention as of right.  As Defendants point out, "[b]ecause each

locality in Virginia is required to certify before the annual general election that the election officers have been properly trained, *see* Va. Code Ann. § 24.2-103, training takes place on an annual basis as a matter of course." Def. Br. at 11 n.6.  Given that, the link between the result of this case and the training burdens on the county officials is tenuous, and the interest of the county officials in this case is not direct and substantial.[3]

### c. Virginia Voters

The Virginia voters seeking to intervene (the "voters") also have not met their burden of demonstrating a direct and substantial interest in this litigation.  To the extent that the voters assert an interest in not having "their votes canceled out by fraudulent ballots," Prop. Int. Br. at 8, that interest is too speculative to justify intervention as of right for the same reasons set forth above in the discussion of Senator Obenshain's interest in this case.  Moreover, it is a generalized interest that could be asserted by any voter and thus cannot justify intervention as of right.  *See* Order Den. Leave to Intervene, *United States v. Florida*, No. 12-285 (N.D. Fla. Nov. 6, 2012), ECF No. 49 (slip. op.) at 3-4 (concluding that "confidence in the election process" is an interest shared by every other registered voter in the state and that "[g]eneralized interests of this kind plainly do not afford a voter . . . a *right* to intervene under Rule 24(a)") (emphasis in original); Order Den. Intervention of True the Vote, *Veasey v. Perry*, No. 13-00193, ECF No. 113 (S.D. Tex. Dec. 11, 2013) (slip op.) at 1  (same); *see also Athens Lumber Co. v. Federal Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (affirming district court's denial of intervention when an intervenor did not assert a particularized interest).

---

[3] Proposed Intervenors' claim that a decision in favor of Plaintiffs could expose the county officials to personal liability "for enforcing other sensible, nondiscriminatory measures to verify voter identity," Prop. Interv. Br. at 7, lacks any merit and is clearly far too speculative to justify intervention as of right.

Similarly unavailing is the voters' assertion that they have an interest in this case because Plaintiffs' success will mean that poll workers would have to be re-trained and voters would have to be re-educated, which would cause longer lines and wait times at polling places. Prop. Int. Br. at 8. As with the voters' asserted interest in not having their votes cancelled out by fraudulent ballots, this is the type of generalized interest that cannot support intervention as of right. Further, the notion that eliminating the voter ID law and implementing mechanisms to *decrease* wait times at the polls—two remedies Plaintiffs seek in this lawsuit—would *cause* voter and poll worker confusion and *longer* wait times to vote is, at best, "remote and contingent," *see Dairy Maid Dairy*, 147 F.R.D. at 111; indeed, it is counterintuitive, illogical, and inaccurate. Thus, the voters, like Senator Obenshain and the county officials, have not met their burden of demonstrating a direct and substantial interest in this case.

### 2. Any interest Proposed Intervenors have in this case will be adequately represented by Defendants

Even if Proposed Intervenors could establish a protectable interest that could be impaired by the disposition of this litigation—and they cannot—any such interest will be adequately represented by Defendants. As set forth in Defendants' brief, there is a presumption that Defendants will adequately represent Proposed Intervenors' interests because they have the same ultimate objective. *See* Def. Br. at 10-11. And where, as here, the existing defendant is a government agency, the movant must make a "very strong showing of inadequacy" to warrant intervention because, in cases involving a constitutional challenge to a state statute, "the government is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process." *Stuart*, 706 F.3d at 351; *accord id.* (when a statute is attacked, "it is difficult to conceive of an entity better situated to defend it than the government" because it is "the government that, through the democratic process, gains familiarity with the matters of

public concern that lead to the statute's passage in the first place"). Indeed, "the need for government to exercise its representative function is perhaps at its apex where, as here, a duly enacted statute faces a constitutional challenge." *Id*. For the reasons explained by Defendants, Proposed Intervenors cannot rebut the presumption of adequacy that results from the overlap in the interests of Defendants and the interests asserted by Proposed Intervenors, much less make the very strong showing of inadequacy necessary given that Defendants are government agencies and government officials sued in their official capacity. *See generally* Def. Br. at 3-9, 11-12.[4]

