IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| BARBARA LEE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:15CV357 HEH |
| ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**INTRODUCTION**

Two political operatives and the Democratic Party of Virginia (VDP) challenge Virginia's law requiring persons to identify themselves before casting a ballot. These challengers claim this provision of Virginia's election law is unconstitutional and violates section 2 of the Voting Rights Act as well as the Fourteenth and Fifteenth Amendments. The plaintiffs also challenge provisions of Virginia law requiring convicted felons to re-register before voting and claim this Court should do something (although they do not explain what) about supposedly long lines that may occur in the 2016 election.

Totally apart from these allegations challenging Virginia's election laws, these plaintiffs have no standing to bring this challenge. The individual plaintiffs, Lee and Brescia, are registered voters and have in fact voted in past elections. Lee and Brescia are also not convicted felons (or do not allege to be convicted felons) subject to the re-registration requirement they challenge. And the VDP does not identify any specific members who are convicted felons

1

burdened by the re-registration requirement. Finally, the allegations about "long lines" are speculative and relate to a future event, the 2016 election, and as such are not ripe.

Virginia's voter identification requirement law is far more lenient than voter identification laws in Indiana and Wisconsin -- laws which have been upheld by the Supreme Court and the U.S. Court of Appeals for the Seventh Circuit. *See Crawford v. Marion County Election Bd.*, 553 U.S. 193 (2008) (upholding Indiana's voter identification law); *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1551 (March 23, 2015) (upholding Wisconsin's voter identification law).

The Supreme Court found the Help America Vote Act and the National Voter Registration Act "indicate that Congress believes that photo identification is one effective method of establishing a voter's qualification to vote and that the integrity of elections is enhanced through improved technology." *Crawford*, 553 U.S. at 193. Moreover, the Supreme Court found Congress' belief was supported by the recommendations of the bipartisan Carter-Baker Commission on Federal Election Reform, which recommended individuals provide photo identification to establish their identity before casting a ballot. The commission made this recommendation because "[t]he electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters." *Id.* at 194. The challenged provisions of Virginia's election law do not have a disparate impact upon any minority group. And, even if they did, section 2 of the Voting Rights Act does "not require states to overcome societal effects of private discrimination that affect the income or wealth of voters" and "does not condemn a voting practice just because it has a disparate effect on minorities." *Frank*, 768 F.3d at 753.

Giving the plaintiffs' allegations their broadest reading, their amended complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The amended complaint does not present a claim or controversy satisfying Article III of the Constitution and does not allege a claim upon which relief can be granted. Further, plaintiffs do not have standing to bring this action and the allegations about supposed "long lines" at polling places in future elections are speculative and not ripe for adjudication. Consequently, the plaintiffs' challenge to Virginia's election laws should be dismissed.

## ARGUMENT

This lawsuit should be dismissed for three reasons. First, each cause of action fails to state a claim for which relief can be granted. Plaintiffs do not allege Virginia's voter identification law, or other challenged provisions, actually had an adverse and disparate impact on African-American and Latino voters during the 2014 election. Nor do they allege Virginia intended to suppress Democrat voters or discriminate against any protected class or group. To make a colorable section 2 claim, even at this early stage of this litigation, the plaintiffs must allege an adverse and disparate impact. Further, the plaintiffs seek relief related to the felon reinstatement policy which the Court cannot grant.

Second, none of the three plaintiffs have standing to bring this challenge. The two individual challengers, Lee and Brescia, do not have standing because they do not allege any abridgement or burden on their right to vote. Likewise, the VDP cannot claim any injury in its own right because there is no actual showing of disparate impact on Democrat voters, and it cannot claim representational standing because it has not named *a single member* directly and unlawfully burdened by the voter identification or other laws at issue.

3

Third, the challengers' claims are speculative, unripe and vague. Claims about how long some voters may wait to cast a ballot in the 2016 election are unvarnished speculation. Further, allegations of "long lines" are not justiciable as there is no standard by which a federal court can decide at what point the minutes a person waits to vote becomes unconstitutional.

