IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BARBARA H. LEE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 3:15CV357-HEH |
| | ) |
| VIRGINIA STATE BOARD OF ELECTIONS, *et al.* | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION
(Denying Motion to Intervene; Granting Leave to Participate as *Amici Curiae*)

Before the Court is a Motion to Intervene through which Senator Mark Obenshain, Tammy Alexander, Sherman Cain, Tony Guiffre, Dawn Williams, Frank Birckhead, Joan Elaine Salm, John William Salm, III, Tom Lester, and Jean Gannon (collectively, the "Proposed Intervenors" or "movants") seek to intervene as defendants in the above-captioned matter. The Motion to Intervene represents that each Proposed Intervenor has a strong interest in protecting the voting laws of the Commonwealth of Virginia, which Plaintiffs challenge through this litigation—namely, Virginia's voter identification law (the "Voter ID law").[1] The movants' interests, to be discussed in more detail below, vary, however, depending upon their status. The Proposed Intervenors fall into three distinct groups: (1) Senator Mark Obenshain ("Senator Obenshain"), a current officeholder, candidate in the 2015 election for the Senate of Virginia, and potential

---

[1] Plaintiffs' Amended Complaint also challenges the allegedly long wait times to vote in Virginia and the process by which the Commonwealth restores voting rights to non-violent felons.

1

candidate in future elections; (2) Tammy Alexander, Sherman Cain, and Tony Guiffre, County Electoral Board members, and Dawn Williams, a county-level General Registrar (collectively, the "County Election Officials"); and (3) Frank Birckhead, Joan Elaine Salm, John William Salm, III, Tom Lester, and Jean Gannon, individuals registered to vote in Virginia (collectively, the "Virginia Voters"). Senator Obenshain, the County Election Officials, and the Virginia Voters seek to intervene as defendants under Rule 24 of the Federal Rules of Civil Procedure.

Rule 24 offers two avenues for intervention into a lawsuit by a non-party movant—intervention as of right and permissive intervention. A movant may intervene as of right by "claim[ing] an interest relating to the property or transaction that is the subject of the action" such that "disposing of the action as a practical matter impair[s] or impede[s] the movant's ability to protect its interests, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). At its discretion, a court may permit intervention by a movant showing "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In determining whether to allow permissive intervention, a court must also consider delay or prejudice to adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).[2] The Proposed Intervenors assert they should be granted intervention as of right under Rule 24(a)(2), or alternatively, they seek permissive intervention under Rule 24(b). For the following reasons, the Court finds that the Proposed Intervenors have failed to satisfy their burden of demonstrating a right to

---

[2] Rule 24 also allows for intervention where a federal statute confers upon a movant either "an unconditional right to intervene" or "a conditional right to intervene." Fed. R. Civ. P. 24(a)(1), (b)(1). The movants, however, do not seek to intervene pursuant to any federal statute.

intervene in the above-captioned matter, and the Court declines to allow them to permissively intervene.

A court must allow intervention as of right upon timely[3] motion if a movant demonstrates "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by the parties to the litigation." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)).

To satisfy the first requirement, a movant must show a "significantly protectable interest" in the litigation. *Teague*, 931 F.2d at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The claim "must bear a close relationship to the dispute between the existing litigants" and be direct, "rather than remote or contingent." *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993). A movant demonstrates a "significantly protectable interest" by showing the movant "stand[s] to gain or lose by the direct legal operation of the district court's judgment on [the] complaint." *Teague*, 931 F.2d at 261. To satisfy the second requirement, the movant must then demonstrate that failure to allow intervention would impair that interest. *In re Richman*, 104 F.3d 654, 659 (4th Cir. 1997); *see also Stuart*, 706 F.3d at 349.

As to the third requirement, "[i]n matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest." *Stuart*, 706 F.3d. at 351. When, as here, a duly-enacted statute faces a constitutional challenge, "the need for government to exercise its representative function is perhaps at its

---

[3] The timeliness of the Proposed Intervenors' motion is not at issue.

apex." *Id.* The Fourth Circuit has held that when a movant and a government agency defendant share the same ultimate goal, the movant must make a "strong showing of inadequacy" to satisfy the third requirement. *Id.* at 352.[4]

As noted above, the Proposed Intervenors fall into three distinct categories, each with varying interests, despite the ultimate goal of upholding the validity of the Commonwealth's current voting laws. Senator Obenshain maintains that as a current officeholder, a candidate in the 2015 election, a potential candidate in future elections, and the patron of Virginia's Voter ID law, he has a strong interest in maintaining the integrity of elections and preventing voter fraud, which would operate to cancel out legitimate votes in his favor. Similarly, the Virginia Voters assert that they are entitled to intervene based on their right to vote, and right not to have their votes diluted by the fraudulent votes they allege will be cast if the Voter ID law is declared invalid.

