IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

BARBARA LEE, *et al.*,               )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )          No. 3:15CV357 HEH
                                     )
VIRGINIA STATE BOARD OF ELECTIONS,   )
*et al.*,                            )
                                     )
        Defendants.                  )

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

MARK F. (THOR) HEARNE, II
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel:  (314) 296-4000
Fax:  (202) 857-6395
thornet@ix.netcom.com

STEPHEN G. LARSON
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel:  (213) 629-7400
Fax:  (213) 629-7401
stephen.larson@arentfox.com

DANA J. FINBERG
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel:  (415) 757-5500
Fax:  (415) 757-5501
dana.finberg@arentfox.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................2

I.    The three plaintiffs fail to plead a "direct injury as the result of [Virginia's] action and it is not sufficient that [these three parties have] merely a general interest common to all members of the public." .......................2

    A.    The Supreme Court's requires parties to have suffered a direct "injury-in-fact" that is concrete and particularized to them personally not the public generally ...................................................2

    B.    The two political operatives, Lee and Brescia, lack standing because they failed to plead any direct, particular and concrete "injury-in-fact." ...................................................................................4

    C.    The Democrat Party lacks standing because it failed to plead the interest of any individual member that could bring suit on his or her own behalf ..............................................................................5

    D.    The supposition of hypothetical "long lines" during the 2016 election is not ripe for adjudication ..........................................8

II.    The Democrat Party's "partisan fencing" theory is a nonjusticiable political question and invites this Court into the "political thicket." ...................10

III.    The plaintiffs fail to allege any violation of Section 2 of the Voting Rights Act ...........................................................................................................14

    A.    A party bringing a challenge under Section 2 of the Voting Rights Act must allege "necessary preconditions." ...............................14

    B.    Plaintiffs fail to allege the "necessary preconditions" to bring a Section 2 claim ....................................................................16

CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Legislative Black Caucus v. Alabama,*
135 S. Ct. 1257 (2015) ........................................................................................2, 5, 6

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) ...................................................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................10

*Babbit v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) .....................................................................................................3

*Baker v. Carr,*
369 U.S. 186 (1962) ...................................................................................................11

*Boykin v. Virginia,*
2015 WL 5020896 (E.D. Va. Aug. 20, 2015) ............................................................2

*Burdick v. Takushi,*
504 U.S. 428 (1992) ...................................................................................................16

*Colegrove v. Green,*
328 U.S. 549 (1946) ...................................................................................................10

*Cox v. Larios,*
542 U.S. 947 (2004) ...................................................................................................12

*Davis v. Bandemer,*
478 U.S. 109 (1986) ........................................................................................12, 13, 14

*Davis v. Fed. Election Comm'n,*
554 U.S. 724 (2008) .....................................................................................................1

*Friends of Earth, Inc. v. Laidlaw Environmental Services,*
528 U.S. 167 (2000) .....................................................................................................2

*Hall v. Virginia,*
385 F.3d 421 (4th Cir. 2004) .....................................................................................15

*Ex Parte Levitt,*
302 U.S. 633 (1937) ..................................................................................................2, 3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................ 3, 4, 5, 6

*Miller v. Brown*,
462 F.3d 312 (4th Cir. 2006) ........................................................... 3, 9

*Miller v. Brown*,
465 F. Supp.2d 584 (E.D. Va. 2006) ................................................... 16

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ......................................................................... 8

*Ohio Forestry Assn., Inc. v. Sierra Club*,
523 U.S. 726 (1998) ......................................................................... 8

*Renne v. Geary*,
501 U.S. 312 (1991) ......................................................................... 9

*Republican Party of N.C. v. Martin*,
980 F.2d 943 (4th Cir. 1992) ........................................................... 12

*Thornburg v. Gingles*,
478 U.S. 30 (1986) ......................................................................... 15

*United States v. Hays*,
515 U.S. 737 (1995) ......................................................................... 2

*Vieth v. Jubelirer*,
541 U.S. 267 (2004) ...............................................................*passim*