### B. THE COURT SHOULD DENY PERMISSIVE INTERVENTION

The Court should also deny Proposed Intervenors' request for permissive intervention. This form of intervention may be granted on a timely motion to a party with a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is discretionary with this Court, which, in exercising its discretion, must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3); *see, e.g.*, *United States v. North Carolina*, No. 13-00861, 2014 WL 494911, at *5 (M.D.N.C. Feb. 6, 2014) (denying intervention because the addition of two parties would "consume additional and unnecessary judicial resources, further complicate the discovery process, potentially unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties); *Stuart*, 706 F.3d

---

[4] While the Proposed Intervenors' contention that they will "raise arguments that the State will not raise," Prop. Int. Br. at 13, appears to be pure speculation, *see* Def. Br. at 9 ("Proposed Intervenors simply have no idea what arguments Defendants intend to raise or not."), it nevertheless bears mentioning that this claim would not necessarily support intervention as of right even if it were not speculative. "[T]he use of different arguments as a matter of litigation judgment is not inadequate representation *per se*." *Daggett v. Comm'n on Gov't Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999). It is only where "a refusal to present obvious arguments [is] . . . extreme" that it justifies a finding that representation by the existing parties is inadequate. *Id.* Moreover, should Proposed Intervenors decide that additional legal arguments should be made in this case, they will have the opportunity to move for leave to file an *amicus* brief.

at 355 (denying intervention where existing defendants were already "zealously" and "vigorously" defending the lawsuit); *Brock v. McGee Bros. Co., Inc.*, 111 F.R.D. 484, 487 (W.D.N.C. 1986) (denying permissive intervention because it would "needlessly increase the cost and delay the disposition of [the] litigation").

In this case, the involvement of Proposed Intervenors would almost certainly result in delay, increase litigation costs, and unnecessarily complicate discovery and trial. Having two parties rather than one defending the case will surely result in redundant sets of document requests; redundant questioning in depositions and at trial; duplication of expert testimony; and redundant briefing. Moreover, given that Defendants and Proposed Intervenors are *already* at odds and unable to agree on the very basic fact of whether Defendants consented to Proposed Intervenors' motion to intervene, *see* Def. Br. at 2 n.1, it is clear that they will not be able to litigate this case jointly without there being numerous additional—and unnecessary—factual squabbles that will divert the parties and the Court from the issues actually in dispute.

While this real possibility that intervention would give rise to rival defense teams and the likelihood that it would result in wasted resources should doom any request for permissive intervention, these concerns are particularly salient here for two reasons. First, timely resolution of this case is of critical importance in light of the proximity of the November 2016 election and the Supreme Court's holding in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), that changes to election laws and procedures must be made before an election is imminent in order to prevent voter confusion. *Id.* at 5-6. Second, the Fourth Circuit has warned against the dangers of permitting parties to intervene in cases such as this one where, "[f]aced with the prospect of a deluge of potential intervenors, the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of

a geometrically protracted, costly, and complicated litigation." *Stuart*, 706 F.3d, 351.

Permissive intervention, in short, is not appropriate in this case.

## III. CONCLUSION

For the reasons set forth above, this Court should deny Proposed Intervenors' motion to intervene.

DATED: August 28, 2015

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
Aria C. Branch (VSB # 83682)
Amanda R. Callais (VSB # 85891)
Ceridwen Cherry (admitted *pro hac vice*)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com
Email: EFrost@perkinscoie.com
Email: ABranch@perkinscoie.com
Email: ACallais@perkinscoie.com
Email: CCherry@perkinscoie.com

Joshua L. Kaul (admitted *pro hac vice*)
**PERKINS COIE LLP**
1 East Main Street, Suite 201
Madison, WI 53703-5118
Telephone: 608.663.7460
Facsimile: 608.283.1007
Email: JKaul@perkinscoie.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On August 28, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Dana J. Finberg
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel: 415.757.5500
Fax: 415.757.5501
dana.finberg@arentfox.com

Mark F. (Thor) Hearne, II
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel: 314.296.4000
Fax: thornet@ix.netcom.com

Stephen G. Larson
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel: 213.629.7400
Fax: 213.629.7401
stephen.larson@arentfox.com

*Attorneys for Defendants*

Michael A. Carvin
Anthony J. Dick
Michael Murray
Stephen A. Vaden
Mark R. Lentz
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Tel: 202.879.3939
Fax: 202.626.1700
macarvin@jonesday.com
ajdick@jonesday.com
mmurray@jonesday.com
svaden@jonesday.com

mrlentz@jonesday.com

*Counsel for Proposed Intervenors*

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorney for Plaintiffs*