## I. This lawsuit should be dismissed because it fails to state a claim upon which relief can be granted.

Rule 12(b)(6) says a cause of action should be dismissed when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To state a cognizable claim, a party must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When ruling on a motion to dismiss, a court must assume the factual allegations are true; however, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim" are not entitled to this assumption. *Id.* at 681 (internal quotations omitted).

### A. Plaintiffs fail to state any claims related to the voter identification law or long waiting times.

#### 1. This lawsuit fails to state claims for intentional discrimination.

Lee, Brescia, and the VDP allege the Virginia legislature adopted a law requiring a person to identify themselves as a qualified registered voter before casting a ballot in order to intentionally suppress the votes of African-Americans and Latinos in violation of the First and Fourteenth Amendments. In support of this allegation, plaintiffs assert that "the General Assembly's consideration of race in enacting the voter identification law and failing to take action to reduce wait times to vote" constituted intentional discrimination. *See* amended

4

complaint (AC) ¶ 120. Plaintiffs repeat the same allegation with respect to age. *Id.* ¶ 124. This is insufficient to state a cognizable claim.

"Purposeful discrimination requires more than intent as volition or intent as awareness of consequences; it involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 663 (internal quotations omitted).

Lee, Brescia, and the VDP fail to allege *any* facts that support even an inference Virginia adopted these election laws to discriminate against any minority or other group. Absent any allegations as to how, or in what manner, Virginia considered race or age when it enacted the voter identification requirements and other provisions, the challenge fails. Simply put, these laws do not have a disparate impact.

Rather than supporting their allegation of discriminatory intent with facts, Lee, Brescia, and the VDP rely on "threadbare recitals of the elements of a cause of action" supported by mere conclusory statements which are insufficient to overcome a motion under Rule 12(b)(6). *Id.* at 678. Because the challengers fail to allege *any* facts supporting their contentions, their lawsuit should be dismissed.

    **2.    This lawsuit fails to state claims for violation of section 2 of the Voting Rights Act, the First Amendment, or the Fourteenth Amendment.**

Lee, Brescia, and the VDP do not allege any *actual* disparate impact caused by Virginia's voter identification law or supposedly long lines at polls in 2016. Lee, Brescia, and the VDP do not allege any basis upon which this Court may conclude Virginia violated section 2 of the Voting Rights Act, the First Amendment, or the Fourteenth Amendment.

To claim section 2 of the Voting Rights Act was violated, Lee, Brescia, and the VDP must allege that "'as a result of the challenged practice or structure [Lee, Brescia, and the VDP]

5

do not have an equal opportunity to participate in the political processes and to elect candidates of their choice.'" *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 238 (4th Cir. 2014) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 44 (1986)).

The Fourth Circuit has adopted the Sixth Circuit's two-part test for assessing a vote-denial claim:

> First, the challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. Second, that burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class.

*Id.* at 240.[1]

It is impossible to allege Virginia's voter identification law and the other election administration procedures violate the First and Fourteenth Amendments without showing (or at least credibly alleging) disparate impact upon minorities. And even then, disparate impact alone is not sufficient. *Washington v. Davis*, 426 U.S. 229, 242 (1976) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution."); *Crawford*, 553 U.S. at 207 (2008) (Scalia, J., concurring) ("Fourteenth Amendment does not regard neutral laws as invidious ones, even when their burdens purportedly fall disproportionately on a protected class").

Lee, Brescia, and the VDP do not allege any actual discriminatory effects in Virginia, much less any facts that would support such an allegation. Even though Virginia's photo identification law was effective during the 2014 elections, plaintiffs do not allege that they were

---

[1] Internal quotations and citations omitted.

harmed by it.[2]  And the political operative plaintiffs, Lee and Brescia, are politically active registered voters who have not alleged that they had any difficulty casting a ballot.  Rather than rely on concrete statistics from the 2014 election in Virginia, plaintiffs cite a "GAO Voter Identification Report" relating to voter turnout in Kansas and Tennessee and a three-page 2006 Brennan Center survey containing no Virginia-specific information.[3]  AC ¶¶ 62, 69-70.