The County Election Officials' asserted interests are slightly different. They contend that by virtue of their positions, they are responsible for "running, clean, fair, and orderly elections." (Mem. in Supp. of Mot. to Intervene 6, Aug. 14, 2015, ECF No. 35.)

---

[4] The movants assert that their burden in showing such an inadequacy "should be treated as minimal." (Mem. in Supp. of Mot. to Intervene 8, Aug. 14, 2015, ECF No. 35 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).) Indeed, the Fourth Circuit has explained that generally, a movant need only make a "modest showing of inadequacy" where "an existing party is not likely to adequately represent the interests of another with whom it is at cross purposes in the first instance." *Stuart*, 706 F.3d at 352. Where a movant and government agency defendant, however, "share the same ultimate objective," such as sustaining the constitutionality of a statute, a movant faces the strong showing standard. *Id.* Allowing a movant to intervene with less than a strong showing in such situations "would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duties representing the people in matters of public litigation." *Id.* As the Fourth Circuit elaborated, "[i]t is not unusual for those who agree in principle to dispute particulars." *Id.* at 354. Allowing intervention as of right in those cases "risks generating endless squabbles at every juncture over how best to proceed," potentially complicating, rather than simplifying, the litigation process. *Id.* In this case, both movants and the defendants, as evidenced by their recently-filed Motion to Dismiss and articulated in their opposition to intervention, ultimately seek to uphold the validity of Virginia's statutes.

Should the outcome of this case alter the voting laws of the Commonwealth, they claim their ability to carry out their duties will be significantly burdened, as they will no longer have the power to require a voter to present identification before voting, increasing the danger of voter fraud. They also will be forced to adopt new procedures, which will inevitably necessitate additional training by the County Election Officials for the election workers in their respective counties. Additionally, should Plaintiffs prevail, the County Election Officials fear that they may be exposed to lawsuits in their personal capacities for abiding by the oath to faithfully conduct elections.[5] Accordingly, they argue the outcome of this case affects their ability to carry out their statutory duties.

Collectively, the Proposed Intervenors' chief contention is that their interests are not, and will not be, adequately represented by the defendants, despite Virginia Attorney General Mark Herring's (the "Attorney General") retention of outside counsel to defend the litigation. Much of the movants' briefing focuses on the Attorney General's role in the process of obtaining outside counsel and his official acts unrelated to this suit. The Proposed Intervenors argue that they intend to present an equal protection argument as to Section 2 of the Voting Rights Act that defense counsel did not raise in the Motion to Dismiss.[6]

---

[5] This argument assumes that presentation of identification prior to voting is required to faithfully conduct elections, and that if the Voter ID law were declared invalid, the County Election Officials would continue to require voters to present identification prior to voting, contrary to the law and presumably, contrary to their oath of office.

[6] In their Memorandum in Support of the Motion to Dismiss, the defendants draw the Court's attention to Justice Scalia's opinion in *Crawford v. Marion County Election Board*, 553 U.S. 193, 204–09 (2008). (*See* Defs.' Mem. in Supp. Mot. to Dismiss 6, Aug. 28, 2015, ECF No. 49.) Integral to his analysis is application of equal protection in the context of voting laws. Thus, while the defendants may not have presented the argument as explicitly as the Proposed Intervenors would have preferred, it cannot be said that the argument is not before the Court such that this Court would disregard the application of equal

Particularly with respect to the Virginia Voters and the County Election Officials, the Court finds no reason at this stage in the proceedings to conclude that the defendants, represented by outside counsel, will not adequately represent the interests of the Proposed Intervenors. Upon initial review of the Motion to Dismiss, it appears counsel for the defendants has presented a strong standing argument and fervent defense regarding the validity of the challenged voting laws. Ultimately, the Virginia Voters' only interest in this suit is upholding the validity of those laws, and that goal is shared with the named defendants. This Court cannot say, on the record before it, that the Virginia Voters have made the requisite strong showing of inadequacy, entitling them to intervention as of right.[7]

Likewise, the County Election Officials have failed to demonstrate that their interests are not adequately represented by the present defendants. The named defendants are the Virginia State Board of Elections (the "SBE"), the Virginia Department of Elections, and individual members thereof, whose statutory duty it is to "supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." Va. Code § 24.2-103(A). By statute, it is the responsibility of the SBE, through the Department of Elections, to "ensure that members of the electoral boards and general

---

protection to this case. Moreover, as the Fourth Circuit recognized in *Stuart v. Huff*, which this Court finds controlling, "the relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy. . . . There will often be differences of opinion among lawyers over the best way to approach a case. It is not unusual for those who agree in principle to dispute the particulars." 706 F.3d at 353–54.

[7] The Court also notes that the Virginia Voters' asserted interests are too generalized to grant intervention as of right. The particular voters seeking intervention have identified no interest distinct from that of every other registered voter in the Commonwealth, and it appears that such interests will be adequately protected by the parties presently before this Court.