*White v. Regester*,
412 U.S. 755 (1973) ......................................................................... 15

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ......................................................................... 5

*Wright v. North Carolina*,
787 F.3d 256 (4th Cir. 2015) ........................................................... 12

**Statutes**

Voting Rights Act ......................................................... 1, 14, 15, 16

**Other Authorities**

Fourteenth Amendment ................................................................... 16

Elmer C. Griffith, *The Rise and Development of the Gerrymander* (1974) ................................ 11

## INTRODUCTION

Two political operatives and the Democratic Party of Virginia (Democrat Party) filed this lawsuit challenging certain provisions of Virginia's election law and the administration of elections in Virginia.  These three plaintiffs challenge Virginia's requirement that:  (1) a person identify themselves as an eligible voter before casting a ballot; (2) convicted felons individually apply to be added to the voter roll after completing their criminal sentence; and, (3), the plaintiffs say, long lines at polling places will burden some people's ability to cast a ballot during the upcoming 2016 election.  The plaintiffs ask this Court to find these provisions of Virginia law violate the First and Fourteenth Amendments and the federal Voting Rights Act.

Before reaching the merits of plaintiffs' challenge, it is necessary to determine whether this Court has jurisdiction over this dispute.  This Court's jurisdiction turns upon whether the three parties bringing this lawsuit have standing and whether their complaint is ripe and justiciable.  "Article III restricts federal courts [jurisdiction] to the resolution of cases and controversies.  That restriction requires that the party invoking federal jurisdiction have standing—the 'personal interest that must exist at the commencement of the litigation.'"  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732-33 (2008) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); and *Friends of Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 189 (2000)).

As we demonstrate in our opening brief and below, these three plaintiffs do not have standing and their challenge to Virginia's election law is neither justiciable nor ripe.  Accordingly, this Court should dismiss this lawsuit.[1]

---

[1] The motion to dismiss is brought under Rule 12(b)(1) and (6).  As this Court correctly noted, "A motion made pursuant to [Rule] 12(b)(1) challenges the court's jurisdiction over the subject

### ARGUMENT

**I.** **The three plaintiffs fail to plead a "direct injury as the result of [Virginia's] action and it is not sufficient that [these three parties have] merely a general interest common to all members of the public."[2]**

    **A.** **The Supreme Court's requires parties to have suffered a direct "injury-in-fact" that is concrete and particularized to them personally not the public generally.**

The Supreme Court's standard for establishing standing is undisputed:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

> *Friends of Earth*,
> 528 U.S. at 180-181.[3]

A party only has standing to challenge a provision of election law if the specific evidence demonstrates the party bringing the challenge has suffered special harm. *United States v. Hays*, 515 U.S. 737, 743-44 (1995) ("The rule against generalized grievances applies with as much force in the equal protection context as in any other…. [I]f a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.")

---

matter of the complaint…. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly it does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Boykin v. Virginia*, 2015 WL 5020896, at *3 (E.D. Va. Aug. 20, 2015) (citing, among other authorities, *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,' a plaintiff must assert 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'")).

[2] *Ex Parte Levitt*, 302 U.S. 633, 634 (1937).

[3] Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiffs acknowledge this is the standard. *See* Plaintiff's Br. at 11.

(internal quotations omitted); *see also Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1275 (2015) (Scalia, J., dissenting).  To have standing the plaintiff must satisfy the "injury-in-fact" test.  The standing analysis turns upon the injury asserted by the named parties.  "In the standing analysis, we avoid focusing on the injuries of Senator Martin, who is not a party, and concentrate on the injuries of the plaintiffs."  *Miller v. Brown*, 462 F.3d 312, 317 (4th Cir. 2006).

The Supreme Court explained, "[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review *be himself among the injured*." *Lujan*, 504 US at 563 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) (emphasis added). Plaintiffs devote substantial effort to allegations of past racial discrimination reaching back more than a century to the Civil War.  *See, e.g.*, Amended Complaint (AC) ¶¶ 16-24.  But these historical allegations are irrelevant to how the Commonwealth conducts the 2016 election.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects."  *Lujan*, 504 U.S. at 564 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); and *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

And in *Ex Parte Levitt*, 302 U.S. at 636, the Supreme Court held, "to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public."  *See also Miller*, 462 F.3d at 316 ("A claim is justiciable if 'conflicting contentions of the parties…present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'") (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); and *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).