Lee, Brescia, and the VDP also purport to allege disparate impact based on past discrimination and existing socio-economic differences, but these allegations are also insufficient as a matter of law.  AC ¶ 103.  Although the Fourth Circuit has held that "an eye toward past practices is part and parcel of the totality of the circumstances," reliance on past discrimination alone is insufficient.  *League of Women Voters of N. Carolina*, 769 F.3d at 241.  Analysis of the "totality of the circumstances" necessarily must include consideration of the actual impact of the law.  The recent Seventh Circuit decision upholding Wisconsin's voter identification law is instructive, and explains that section 2 "forbids discrimination by 'race or color' but does not require states to overcome societal effects of private discrimination that affect the income or wealth of potential voters."  *Frank*, 768 F.3d at 753 (also adopting the Sixth Circuit's test).  Moreover, section 2 "does not condemn a voting practice just because it has a disparate effect on minorities."  *Id.*  Stripped of its conclusory allegations, that is all that plaintiffs' amended complaint alleges here.

---

[2] Plaintiffs admit that voters without photo identification were permitted to cast provisional ballots during the 2014 general election.  AC ¶ 58.

[3] Brennan Center for Justice, *Citizens Without Proof: A Survey of Americans' Possession of Documentary Proof of Citizenship and Photo Identification* (November 2006), available at: <http://www.brennancenter.org/sites/default/files/legacy/d/download_file_39242.pdf>   (last visited August 26, 2015).

In sum, the challengers have failed to allege that they, or other minority or young voters, have been denied any opportunity to vote because of Virginia's voter identification requirement. *See Frank*, 768 F.3d at 753 ("unless Wisconsin makes it ***needlessly*** hard to get photo identification, it has not denied anything to any voter" under section 2) (emphasis in original). Consequently, plaintiffs' claims based on section 2 of the Voting Rights Act and the First and Fourteenth Amendments fail and should be dismissed.

### 2. Plaintiffs fail to state a claim for partisan fencing as they have not alleged that the voter identification law denied any individual's right to vote.

Lee, Brescia, and the VDP fail to state a claim of partisan "fencing," asserting Virginia's voter identification law has impermissibly "fenced" Democrats from voting "because of the way [Democrats] are expected to vote." AC ¶¶ 114-16. However, Lee, Brescia, and the VDP fail to allege what they mean by "the way [Democrats] are expected to vote." The challengers also fail to allege how the law impacts or targets any Democrat voting behavior.

Lee, Brescia, and the VDP's mistaken reliance on *Carrington v. Rash*, 380 U.S. 89, 94 (1965), does not save their misguided claim. In *Carrington*, the Supreme Court held a Texas law prohibiting members of the military, even those who were Texas residents, to vote constituted impermissible fencing. The Texas Constitution prohibited "(a)ny member of the Armed Forces of the United States who moves his home to Texas during the course of his military duty from ever voting in any election in that State so long as he or she is a member of the Armed Forces." *Carrington*, 380 U.S. at 90 (internal quotation omitted). Texas' justification was to "prevent the danger of a takeover of the civilian community resulting from concentrated voting by large numbers of military personnel, who were subject to the views of their commanding officers, as well as protection of the franchise from '=infiltration by transients . . . ." *Id.* at 93 (internal quotation omitted). The Court held, under the Equal Protection Clause, "States may not casually

8

deprive a class of individuals of the vote because of some remote administrative benefit to the State." *Id.* at 96.