6

registrars are properly trained to carry out their duties." Va. Code § 24.2-103(B). The SBE also "set[s] the training standards for officers of elections to be fulfilled by the local electoral boards and general registrars," minimizing the asserted burden on the County Election Officials. *Id.* It appears that the County Election Officials have very little discretion in the exercise of their duties, which, although mandated by statute, are closely regulated by the SBE. *See* Va. Code §§ 24.1-103, 109, 114. As such, the interests of the defendants and the County Election Officials appear sufficiently aligned, and it cannot be said on the current record that their interests are not adequately represented.

With respect to Senator Obenshain, the Court finds his asserted interests too speculative to justify intervention as of right. The present case is undoubtedly focused on the November 2016 presidential election. (*See, e.g.,* Am. Compl. ¶¶ 90–91, Aug. 14, 2015, ECF No. 36; Defs.' Opp'n to Mot. to Intervene 1, Aug. 25, 2015, ECF No. 44.) Senator Obenshain has declared his candidacy in the November 2015 election for the Senate of Virginia, and the present case cannot practically be adjudicated prior to that election. Thus, Senator Obenshain is not in a position in which he "stand[s] to gain or lose by the direct legal operation of [this] court's judgment." *Teague*, 931 F.3d at 261.

This is not to say that if he were a candidate in the 2016 election, or if this case were adjudicated on the merits prior to the 2015 election, intervention as of right would necessarily be appropriate. Certainly, Senator Obenshain's asserted interests as a candidate and future candidate include maintaining the integrity of the Commonwealth's elections and preventing voter fraud. However, this Court is tasked with maintaining the integrity of Virginia's electoral system, and in making such a judgment this Court is

7

obviously mindful that voter fraud is a significant concern. Accordingly, Senator Obenshain has failed to demonstrate that his asserted interests as a potential candidate in future elections will be impaired if he is not permitted to intervene. Furthermore, Senator Obenshain is not entitled to intervene as of right simply because he sponsored the Voter ID legislation and advocates for the common goal of voter integrity and appropriate safeguard measures. Senator Obenshain's ultimate goal in this litigation would be to have this Court uphold the validity of Virginia's Voter ID law, a goal which named defendants share. Even assuming Senator Obenshain could meet his burden in showing an appropriate interest that would be impaired, he fails to make the requisite showing of inadequacy of representation to justify intervention as of right.

In sum, the Court finds that intervention of right is not appropriate, as the Proposed Intervenors have failed to sustain their burden of demonstrating at this stage of the proceedings the requisite strong showing of inadequacy. Senator Obenshain, the County Election Officials, and the Virginia Voters have each asserted distinct interests in the adjudication of this case, but those interests are shared with the defendants presently before the Court, and at this juncture, the record fails to disclose that those interests will not be adequately represented. While Senator Obenshain also identifies additional interests, not shared with the named defendants, those interests are too speculative to warrant intervention as of right.

The Court also declines to grant the movants' request for permissive intervention. Rule 24(b) of the Federal Rules of Civil Procedure permits intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact."

8

Fed. R. Civ. P. 24(b). Before allowing permissive intervention, a court must also consider prejudice and undue delay to adjudication. Fed. R. Civ. P. 24(b)(3); *Stuart*, 706 F.3d at 355. A court does not err in exercising its discretion by denying a motion to intervene when undue delay exists without a corresponding benefit to the process, the litigants, or the court, especially where an existing party zealously pursues the same ultimate objectives as a movant. *Stuart*, 706 F.3d at 355.

Although Senator Obenshain, the County Election Officials, and the Virginia Voters, if permitted to intervene would be represented by the same counsel, the Court cannot say that allowing all ten individuals comprising these three groups to intervene would not needlessly prolong the litigation of this matter. Quoting the district court with approval in *Stuart v. Huff*, the Fourth Circuit stated,

> Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice . . . and delay trial. This is particularly so where, as here, the proposed intervenors are themselves differently situated entities. . . . [A]dding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties.

706 F.3d at 350. This case would be no different. Moreover, the Court fails to see any benefit that permitting intervention would provide which allowing the Proposed Intervenors the opportunity to participate as *amici curiae* would not. As the Fourth Circuit also stated in *Stuart*, "[w]hile a would-be intervenor may prefer party status to that of a friend-of-court, the fact remains that amici often make useful contributions to litigation." *Id.*

Permissive intervention is purely discretionary, and this Court declines to exercise

such discretion. Nonetheless, the Court will permit the Proposed Intervenors to participate as *amici curiae* and file a brief addressing the Motion to Dismiss.[8] Should the record later reveal that the representation of the interests of the Proposed Intervenors, either collectively or individually, is inadequate, the Court will grant leave to renew the Motion to Intervene. Accordingly, the Motion to Intervene will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sept 4, 2015
Richmond, Virginia

---

[8] As *amici*, the Proposed Intervenors will also be permitted to submit a memorandum of law, not to exceed twenty pages, addressing the parties' future motions seeking substantive relief.