So, given this undisputed standard, we turn to the question of whether these three parties (two political operatives in their individual capacity and the Democrat Party) have pled a complaint that satisfies the Supreme Court's standard.[4]

**B.** **The two political operatives, Lee and Brescia, lack standing because they failed to plead any direct, particular and concrete "injury-in-fact."**

Two political operatives, Barbara Lee and Gonzalo Aida Brescia, say Virginia's voter identification is a "burden" on Lee and Brescia's right to vote. Lee and Brescia do not allege they lack the identification required to cast a ballot. Lee and Brescia also say Virginia's policy requiring convicted felons to individually apply to be restored to the voter rolls is an unconstitutional burden. Lee and Brescia do not allege they are convicted felons to whom this requirement applies.

Specifically, Lee and Brescia allege Virginia's law prevents the governor from restoring the voting rights of individuals "who have served their sentence for a nonviolent felony, been released from supervised probation or parole, and have no pending felony charges, but who do not submit a form to the Secretary of the Commonwealth…." AC ¶ 112. Lee and Brescia are registered voters who do not allege the voter identification requirement prevents them from voting or will otherwise burden *their* right to vote. Rather Lee and Brescia hypothesize the challenged provisions may burden *someone else's* right to vote. But Lee and Brescia never identify who that person is. In their response, Lee and Brescia recast their purported injury as

---

[4] As noted above in note 2, this is a motion to dismiss and we believe the plaintiffs' lawsuit should be dismissed even assuming all the allegations in their complaint are true. However, should this Court not grant this motion to dismiss, the issue of standing is not settled but could still arise later in a motion for summary judgment. "In response to a summary judgment motion, [challenging standing] however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" establishing the plaintiffs' standing. *Lujan*, 504 U.S. at 561.

4

having to *present* identification.  Lee and Brescia suggest this is an "injury" because they could hypothetically lose their identification between now and the next election.  Plfs' Br. at 17.  This is a speculative hypothetical, not a concrete actual injury upon which standing can be established.

Rather than complaining about an infringement of *their* right to vote, Lee and Brescia complain about a hypothetical burden upon others who are not party to this lawsuit.  That is another way of saying Lee and Brescia have not suffered a personal or concrete injury to *their* right to vote.  Accordingly, Lee and Brescia lack standing to bring this challenge.

      **C.**     **The Democrat Party lacks standing because it failed to plead the interest of any individual member that could bring suit on his or her own behalf**.

The Democrat Party is in the same situation as Lee and Brescia – it is asserting a claim based upon hypothetical claims of those who are not a party.  The Democrat Party fails to identify a single convicted felon or qualified Virginia voter whose right to vote is abridged by Virginia's election regulations, nor does the Democrat Party identify any eligible Virginia voter who will be prevented from casting a ballot in the 2016 election due to purported long lines.

Last term, the Supreme Court held an association may have standing to "bring a suit on behalf of its members *when its members would have standing to sue in their own right*." *Alabama Legislative Black Caucus*, 135 S. Ct. at 1268 (emphasis added).  But the Court required the individual members' injury be actual or imminent and the members be identified.  *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  In the leading case, *Lujan*, the Court held an environmental organization, Defenders of Wildlife, did not have standing even though it identified members who professed the desire to travel to Egypt to see the endangered Nile Crocodile.  504 U.S. at 563.  The Court recognized the identified members' interest to be valid

but held the Defenders of Wildlife nonetheless lacked standing because they did not assert an actual, imminent injury.  In reaching this holding the Court emphasized that standing must be premised upon concrete reality not a hypothetical possibility.  The Court held that "'some day' intentions" failed to provide the "concrete" support for "a finding of the 'actual or imminent' injury that our cases require." *Id*.