*Carrington* is irrelevant to the plaintiffs' theory in this case. Texas intentionally and explicitly excluded an identifiable group of voters by occupation (members of the military) from participating in state elections. Virginia's voter identification law has no such aim or effect. Democrats in Virginia are not targeted by the law -- in fact, Virginia does not even have political party registration, which would be necessary in order to target Democrats. Moreover, the law's voter identification, free identification, and by-pass provisions are equally available to Republicans and Democrats. Neither group is disadvantaged. *See Vieth v. Jubelirer*, 541 U.S. 267, 314 (2004) (First Amendment concerns arise where a State enacts "a law that has the purpose and effect of subjecting a group of voters or their party to disfavored treatment *by reason of their views*.") (emphasis added) (quoted by plaintiffs (AC ¶ 115)). Unlike the Texas law at issue in *Carrington*, Virginia's voter identification law has no impact upon who can register to vote in Virginia, and the voter identification law cannot be said to target Democrats by reason of their Democrat views.[4]

### 3. Plaintiffs fail to state a claim for undue burden arising from Virginia's felon reinstatement policy.

Lee and Brescia do not allege they are convicted felons and the VDP does not identify any members who are convicted felons unconstitutionally burdened by having to individually apply to be re-enfranchised. Further, their lawsuit fails to allege facts showing Virginia's felon reinstatement law has actually imposed an undue burden in violation of the First and Fourteenth Amendments that would be redressed by prohibiting enforcement. As the challengers even acknowledge, since 2013, Virginia has taken affirmative action to restore felons' voting rights

---

[4] The only groups plaintiffs can plausibly argue the law fences-out are: 1) non-registered voters; and 2) registered voters who have already voted in the same election.

9

and have further reduced the barriers. AC ¶ 94. At this time, individuals convicted of a nonviolent felony who have served their sentences, been released from probation or parole and have no pending felony charges need only apply to have their rights restored. This application process does not impose any more of a burden than re-registering to vote -- as felons released from prison would have to do in any event to be restored to the voting rolls.

Lee, Brescia, and the VDP appear to ask this Court to grant relief that is unavailable. AC ¶¶ 112-13. Although it is vaguely pled, the remedy plaintiffs appear to seek is some sort of class-wide automatic reinstatement for felons. *Id.* ¶ 112. Such relief is illogical and likely unconstitutional itself. Neither this Court, nor the Governor if ordered by this Court, has the authority to sweep all felons back onto Virginia's voting rolls, even if this were practically possible. Reinstatement of voting rights, by definition, must be done on an individual basis. Further, such an action could violate the First Amendment rights of any individual felons who do not wish to re-register to vote. *See Hoffman v. Maryland*, 928 F.2d 646, 648 (4th Cir. 1991); *Dixon v. Maryland State Admin. Bd. of Election Laws*, 878 F.2d 776, 782 (4th Cir. 1989); *Beare v. Smith*, 321 F. Supp. 1100, 1103 (S.D. Tex. 1971), *aff'd sub nom. Beare v. Briscoe*, 498 F.2d 244 (5th Cir. 1974) ("it must be said that there is also a right not to vote"); *Crawford v. Marion County Election Bd.*, 472 F.3d 949, 954 (citing Jeffrey A. Blomberg, *Note: Protecting the Right Not to Vote from Voter Purge Statutes*, 64 Fordham L. Rev. 1015, 1016-17 (1995)). Accordingly, Lee, Brescia, and the VDP fail to state a claim upon which relief can be granted.

**II. Plaintiffs' claims should be dismissed for lack of standing.**

    **A. Standing is a threshold requirement.**

"Article III of the Constitution confers on federal courts the power to resolve only 'cases' and 'controversies.'" *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 267 (4th Cir. 2011). To meet this case or controversy requirement, Lee, Brescia, and the VDP bear the burden of

establishing, among other things, that they have standing to bring the claims asserted. *Id.* at 268 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In order to plead standing, Lee, Brescia, and the VDP must allege:

> (1) [the party] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

In addition to this constitutional standing requirement, courts also consider "judicially self-imposed limits on the exercise of federal jurisdiction," commonly referred to as prudential standing. *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 753 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). In order to invoke federal jurisdiction, plaintiffs must allege facts sufficient to meet both the constitutional and prudential requirements of standing. *Bishop*, 575 F.3d at 423 (citing *Allen*, 468 U.S. at 751). The prudential standing requirement requires consideration of the following:

> First, when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. Second, the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. Third, a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.

*Bishop*, 575 F.3d at 423 (internal citations and quotations omitted).