In *Alabama* the Court required the association (the Alabama Democratic Conference) to identify specific members that individually had standing and were a member of the organization. 135 S. Ct. at 1270.  In *Alabama* the Court held the Alabama Democratic Conference had standing to assert a challenge for only those members the Conference identified as residing in each of the specific challenged legislative districts.  *Id.* at 1269.  It was not enough for the Conference to say it had members that hypothetically were subject to the challenged election law; the Conference must identify the specific members in the specific districts.  *Id.* at 1269-70. The Supreme Court (over the dissent of four members) allowed the Conference to identify the specific members who could raise the challenge by filing a supplemental statement identifying these individual members.  *Id.* at 1269 ("procedural fairness required that the District Court, rather than acting *sue sponte*, give the Conference an opportunity to provide evidence of member residence" in the challenged legislative districts).

In its original complaint the Democrat Party did not identify *any* individual member of the Democrat Party whose right to vote was burdened by the challenged provisions of Virginia law.  The Democrat Party did not identify any member who is a qualified Virginia voter and did not possess (or could not obtain) the required identification.  The Democrat Party did not identify any convicted felon that is a member and who, by reason of the challenged felon re-enfranchisement requirements, is denied his right to vote.

The plaintiffs requested additional time to amend their complaint "because Plaintiffs anticipate seeking to add at least one additional plaintiff to this lawsuit."  Plfs' Brief in Support of their Motion for Extension of Time, Doc. No. 23 (filed July 17, 2015), p. 2.  This Court granted the Democrat Party's request allowing the plaintiffs to file a new complaint adding additional parties.  Order of July 21, 2015, Doc. No. 25.  The new complaint fails to add any new parties.  And the Democrat Party's new complaint further fails to identify *any* individual member of the Democrat Party who is unconstitutionally burdened by the challenged voter identification provisions or felon re-enfranchisement requirements.  Should such a person exist, the Democrat Party was provided opportunity to identify him (as the Conference did in *Alabama*) or add those individuals as additional parties.  The Democrat Party did not do so.  The obvious reason the Democrat Party did not add any additional parties nor identify any specific member burdened by the challenged provisions is because such persons do not exist.  Thus, failing to identify any member that would have standing to challenge these provisions of Virginia election law in his own right, the Democrat Party lacks standing to make this challenge on behalf of a nonexistent member and its claim should be dismissed.

Finally, plaintiffs' felon re-enfranchisement theory (even if an actual convicted felon had raised this challenge) should be dismissed because there is no redressability.  The amended complaint challenges the requirement that convicted felons apply to be returned to the voter roll after completing their criminal sentence.  AC ¶ 112.  Plaintiffs want some type of automatic felon re-enfranchisement by which all felons are placed on the voter rolls without having to apply.  Plaintiffs ask this Court to enjoin Virginia election officials from enforcing "*all laws* that prevent from registering to vote and voting any individual convicted of a nonviolent felony who has served his or her sentence, been released from supervised probation or parole (if he or she

was sentenced to supervised probation or parole), and has no pending felony charges;" whether or not such felon has applied to have his or her voting rights restored.  AC p. 38 ¶ B (emphasis added).  But redress of this "injury" (a felon having to individually ask to be returned to the voter roll) and the remedy the plaintiffs request (automatically returning felons to the voter roll) requires action by all Virginia election officials including local election officials not party to this case.

> **D.**     **The supposition of hypothetical "long lines" during the 2016 election is not ripe for adjudication**.

The Supreme Court teaches, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)).[5]  The Court continued to note "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  *Id*. (quoting *Reno v. Catholic Social Services, Inc*., 509 U.S. 43, 57, n.18 (1993)).  The Court then held a challenge is not ripe for judicial review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him."  *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808.

---

[5] *See also, Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998).

In *Miller v. Brown*, the Fourth Circuit similarly noted, "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). The burden of proving ripeness falls on the party bringing suit. *Renne v. Geary*, 501 U.S. 312, 316 (1991). Analyzing ripeness is similar to determining whether a party has standing." The Fourth Circuit continued and held, "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* (citing *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)).