Section 2 of the Voting Rights Act further limits the standing of the parties attempting to bring this suit. As this Court recently held, "standing to bring suit under the Voting Rights Act is now limited to the Attorney General and aggrieved persons." *Perry-Bey v. City of Norfolk*, 678

11

F. Supp. 2d 348, 363 (E.D. Va. 2009) (internal quotation omitted). Aggrieved persons under the statute are those "*whose voting rights have been denied or impaired*." *Id.* (internal quotation omitted) (emphasis added).[5]

Because Lee, Brescia, and the VDP fail to satisfy the standing requirement, the Court must dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Courts apply the Rule 12(b)(6) standard of review for determining whether the elements of standing have been met: "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3rd Cir. 2012) (internal quotations omitted). But with respect to Rule 12(b)(1) motions in particular, "'[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.'" *Id.* at 244 (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)).

### B. Lee and Brescia do not have standing.

Lee and Brescia do not claim the voter identification law has *any* effect on her or his right to vote. Neither individual claims that she or he has been or is: (a) unable to obtain a valid form of identification and consequently have been denied the right to vote in an election; (b) a felon who is unable to have her or his voting rights restored; or (3) subjected to unreasonably

---

[5] This same limitation is applied in Fourteenth Amendment and Fifteenth Amendment equal protection voting-rights cases. *Id.* at 365.

long wait times to cast her or his vote at a polling station.[6] Instead of asserting their own rights, Lee and Brescia seek to redress "generalized grievance[s]" resting on the interests of third parties, which "do[] not warrant exercise of jurisdiction." *Bishop*, 575 F.3d at 423.

The challengers transparently base their claims on these generalized grievances – asserting that their general political involvement and interests in electing Democrat candidates to office create a justiciable claim for relief. Lee alleges that she is an African-American voter and lifelong resident of Staunton, Virginia, who has been and intends to be active in Democrat political activities and candidate support. AC ¶ 8. She alleges she is harmed by Virginia's voter identification law, the requirement that felons individually seek franchise reinstatement, and long wait times at the polls, not because any of these things cause personal injury to her right to vote, but because she fears they "disproportionately suppress the vote of Democrats," *i.e.*, supporters of her preferred political party. *Id.* Brescia is a Latino Virginia voter who is likewise active in Democrat politics, especially with regard to young and Latino voters. *Id.* ¶ 9. He alleges he could have spent more time with get-out-the-vote efforts in the 2012 election if the wait times at the polls in 2012 had not been as long and that he could have registered more people to vote "if all nonviolent felons who had completed their sentences, been released from supervised probation or parole, and had no pending felony charges had been able to register to vote." *Id.* ¶ 10. But like Lee, Brescia does not claim that the challenged Virginia voter laws and policies interfere with his right to vote.

---

[6] In contrast, individual plaintiffs in other pending voter identification cases specifically allege that they do not possess the required identification. *See, e.g.*, *North Carolina State Conference of the NAACP v. McCrory*, Second Amended Compl., No. 1:13CV658 (M.D.N.C. January 9, 2014) (D.I. 52) ¶¶ 36-38; *Veasey v. Perry*, No. 2:13CV193 (S.D. Tex. July 2, 2014) (D.I. 4) at ¶ 8.

As confirmed by case law interpreting the Voting Rights Act, only voters who are actually directly and unlawfully burdened have standing to challenge the voter identification law and electoral policies. *See, e.g.*, *Perry-Bey,* 678 F. Supp. 2d at 362. But Lee and Brescia only assert generalized grievances and rights belonging to parties not named in this lawsuit. This failure to assert their own rights defeats their standing, and therefore their claims. It should be remembered that this Court granted plaintiffs' motion allowing them additional time to file an amended complaint adding specific individuals who could perhaps claim they were individually burdened. D.I. 22, 25. ***But no such individuals were added.***

Further, the injuries Lee and Brescia allege are not actual and imminent or concrete and particularized, as required to meet the Constitutional standing requirement; rather they are based on the hypothetical impact of the Virginia voter identification law and electoral policies under attack. Ignoring the only relevant data (statistics from the 2014 elections in Virginia), the challengers rely on analysis of the voter identification laws in other states to assert that the voter identification law in Virginia disproportionately affects African American and Latinos. Such assertions are pure conjecture and speculation.