Plaintiffs' theory is premised upon a supposition about future events, not a present concrete injury. The amended complaint states "long lines are likely to recur in the 2016 general election" because "[n]o legislation passed since at least 2009 will prevent long wait times to vote from recurring in the 2016 election." AC ¶¶ 83, 90.

Does this allegation of long lines at polling places in 2016 plead a controversy that is "final and not dependent on future uncertainties?" Is the allegation of long lines in the 2016 election "a controversy…presented in 'clean-cut and concrete form?'" If so, where are the long lines, at which polling places and, importantly, how does the allegation of long lines at some unspecified polling places burden Lee and Brescia's right to vote? And, if the hypothetical long lines burden some members of the Democrat Party, the Democrat Party should identify which of its members these supposed "long lines" unconstitutionally burden. And, finally, how is this allegation of "long lines" in the 2016 election to be redressed by this Court?

Simply put, the plaintiffs want to litigate a hypothetical that does not exist. As such the plaintiffs fail to present a controversy that is ripe and fit for judicial decision.

II.    **The Democrat Party's "partisan fencing" theory is a nonjusticiable political question and invites this Court into the "political thicket."**

The plaintiffs' make what they call a "partisan fencing'" claim.   Plfs' Br. at 7-9. Basically the Democrat Party alleges the Republican majority in Virginia's General Assembly enacted the challenged provisions of Virginia law for the sole purpose of gaining a partisan advantage for the Republican Party.   This theory invites this Court into what Justice Frankfurter said federal court's should avoid – the "political thicket."   *See Colegrove v. Green*, 328 U.S. 549, 556 (1946).

We dispute the plaintiffs' factual supposition.   The challenged provisions of Virginia law were not adopted to benefit the Republican Party as opposed to providing for the fair, orderly and honest administration of Virginia's elections.   But, even accepting the Democrat Party's allegation that these provisions of Virginia law were adopted for the sole and exclusive purpose of benefiting the Republican Party, the complaint still fails to state a justiciable claim.[6]

The Supreme Court has unequivocally held these types of partisan political questions are not justiciable.   *Vieth v. Jubelirer*, 541 U.S. 267 (2004), is the leading authority.   *Vieth* held challenges to election laws as being unfair to one political party (or to voters of one political party) are nonjusticiable.   *Id.* at 281.   The Court said this was so because, in part, there is no standard of political fairness a court can apply to referee partisan quarrels.[7]   *Vieth* noted that

---

[6] This is a motion to dismiss under Rule 12(b)(1) and (b)(6).   As such, we recognize the rule that our motion to dismiss is evaluated assuming all of the non-moving party's allegations are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).    But, even under this very favorable standard, the plaintiffs' lawsuit should be dismissed.

[7] There is an important distinction when the desire to achieve a partisan benefit violates the Equal Protection Clause guarantee of one-person, one-vote.   But the plaintiffs have not pled the challenged provisions violate the one-person, one-vote principle nor any fundamental right guaranteed by the Constitution that is evaluated under the strict scrutiny standard.   *See Vieth*, 541 U.S. at 290 ("Our one-person, one-vote cases have no bearing upon this question, neither in

since the beginning of our nation "It was generally conceded that each party would attempt to gain power which was not proportionate to its numerical strength." *Id.* at 275.[8]

> *Vieth* arose when:
>
>> Pennsylvania's General Assembly took up the task of drawing a new districting map. At the time, the Republican Party controlled a majority of both state Houses and held the Governor's office. Prominent national figures in the Republican Party pressured the General Assembly to adopt a partisan redistricting plan as a punitive measure against Democrats for having enacted pro-Democrat redistricting plans elsewhere.