Lee and Brescia rely on past elections to speculate that lines will be long in the future. The claims related to long lines are also unduly vague as plaintiffs have alleged no basis for measuring how long is too long. Absent such clarity, the Court is not able to award relief that would redress plaintiffs' grievances.

Finally, Lee and Brescia's claims are also hypothetical as to felons who may or may not wish to have their voting rights reinstated. As the Eastern District of Virginia concluded in *El-Amin v. McDonnell*, no injury to a felon's rights occurs until a felon actually seeks to exercise his rights again. 2013 WL 1193357, at *4-5 (E.D. Va. March 22, 2013); *see also Doe v. Virginia*

*Dept. of State Police*, 2011 WL 2551014, at *6-7 (E.D. Va. June 27, 2011), *affirmed Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 754 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014) (plaintiff lacked standing to challenge the Virginia Sex Offender and Crimes Against Minors Registry where she had not yet requested permission to enter prohibited property for registrants).

Because Lee and Brescia's alleged injuries fall short of both the constitutional and prudential standing requirements, this Court cannot adjudicate their claims as pled, and they should be dismissed.

### C. The Democratic Party of Virginia does not have standing.

The doctrine of associational standing provides that an association may only sue in federal court if it can establish standing "based on an injury to the organization in its own right or as the representative of its members who have been harmed." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000) (citing *Warth*, 422 U.S. at 511). "An organization has representational standing when (1) at least one of its members would have standing to sue in his own right; (2) the organization seeks to protect interests germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit." *Id.* (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). The Supreme Court has recently recognized, in the context of a challenge to Alabama's redistricting, that an "association has standing to bring suit on behalf of its members ***when its members would have standing to sue in their own right***" . . . ." *Alabama Legis. Black Caucus v. Alabama*, 135 S. Ct. 1257, 1268 (2015) (emphasis added by the district court).

The VDP does not successfully allege either personal or representative standing. *See Alabama Legis. Black Caucus*, 135 S. Ct. at 1268-69.[7] The VDP has not alleged grounds for standing based on its own injury because it has not adequately alleged how the voter identification law and other challenged electoral policies directly harm it. Instead, it relies on the speculative allegation that the voter identification law and electoral policies will "disproportionately reduc[e] the turnout of Democratic voters and decreas[e] the likelihood that the DPVA will be successful in its efforts to help elect candidates of the Democratic Party to public office." AC ¶ 11. This alleged injury is insufficient because it is conjectural and hypothetical, not actual and imminent. As explained above, the challengers allege no facts tending to demonstrate that the voter identification law actually had any disparate impact on the 2014 election, which occurred after the enactment of the statute. *See supra* Part I(A).

The VDP further alleges that it has "devoted resources that otherwise would have been, and will devote resources that otherwise would be, put to other productive uses educating Virginians about the voter identification law." AC ¶ 11. These claims are too attenuated from the rights asserted in the amended complaint to constitute an injury in fact traceable to defendants' conduct. The VDP presumably undertakes these expenditures for the very purpose of pursuing its self-proclaimed goal of being "successful in its efforts to help elect candidates of the Democratic Party to public office." *Id.* Put in the simplest terms, the VDP would commit expenses to instruct its members on Virginia law no matter what the law is. That allegation,

---

[7] Moreover, the VDP may not rely on a statistical probability that one its members would be directly impacted by the challenged laws to evade the requirement of naming an individual member with standing to sue. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009) ("[The] requirement of naming the affected members has never been dispensed with in light of statistical probabilities."). The VDP, therefore, failed to satisfy the first prong of the representational standing test.

thus, adds nothing to the analysis of whether the Commonwealth of Virginia, by its own conduct, has violated federal law.