541 U.S. at 272.

The Democrat Party and registered Democrat voters sued Pennsylvania saying the redistricting plan was a political gerrymander that violated, among other provisions, the Equal Protection Clause. *Vieth*, 541 U.S. at 272. The Democrat Party claimed a Republican-controlled majority in Pennsylvania enacted the scheme for the exclusively partisan purpose of benefiting Republicans and punishing Democrats. The Court, however, held such a partisan dispute is not justiciable because, "the law is that the judicial department has no business entertaining the claim of unlawfulness – because the question is entrusted to one of the political branches or involves no judicial enforceable rights." *Id.* at 277. The Court found this type of partisan political dispute to be a nonjusticiable political question. *Id.* The Court relied on its previous decision in *Baker v. Carr*, 369 U.S. 186, 217 (1962), defining six independent tests for a nonjusticiable political question – the second and third of which are especially relevant to this lawsuit. To wit: "[2] a lack of a judicially discoverable and manageable standards for resolving [the dispute]; or

---

principle nor in practicality."). Indeed, to the contrary, plaintiffs say this is *not* based upon racially disparate impact or other theory subject to strict scrutiny. See our discussion below and Plfs' Br. at 7.

[8] Citing Elmer C. Griffith, *The Rise and Development of the Gerrymander* (1974), p. 123.

[3] the impossibility of deciding without an initial determination of a kind clearly for nonjudicial discretion." *Vieth*, 541 U.S. at 277-78.

Before *Vieth* there was *Davis v. Bandemer*, 478 U.S. 109 (1986). In *Bandemer*, a plurality of the Court concluded "a political gerrymandering claim could succeed only where plaintiffs showed 'both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group." *Id.* The *Bandemer* standard had both an intent and effects prong.[9] But the standard was "unmanageable," "arbitrary," provided "little concrete guidance," "recondite," and lead to "one long record of puzzlement and consternation" in the lower courts. *Id.* at 282-83. Even before the Supreme Court overruled *Bandemer*, the Fourth Circuit noted, "We are cognizant of the heated debate surrounding the wisdom and reasoning of the *Bandemer* decision." *Republican Party of N.C. v. Martin*, 980 F.2d 943, n.15 (1992).[10]

The Supreme Court said *Bandemer* must be overturned because, under *Bandemer*, judges were asked to decide partisan disputes without any rulebook. It was like asking an umpire to referee the World Series calling balls and strikes without a strike zone and calling plays, such as the infield fly rule, without a rulebook.[11]

_____

[9] The Court explained the inadequacies of the *Bandemer* test in *Vieth*, 541 U.S. at 281-82.

[10] Because of Justice Kennedy's concurrence, a Fourth Circuit panel found *Vieth* was not a "per se" holding that political gerrymandering claims are nonjusticiable. *See Wright v. North Carolina*, 787 F.3d 256, 269 (4th Cir. 2015). But there is no question a majority of the Supreme Court overturned *Bandemer* finding there is no standard by which a court may resolve a partisan political dispute. The one-person, one-vote principle is the only remaining standard to apply, and plaintiffs do not premise the theory of their challenge on that principle. *See Cox v. Larios*, 542 U.S. 947, 949-50 (2004) (Stevens, J., concurring) ("After our recent decision in *Vieth* [], the equal-population principle remains the only clear limitation on improper districting practices….").

[11] During his confirmation hearings, Chief Justice Roberts explained:

> Judges and Justices are servants of the law, not the other way around. Judges are like umpires. Umpires don't make the rules, they apply them. The role of an

Because it was impossible for lower courts to apply *Bandemer*, the Supreme Court overruled *Bandemer* and explicitly held partisan quarrels over one party gaining (or attempting to gain) "unfair" advantage over the other party could not give rise to a justiciable controversy "in principle nor in practicality."  *Vieth*, 541 U.S. at 290.  "Not in principle, because to say that each individual must have an equal say in the selection of representatives, and hence that a majority of individuals must have a majority say, is not at all to say that each discernible group, whether farmers or urban dwellers *or political partie*s, must have representation equivalent to its numbers."  *Id.* (emphasis added).