Similarly, the VDP asserts no basis for representational standing because it does not allege that any of its members have standing to sue. As explained above, an individual only has standing to challenge the voter identification laws and electoral policies if his or her own rights are abridged. Here, the VDP does not name a single member who has been: (1) unable to obtain valid identification; (2) unable to have their voting rights restored; or (3) subjected to unreasonably long wait times. The VDP, therefore, has not alleged that any of its members has standing on its own and cannot satisfy the standard for representational standing.

### III. Plaintiffs' claims relating to future long lines should be dismissed because they are not ripe for adjudication.

Just as Lee, Brescia, and the VDP bear the burden of establishing standing, the challengers also must allege facts sufficient to establish grounds for finding that their claims arising from the long wait times present "clear-cut and concrete" controversies ripe for adjudication. *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 758 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014) (quoting *Rescue Army v. Mun. Court of L.A.,* 331 U.S. 549, 584 (1947)). "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . . .'" *Natl. Park Hospitality Ass'n v. Dept. of Int.*, 538 U.S. 803, 807-08 (2003) (quoting *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n.18 (1993)). It is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'" *Id.* (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)). In order to avoid this result, courts "dismiss[] as unripe" claims based on "wholly speculative" future injuries. *Doe v. Virginia Dept. of State Police*, 713 F.3d at 758 (quoting *Gasner v. Bd. of Supervisors,* 103 F.3d 351, 361

17

(4th Cir. 1996)).

Here, the challengers' allegations concerning the long wait times do not constitute a future injury that is actually "clean-cut and concrete," as opposed to merely speculative, and therefore their claims should be dismissed. Lee, Brescia, and the VDP seek prospective relief based solely on allegations that "policies in place in Virginia have [in the past] disproportionately resulted in long wait times to vote in areas with disproportionately large minority populations." AC ¶ 106; *see also* ¶¶ 116, 121, 124. These conclusory statements do not satisfy the ripeness doctrine. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In fact, the Fourth Circuit has specifically recognized that allegations concerning future long waiting times may be properly deemed unduly speculative. *League of Women Voters of North Carolina*, 769 F.3d at 237 ("we are unable to find that the district court committed clear error in deeming this argument speculative") (internal citation omitted); *N. Carolina State Conf. of NAACP v. McCrory*, 997 F. Supp. 2d 322, 377 (M.D.N.C. 2014) (affirmed in part and reversed in part on different grounds) (district court found that"[a]rguments concerning longer lines are speculative"). Further, as the Supreme Court held in *Renne v. Geary*, plaintiffs may not assert a claim based on allegations of past illegal conduct in elections. 501 U.S. 312, 320-21 (1991). Such a claim "'does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)). In sum, the challengers' claims based on their predictions that in the future there will be long waiting times are too speculative for the Court to adjudicate, and thus, the Court should dismiss them as unripe.

## CONCLUSION

Lee, Brescia, and the VDP have no standing to challenge the provisions of Virginia's election law. Lee and Brescia are not burdened by the provisions they challenge, and the VDP has not identified any eligible voter that has been burdened by these provisions. And complaints about supposed "long lines" in the 2016 election are speculative and not ripe for adjudication. Accordingly, the amended complaint should be dismissed.

DATED:  August 28, 2015

Respectfully submitted,

*/s/ Dana J. Finberg*
DANA J. FINBERG
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel:  (415) 757-5500.
Fax:  (415) 757-5501
dana.finberg@arentfox.com

MARK F. (THOR) HEARNE, II
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel:  (314) 296-4000
Fax:  (202) 857-6395
thornet@ix.netcom.com

STEPHEN G. LARSON
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel:  (213) 629-7400
Fax:  (213) 629-7401
stephen.larson@arentfox.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via the Court's CM/ECF system on August 28, 2015, to the following:

Joshua L. Kaul
Perkins Coie LLP
1 East Main Street, Suite 201
Madison, WI 53703

Marc E. Elias
Bruce V. Spiva
Elisabeth C. Frost
Aria C. Branch
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005-3690

*/s/ Dana J. Finberg*
Dana J. Finberg
Arent Fox LLP

*Counsel for Defendants*