The Court continued, "Not in practicality, because…requiring judges to decide whether a statewide districting system will produce a statewide majority for a majority party casts them forth on a sea of imponderables, and asks them to make determinations that not even election experts can agree upon."  *Vieth*, 541 U.S. at 290.  Therefore, because such partisan political challenges lack any discernible or manageable standard by which federal courts may decide the challenge, the Court held the challenge nonjusticiable.  *Id.*  And the Court proceeded to overrule its previous decision in *Bandemer* holding, "[e]ighteen years of pointless litigation have persuaded us that *Bandemer* is incapable of principled application.  We would therefore overrule that case, and decline to adjudicate these political gerrymandering claims."  *Id.* at 304.  Justice Kennedy concurred in the decision overturning *Bandemer* because there was no discernible or manageable standard by which to adjudicate partisan gerrymander cases.  *Id.* at 304-17.

---

umpire and a judge is critical.  They make sure everybody plays by the rules, but it is a limited role.  Nobody ever went to a ball game to see the umpire….  I will remember that it's my job to call balls and strikes, and not to pitch or bat.

Statement of Chief Justice Roberts – Nomination Process, available at: <http://www.uscourts.gov/educational-resources/educational-activities/chief-justice-roberts-statement-nomination-process>.  *See also* William S. Stevens, *Aside, The Common Law Origins of the Infield Fly Rule*, 123 U. PENN. L. REV. 1474 (1975).

*Vieth* and *Bandemer* are redistricting cases.  But this is a distinction without a difference as it relates to the principle upon which the Supreme Court decided *Vieth* – a principle equally applicable here.   The partisan gerrymander challenge in *Vieth* and *Bandemer* was that the political party in majority control of the state legislature used their majority control to tilt the political paying field in their favor – specifically by reapportioning the state legislature in a manner that allowed them to gain an electoral advantage.  This is precisely what the plaintiffs allege here.  And this type of claim – that the majority party adopted legislation to gain a partisan advantage in electing members of its party – is what the Court said was not justiciable.

Thus, we are left with this.   While the Democrat Party's contention the Republican majority adopted the challenged provisions of Virginia law to favor Republicans may have been a colorable theory under *Bandemer*, after *Vieth* the theory is a nonjusticiable political dispute.

## III.    The plaintiffs fail to allege any violation of Section 2 of the Voting Rights Act.

### A.    A party bringing a challenge under Section 2 of the Voting Rights Act must allege "necessary preconditions."

Section 2 of the Voting Rights Act of 1965 prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in certain designated language minority groups.[12]   Section 2 allows a person affected by a voting "standard, practice or procedure" to

---

[12] Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 (formerly 42 U.S.C. § 1973), provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

> (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to

bring a vote dilution claim.  A vote dilution claim alleges that a particular practice operates "to cancel out or minimize the voting strength" of a minority group.  *White v. Regester*, 412 U.S. 755, 765 (1973).

A plaintiff must prove the challenged election practice or procedure was adopted for the invidious purpose and had the result of denying a racial or language minority an equal opportunity to participate in the political process.  The Supreme Court requires "necessary preconditions" for a party to bring a Section 2 claim.  *See Thornburg v. Gingles,* 478 U.S. 30, 49 (1986).  The Fourth Circuit explained:

> The minority group must be able to (1) "demonstrate that it is sufficiently large and compact to constitute a majority in a single member district," (2) "show that it is politically cohesive," and (3) "demonstrate that the white majority votes sufficiently as a bloc to enable it…usually to defeat the minority's preferred candidate." [*Gingles*] at 50-51, 106 S. Ct. 2752.
>
> Proof of the *Gingles* preconditions is not alone sufficient to establish a claim of vote dilution under Section 2.  "The ultimate determination of vote dilution under the Voting Rights Act still must be made on the basis of the 'totality of the circumstances.'" *Lewis v. Alamance County*, 99 F.3d 600, 604 (4th Cir.1996) (internal quotations omitted).  On the other hand, the failure of a minority group to satisfy all of the *Gingles* preconditions means that it cannot sustain a claim under Section 2 that the challenged electoral practice "impede[s] the ability of minority voters to elect representatives of their choice." *Gingles*, 478 U.S. at 48.

> *Hall v. Virginia*,
> 385 F.3d 421, 426 (4th Cir. 2004).

---

participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.  The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered:  *Provided*, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

**B.     Plaintiffs fail to allege the "necessary preconditions" to bring a Section 2 claim**.

Plaintiffs raise a Section 2 Voting Rights Act challenge to Virginia's voter identification law.  AC ¶¶ 100-107.  In our opening memorandum we noted "Plaintiffs do not allege Virginia's voter identification law, or other challenged provisions, actually had an adverse and disparate impact on African-American and Latino voters during the 2014 election.  Nor do they allege Virginia intended to suppress Democrat voters or discriminate against any protected class or group."  Plfs' Br. at 3.  And, in either event, we said the individual plaintiffs bringing this action lacked standing to do so because they are not injured by the voter identification requirement because they possess the required identification.

Plaintiffs responded with the amazing statement, "Defendants' argument that Plaintiffs failed to plead cognizable First and Fourteenth Amendment claims focuses exclusively on disparate impact on the basis of race, but Plaintiffs have not pled such a claim.  Rather, *Anderson-Burdick* governs Plaintiff's First and Fourteenth Amendment claims."  Plfs' Br. at 7.  This is an amazing statement because it acknowledges they do not claim the challenged provisions have a racially-disparate impact, and it further acknowledges the challenged provisions are reviewed under a rational basis standard, not strict scrutiny.

*Anderson-Burdick* refers to the Supreme Court's decisions in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).  *Burdick* is the most recent of these two decisions in which, as this Court explained, "In *Burdick* the Court reiterates that 'when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions.'" *Miller v. Brown*, 465 F. Supp.2d 584 (E.D. Va. 2006) (citing and quoting *Burdick*, 504 U.S. at 434, and *Anderson*, 460 U.S. at 780, 788).

By invoking the *Anderson-Burdick* standard, plaintiffs are saying strict scrutiny of the challenged election laws does not apply and their challenge is "governed" under the *Anderson-Burdick* rational basis standard.  Plaintiffs also state they "have not pled" a claim alleging the challenged provisions have a "disparate impact on the basis of race."  Plfs' Br. at 7.  To be sure, plaintiffs' complaint alleges a "disparate impact on African-American and Latino citizens of Virginia," but their response brief seems to disclaim this allegation; and, in either event, Lee and Brescia are admittedly not among those actually injured by Virginia's voter registration requirement.

**CONCLUSION**

This Court should dismiss the plaintiffs' lawsuit because Lee, Brescia, and the Democrat Party do not have standing to challenge these provisions of Virginia election law.  Lee and Brescia do not allege they lack the identification necessary to vote nor do Lee and Brescia allege they are subject to Virginia's felon re-enfranchisement requirement.  And the Democrat Party has not identified any member that is unconstitutionally burdened by these provisions.  The allegations about "long lines" that will hypothetically occur at unidentified polling places in the 2016 election is not a controversy ripe for adjudication.

September 23, 2015                           Respectfully submitted,

*/s/ Dana J. Finberg*
DANA J. FINBERG
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel:  (415) 757-5500.
Fax:  (415) 757-5501
dana.finberg@arentfox.com

MARK F. (THOR) HEARNE, II
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel:  (314) 296-4000
Fax:  (202) 857-6395
thornet@ix.netcom.com

STEPHEN G. LARSON
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel:  (213) 629-7400
Fax:  (213) 629-7401
stephen.larson@arentfox.com

*Counsel for Defendants*

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's CM/ECF system

on September 23, 2015, to the following:

Joshua L. Kaul
Perkins Coie LLP
1 East Main Street, Suite 201
Madison, WI 53703

Marc E. Elias
Bruce V. Spiva
Elisabeth C. Frost
Aria C. Branch
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005-3690

/s/ Dana J. Finberg
DANA J. FINBERG
Arent Fox LLP

*Counsel for Defendants*