**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| BARBARA H. LEE, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action No:   3:15 CV 357 |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) | |
| | ) | United States District Judge |
| | ) | For the Eastern District of Virginia |
| *Defendants*. | ) | |
| | ) | |

**NON-PARTY LEGISLATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR STAY OF DISCOVERY AND MOTION TO QUASH SUBPOENAS AND/OR FOR PROTECTIVE ORDER**

## INTRODUCTION

It is well-established that state legislators and their legislative agents possess an absolute privilege against being questioned or producing documents regarding their legislative activity. This absolute legislative privilege safeguards legislative independence and promotes free, robust, and effective debate and deliberation on matters of legislative concern.  Even before this Court has ruled on Defendants' pending Motion to Dismiss in this case, however, Plaintiffs have issued overly broad subpoenas to members of the Virginia General Assembly (the "Legislators") – all non-parties to this litigation – that seek significant amounts of irrelevant and/or privileged communications and information within the sphere of legitimate legislative activity.  The Court should stay any discovery against the Legislators pending its forthcoming ruling on the Motion to Dismiss, quash the unduly broad and burdensome subpoenas, or, in the alternative, issue a protective order.

1

## STATEMENT OF THE CASE

On August 14, 2015, Barbara H. Lee, et al. (the "Plaintiffs"), filed an Amended Complaint alleging that Virginia's voter identification law,[1] long waiting times at polling places, and case-by-case approach to re-enfranchising nonviolent felons are unlawful.  *See*  Compl. ¶ 5 (Dkt. No. 37).  Defendants moved to dismiss the Complaint two weeks later.  Defs.' Mem. In Support of its Mot. To Dismiss at 3 (Dkt. No. 49).  The grounds raised in Defendant's Motion to Dismiss are purely legal.  For example, Defendants contend that the Plaintiffs do not allege that any of the challenged provisions had an adverse and disparate impact on minority voters during the 2014 election or that the Commonwealth intended to suppress Democrat voters, and that certain Plaintiffs lack standing.  Defendants also argue that Plaintiffs' requested relief concerning Virginia's case-by-case nonviolent felon reinstatement policy and certain of Plaintiffs' claims are not justiciable or constitutionally cognizable.  Defendants' Motion to Dismiss is fully briefed and pending a decision from this Court.

On Friday, September 11, 2015, while briefing on the Motion to Dismiss was ongoing, Plaintiff served non-party subpoenas on twenty-four members of the Virginia General Assembly. (Ex. A).  Each subpoena demands the production of "all communications between *any* person" and the member of the General Assembly, as well as the member's "employees, staff, agents,

---

[1] Virginia's voter identification law predates the legislation Plaintiffs challenge in this case.  As we read Plaintiff's Complaint, Plaintiffs' challenge is to legislation enacted in 2012-2013 that amended Virginia's existing voter identification requirements, namely 2012 Va. Laws Ch. 839 (SB 1), 2013 Va. Laws Ch. 725 (SB 1256), and 2015 Va. Laws Ch. 571 (HB 1653).

[2] The origin of this five-factor test raises illustrates its questionable value, and makes clear that it is *not* a product of legislative privilege doctrine.  The test itself derives from a 1979 case decided in the Eastern District of New York, in which the five factors were used to evaluate claims of "official information privilege" in litigation between the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency.  *See In re Franklin Nat'l Bank Sec. Litigation*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979).  Legislative privilege was not at issue.  Twenty-four years later, a Southern District of New York decision employed the *Franklin Nat'l Bank* test to

vendors, or consultants" concerning or referring to the following topics: (i) Virginia Senate Bills 1, 663, 702, 964, 1150, 1256 (passed by the General Assembly in the years specified in the subpoena); (ii) voter identification, including free voter ID; (iii) voter wait times at polling stations; and (iv) re-enfranchisement of nonviolent felons for a period of time beginning January 1, 2008 through the present day. (Ex. A at 5) (emphasis added). The Legislators now move for relief from the subpoenas.

## ARGUMENT

The Court should stay any discovery against the Legislators pending its forthcoming ruling on the motion to dismiss, quash the unduly broad and burdensome subpoenas, and/or issue a protective order. *First*, Plaintiffs' subpoenas put the cart before the horse because the Court has not yet ruled on the legal challenges to the sufficiency of Plaintiffs' Amended Complaint raised in Defendants' fully briefed Motion to Dismiss. If the Defendants' Motion is granted in whole or in part, the scope of any discovery, if permissible at all, may be dramatically limited by the dismissal of some or all of the counts or theories raised in the complaint. Thus, the interests of judicial economy warrant staying any discovery requests against the Legislators until the Court rules on the Motion to Dismiss.

*Second*, the Court also should quash these subpoenas on two separate bases. In the first instance, Plaintiffs' subpoenas seek information from sitting state legislators and demand their communications concerning introduced and enacted legislation and various legislative topics. Merely to describe the information Plaintiffs seek is to reveal that it falls within the broad shield of Virginia's well-recognized legislative privilege. Indeed, the topics specified in the subpoenas include enumerated Virginia Senate bills and quintessential legislative issues regarding election administration such as voter identification, wait times at polling places, and felon re-

enfranchisement.  The subpoenas seek, without qualification, all communications and documents on these legislative matters involving the Legislators or their employees, staff, agents, vendors, or consultants.  Plaintiffs seek communications between members of the general public and members of the General Assembly and members' employees, staff, agents, vendors, or consultants regarding the specified topics.  Many of these topics, however, are irrelevant to Plaintiffs' lawsuit – and all are protected by well-established and recognized legislative privilege.  Each legislator who was subpoenaed by Plaintiff, and is represented by this Motion, asserts this privilege.

Moreover, the scope of these requests, the time frames requested, and the lack of any clear tie between the allegations in the complaint and any specific information from these discovery requests beyond a broad and sweeping "fishing expedition" is difficult to comprehend. The subpoenas are overly broad. Information is sought from non-parties, and the subpoenas demand the production of documents not under the control of the Legislators, such as communications between "any person" and a consultant, vendor, on contractor for each of the Legislators.  The subpoenas are overly burdensome.  Each subpoena requires a sitting Legislator to search numerous mailboxes for responsive documents, including legislative, business, personal, and campaign mailboxes, as well as mailboxes not under the ownership or control of the Legislator, plus communications existing in written or other non-electronic form.   We estimate that conducting these searches for responsive documents, not to mention assembling a privilege log, will cost just three legislators alone approximately $816,450.00. This is extremely burdensome, especially when imposed on non-parties while a fully-briefed motion to dismiss is pending.

Finally, in the alternative, even if the Court decides not to stay discovery against the Legislators or to quash the subpoenas, it should at a minimum issue a protective order to safeguard the Legislators' legislative communications and deliberations, and to narrow the subpoenas' scope to permissible bounds.

## I.   THIRD PARTY DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE COMMONWEALTH'S MOTION TO DISMISS

"The decision of whether to stay discovery is committed to the sound discretion of the district court." *Geiser v. Simplicity, Inc.*, 2011 U.S. Dist. LEXIS 4243, *11 (N.D. W. Va. Jan. 14, 2011). "Discovery is considered inappropriate … while a motion that would be dispositive of the claims in the complaint is pending." *Id.*

The court in *Geiser* applied the following test:

> In deciding whether to grant a protective order staying discover before pending motions can be heard, the Court must apply a two-prong analysis: 1) the pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed and 2) the court must determine whether the pending dispositive motion can be decided absent additional discovery.

*Id.* *12-*13 (citing *Church of Scientology of San Francisco v. IRS*, 991 F.2d 560, 563 (9th Cir. 1993)). Thus, a stay is particularly appropriate "'where there are no factual issues in need of further immediate exploration and the issues before the Court are purely questions of law.'" *Id.* *12 (quoting *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)).

Defendants' fully briefed Motion to Dismiss is a dispositive motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The issues presented in the Motion to Dismiss are purely issues of law, such as whether there exists a claim or controversy upon which relief can be granted, whether the Plaintiffs have standing, and whether certain claims are ripe for adjudication. There are no factual issues presented in the Defendants' Motion to Dismiss that could turn on responses to the discovery Plaintiffs have requested from the Legislators. A ruling

in Defendant's favor on the Motion to Dismiss would bring this matter to an end, and even a ruling granting Defendant's motion *in part* could dramatically narrow the claims or theories presented and, thus, change the scope of the case and of any permissible discovery considerably. Requiring the non-party legislators to comply with Plaintiff's discovery requests at this time, prior to a ruling on the pending dispositive Motion to Dismiss, would place an undue burden on the non-party legislators where "there are no factual issues in need of further immediate exploration." *Id.* *12 (quoting *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)).  The Court should stay discovery against the Legislators pending its ruling on the Motion to Dismiss.

## II.  THE INFORMATION SOUGHT BY PLAINTIFFS IS PRIVILEGED

### A.  The Subpoena Seeks Information That Is Protected By Absolute Legislative Privilege.

The broad and well-established absolute legislative privilege protects the Legislators from any compelled response to Plaintiffs' subpoenas.  Courts, including the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit, have "broadly recognized the right 'of legislators to be free from arrest or civil process for what they do or say in legislative proceedings.'"  *Equal Emp't Opportunity Comm'n v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011) (quoting and citing *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)).  "This privilege similarly prohibits the production of documents pertaining to legislative activities."  *Bethune-Hill v. Va. State Bd. of Elections*, 2015 U.S. Dist. LEXIS 68054 at *12 (E.D. Va. May 26, 2015) (citing *U.S. v. Rayburn House Office Bldg., Room 2113, Washington, DC 20515*, 497 F.3d 654, 600 (D.C. Cir. 2007)); *see also Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) ("Legislative immunity not only protects state legislators from civil liability, it also functions as an evidentiary and testimonial privilege.").

6

This right is rooted in the absolute immunity granted by the Speech or Debate Clause of the United States Constitution.  U.S. Const. art. I, § 6.  The Speech or Debate Clause provides federal legislators with immunity for those "[t]hings generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881); *see also United States v. Brewster*, 408 U.S. 501, 525 (U.S. 1972) ("It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.").  "Legislative privilege against compulsory process exists to safeguard this legislative immunity."  *Wash. Suburban Sanitary*, 631 F.3d at 181.

Two sources of legislative immunity protect Virginia's legislators: (1) immunity deriving from federal common law, as described in *Tenney*; and (2) immunity derived from the state's constitution.  The Supreme Court long ago extended the full scope and breadth of this legislative immunity to state legislators.  *Tenney*, 341 U.S. at 372; *see also EEOC v. Washington Suburban Sanitary Commission*, 631 F.3d 174, 180-81 (4th Cir. 2011); *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) ("local legislators are entitled to absolute immunity when acting in a legislative capacity"); *Marylanders for Fair Representation, Inc. v. Shaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) ("The *Tenney* Court created absolute immunity from civil suit for state legislators acting within 'the sphere of legitimate legislative activity.'").  In civil matters, the legislative immunity accorded to state legislators is coextensive with that of federal legislators under the Speech or Debate Clause.  *See* S*upreme Court v. Consumers Union of United States*, 446 U.S. 719, 733 (1980).

Separately, the Constitution of Virginia expressly immunizes legislators with parallel protections.  Va. Const. art. IV, § 9 ("Members of the General Assembly shall, in all cases except

treason, felony, or breach of the peace, be privileged from arrest during the sessions of their respective houses; and for any speech or debate in either house shall not be questioned in any other place."); *see also* Va. Code Ann. §§ 30-4, 30-6.  Together, Virginia state constitutional and statutory law provides "legislative immunity for actions taken while within 'the sphere of legitimate legislative activity.'"  *Schiltz v. Commonwealth of Virginia*, 854 F.2d 43, 45 (4th Cir. 1988) (recognizing that *Tenney* extended the protection of the Speech or Debate Clause to state legislators), *overruled on other grounds*, *Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995).  Virginia's constitutional "speech or debate" provision has been interpreted as providing the same protections as the Speech or Debate Clause of the U.S. Constitution.  *See Greenburg v. Collier*, 482 F. Supp. 200, 202 (E.D. Va. 1979) ("The state and federal immunities are very similar in their wording.  Further, they appear to be based upon the same historical and public policy considerations.").

Legislative immunity "insure[s] that the legislative function may be performed independently without fear of outside interference."  *Supreme Court of Virginia v. Consumers Union, Inc.,* 446 U.S. 719, 732 (1980).  As the Fourth Circuit explained:

> Legislative immunity's practical import is difficult to overstate.  As members of the most representative branch, legislators bear significant responsibility for many of our toughest decisions from the content of the laws that will shape our society to the size, structure and staffing of the executive and administrative bodies carrying them out.  Legislative immunity provides legislators with the breathing room necessary to make these choices in the public's interest, in a way "[un]inhibited by judicial interference [and] [un]distorted by the fear of personal liability."  *Bogan*, 523 U.S. at 52.  It allows them to focus on their public duties by removing the costs and distractions attending lawsuits.  It shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box.

*Washington Suburban Sanitary Commission*, 631 F.3d at 181.  "The purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not

they are testifying to defend themselves." *Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988), *overruled on other grounds*, *Berkley v. Common Council*, 63 F.3d 295 (4th Cir. 1995).

The "legislative function" to which the privilege applies includes "things generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (U.S. 1881). This, of course, includes "the preparation and introduction of legislation for the legislature . . . to consider and accept or reject." *Marylanders for Fair Representation, Inc. v. Shaefer*, 144 F.R.D. 292, 300 (D. Md. 1992). The Supreme Court explained:

> The heart of the [Speech or Debate] Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States*, 408 U.S. 606, 625 (1972).

The Fourth Circuit has described legislative immunity as "absolute." *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996); *see also Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1069 (D. Ariz. 2014) ("The Fourth Circuit has recognized … a seemingly absolute privilege against compulsory evidentiary process for state legislators and other officials acting in a legislative capacity."). The scope of legislative immunity is necessarily broad and fully protects "those engaged in legislative functions against the pressures of litigation and the liability that may result." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014); *see also Bd. of Supervisors of Fluvanna Cnty v. Davenpot & Co.*, 742 S.E.2d 59, 62-63 (Va. 2013).

The Fourth Circuit explained that "[b]ecause litigation's costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued."

*Wash. Suburban Sanitary*, 631 F.3d at 181.  As the D.C. Circuit recognized, "[a] litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work.   Discovery procedures can prove just as intrusive."   *Minpeco, S.A v. Conticommodity Services, Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988).

Legislative privilege protects not only legislators, but "all those acting in a legislative capacity," and extends to legislative aides, experts, and consultants who advise legislators. *McCray*, 741 F.3d at 485; *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (recognizing that legislative immunity barred suit against Members of Congress and also "Committee staff" and a "consultant"); *Gravel v. United States*, 408 U.S. 606, 616 (1972) (applying legislative privilege to Member of Congress and his aides and assistants).

Plaintiffs' subpoenas are aimed directly at the Legislators and their legitimate legislative activity. *See* Decl. of Senator Vogel ¶ 9; Decl of Torchinsky ¶ 6; Decl. of Senator Reeves ¶ 5. Indeed, Plaintiffs' subpoenas seek communications from sitting Legislators about matters that go to the very heart of the legislative privilege.  For example, the subpoenas—served a mere six weeks in advance from legislative elections—request all communications between each Legislator, and *anyone*, including other legislators and legislative employees, staff, and consultants, from 2008 to the present, concerning six enumerated pieces of legislation considered by the Virginia Senate.  (Ex. A at 5).  And the subpoenas do not stop there: they also seek all communications involving the Legislator or employees, agents, and consultants on the quintessential legislative topics addressed by those pieces of legislation, such as voter ID, wait times at polling places, and felon re-enfranchisement.  The Court should uphold the Legislators' absolute legislative privilege and quash the subpoenas.

B.  **Relaxed Standards of "Qualified" Privilege are Not Applicable In This Matter**

A recent decision of this court, *Bethune-Hill v. Va. State Bd. of Elections*, noted an ongoing "controversy bedeviling the federal courts as to whether the state legislative privilege is either 'absolute' or 'qualified.'" *Bethune-Hill*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 at *19. The court crafted an approach in which the strength of the privilege (i.e., whether it is "absolute" or "qualified") "depends on the nature of the claim and the defendant." *Id*. at *20.  The court reasoned that the strength of the "speech and debate" protections ordinarily afforded to legislators was relaxed in that case due to the "extraordinary instances" present in the context of redistricting, in which "the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of 'legislative self-entrenchment.'" *Id.* at *24-25.

The qualification of legislative privilege in *Bethune-Hill* is inapplicable here for at least three reasons.  *First*, *no* Fourth Circuit decision has applied a qualified legislative privilege in a civil case.  Rather, as explained, see supra Part II.A, the Fourth Circuit has consistently emphasized that legislative privilege affords absolute protection against compelled production of documents or communications arising within the legislative sphere.  In fact, prior to *Bethune-Hill*, the Fourth Circuit and this Court consistently upheld and applied an absolute legislative privilege.  *See, e.g.*, *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (referencing "absolute immunity"); *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) ("local legislators are entitled to absolute immunity when acting in a legislative capacity"); *Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir. 1994) ("Members of local governmental bodies are entitled to absolute legislative immunity from claims against them arising out of their actions in a 'legislative capacity.'"); *Front Royal & Warren County Industrial Park Corp. v. Town of*

*Front Royal*, 865 F.2d 77, 79 (4th Cir. 1989) ("It is well established that local legislators enjoy absolute immunity from suit for decisions made in their capacity as legislators."); *Scott v. Greenville County*, 716 F.2d 1409, 1422 (4th Cir. 1983) ("we recognized absolute personal immunity for county legislators, provided they could establish: (1) that as council members they were 'function[ing] in a legislative capacity' when doing the acts complained of; and (2) that their acts were not 'illegal acts such as bribery [which] are obviously not in aid of legislative activity and [for which] legislators can claim no immunity'"); *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980) ("absolute legislative immunity is applicable to local legislators"); *Simpson v. City of Hampton*, 166 F.R.D. 16 (E.D. Va. 1996).

*Second*, the *Bethune-Hill* court appears to have presumed that Virginia legislators are protected only by "a judicially crafted evidentiary privilege based on federal common law," without considering Article IV, Section 9 of the Constitution of Virginia.  *Bethune-Hill*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 at *25.  The *Bethune-Hill* court asserted that "state legislative immunity in federal court is governed by federal common law."  *Id*. at *13.  This appears to be a misstatement of the holding of the cited decision, *United States v. Gillock*, 445 U.S. 360 (1980).  In *Gillock*, the Supreme Court simply noted that its decision in *Tenney* "was grounded on its interpretation of federal common law."  *United States v. Gillock*, 445 U.S. 360, 372 n.10 (1980).  *Gillock*, in turn, cited another case, in which the Supreme Court wrote:

> The Speech or Debate Clause of the United States Constitution is no more applicable to the members of state legislatures than to the members of TRPA. The States are, of course, free to adopt similar clauses in their own constitutions, and many have in fact done so. These clauses reflect the central importance attached to legislative freedom in our Nation. But the absolute immunity for state legislators recognized in *Tenney* reflected the Court's interpretation of federal law; the decision did not depend on the presence of a speech or debate clause in the constitution of any State, or on any particular set of state rules or procedures available to discipline erring legislators.

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404 (1979).  Thus, rather than declaring that "state legislative immunity in federal court is governed by federal common law," the Supreme Court specifically recognized state constitutional speech and debate clauses as separate sources of protection for state legislators.  In fact, this Court recognized as much prior to *Bethune-Hill*, when it held that the Virginia Speech or Debate Clause protected a non-party sitting legislator from being compelled to appear for a deposition regarding legislative matters in a federal case.  *See Greenburg*, 482 F. Supp. at 202-04.  And the *Bethune-Hill* court's assertion that "the state legislative privilege is a qualified one … when a plaintiff proceeds against the State and seeks evidenced to vindicate important public rights guaranteed by federal law," *Bethune-Hill*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 at *14-15, fares no better.  That assertion appears to be supported only by a concurring opinion in a decision that recognized the absolute immunity afforded to state legislators engaged in legislative activities.  *See Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292 (D. Md. 1992).

Finally, in all events, *Bethune-Hill*'s new, weaker legislative privilege standard for redistricting cases is inapposite here, where "the natural corrective mechanisms built into our republican system of government" are operative and there is no "threat of 'legislative self-entrenchment.'"  *Bethune-Hill*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 at *14-15. Indeed the method of serving the subpoenas only underscores that Plaintiffs' purpose is politically-motivated harassment on the eve of an election and the need for an absolute legislative privilege. The Court should quash the subpoenas.

### C.     The Court Should Quash The Subpoenas Even If Relaxed Standards of "Qualified" Privilege Are Applicable

Even if this Court analyzes the non-party Legislators' assertions of legislative privilege under the *Bethune-Hill* approach, this Court should still quash the subpoenas.  The *Bethune-Hill*

court evaluated the legislators' claims of legislative privilege "within the qualified balancing analysis" developed by courts outside the Fourth Circuit "rather than with any kind of 'per se' rule." *Bethune-Hill*, 2015 U.S. Dist. LEXIS 68054 at *29. This five-factor balancing test considers: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the purposes of the privilege." *Id.* at *26.[2]

After applying the five-factor balancing test, and considering the "totality of the circumstances," the *Bethune-Hill* court *still* quashed portions of the subpoenas aimed at legislators and significantly restricted the scope of material subject to production. *See Bethune-Hill*, 2015 U.S. Dist. LEXIS 68054 at *39-*47. Here as well, even a qualified legislative privilege requires quashing or significantly limiting Plaintiffs' subpoenas.

### 1. Relevance of Evidence

The first factor militates strongly in favor of quashing or limiting the subpoenas because a large swath of the information Plaintiffs seek is not reasonably calculated to lead to discovery of admissible evidence. In the first place, the individual motivations of any individual legislator are wholly irrelevant even to Plaintiffs' claims of intentional discrimination. Indeed, "no case in [the Supreme] Court has held that a legislative act may violate equal protection solely because of

---

[2] The origin of this five-factor test raises illustrates its questionable value, and makes clear that it is *not* a product of legislative privilege doctrine. The test itself derives from a 1979 case decided in the Eastern District of New York, in which the five factors were used to evaluate claims of "official information privilege" in litigation between the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency. *See In re Franklin Nat'l Bank Sec. Litigation*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979). Legislative privilege was not at issue. Twenty-four years later, a Southern District of New York decision employed the *Franklin Nat'l Bank* test to analyze legislative privilege claims that arose in redistricting litigation. *See Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003). Subsequently, a small number of federal district courts, none within the Fourth Circuit, employed the *Rodriguez* approach to legislative privilege in redistricting cases.

the motivations of the men who voted for it." *Palmer v. Thompson*, 403 U.S. 217, 224 (1971). And with good reason: evaluation the "subjective intent of legislators" is "a perilous enterprise." *Edwards v. Aguillard*, 482 U.S. 578, 638 (1987).

Moreover, even if direct evidence of discriminatory intent by legislators and their advisors could be relevant to Plaintiffs' claims (assuming any such evidence existed), *Bethune-Hill*, 2015 U.S. Dist. LEXIS 68054 at *32-*33, much of the information Plaintiffs seek would not even begin to bear on such intent. For instance, unsolicited communications from interest groups, constituents, and the general public to individual legislators have no bearing on the matters at hand. Communications between legislators and their staff on the identified topics that do not pertain to "intent" similarly are irrelevant to the matters at hand. Given the small amount of potentially relevant information encompassed within the subpoenas' extraordinarily broad terms, this "factor" weighs in favor of disallowing discovery.

### 2.      Availability of Other Evidence

Next, the Plaintiffs should be required to seek information from other sources before seeking to compel Legislators to produce documents and communications within the sphere of legitimate legislative activity. The Supreme Court "has recognized ... that judicial inquiries into legislative or executive motivation represent intrusion into the workings of other branches of government." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). The Plaintiffs should be required to seek other sources first, including publicly available sources, and the statistical impact of the legislation, legislative statements, and committee reports. Plaintiffs should pursue other avenues first and narrow their subpoena after. *See*, *e.g.*, *Belk v. Smith*, 2014 U.S. Dist. LEXIS 141736, *7-8 (M.D.N.C. Oct. 6, 2014) ("Requiring Defendant Jones to pursue such alternatives serves the recognized purpose of protecting non-

parties from unnecessary discovery burdens."). Otherwise, legislative privilege becomes a nullity in cases that are deemed to "vindicate important public rights" - and legislators will no longer be able to tend to their duties on such weighty and important legislative matters free from interference and distraction. *See Washington Suburban Sanitary Commission*, 631 F.3d at 181.

### 3. Seriousness of Litigation and Issues Involved

While the issues raised in the Plaintiffs' Complaint are serious ones, Plaintiffs' *legal* claims are a different matter. Voter identification laws are a frequent source of litigation, but such laws routinely are upheld as constitutional. *See, e.g.*, *Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008); *League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224 (4th Cir. 2014); *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014). Plaintiffs' claims regarding poll lines and felon re-enfranchisement (Claims II and III) are quite novel and likely to be dismissed outright. The Defendants' Motion to Dismiss raises substantial issues and, at this stage in the litigation, it is an open question as to whether the Plaintiffs even have standing. Legislative privilege should not be forced to yield while those issues remain undetermined.

### 4. Role of the Government

This case was not brought by the government; rather, the government is an involuntary defendant. The subpoenaed Legislators are not even named defendants and have not "inject[ed] [themselves] into the case." *Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir. 2001). They therefore have an even more tenuous connection to this litigation than Defendants. There are no principles of equity or comity that would suggest that the subpoenaed individual legislators are attempting to pursue some advantage through litigation while unfairly shielding themselves with claims of legislative privilege. The role of the government in this litigation does not weigh toward disclosure, and legislative privilege should remain intact.

### 5.      Purposes of Legislative Privilege

Legislative privilege exists to protect legislators from precisely this sort of litigation.  The Fourth Circuit has specifically recognized that the privilege "shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *Wash. Sub. Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011).  This lawsuit is one of several similar cases filed by partisans in so-called "battleground" states with an eye toward the 2016 elections.  Having failed to secure their preferred policies through normal legislative processes, they have turned to the courts in the hopes of more favorable outcomes.  The Plaintiffs have every right to press their claims, for whatever underlying reasons they may have, but legislative privilege should not be forced to yield to their tactics.

Legislative privilege – even when characterized as merely "qualified" – exists precisely to protect sitting legislators from the "distraction" of such politically motivated litigation and to preserve "legislative independence" and prevent "timidity" in legislative consideration and deliberation of crucial public issues.  *Bethune-Hill*, 2015 U.S. Dist. LEXIS 68054  at *36-*39.  This factor thus weighs strongly against disclosure of legislative documents and communications.  *See id.*

Thus, even under a qualified privilege analysis that runs counter to the weight of authority in the Fourth Circuit, the balance of considerations weighs heavily in favor of holding that legislative privilege prevails.  The Court should quash the subpoenas or, at a minimum, issue a protective order.

## III.    PLAINTIFFS' SUBPOENAS ARE OVERLY BROAD AND SUBJECT NONPARTIES TO UNDUE BURDENS.

Rule 45 imposes a duty on party counsel requiring that, when issuing a subpoena to a non-party to the litigation, reasonable efforts be made "to avoid imposing undue burden or

expense" to the subpoena recipient.  Fed. R. Civ. P. 45(d)(1).  This rule works in conjunction with Fed. R. Civ. P. 26(b)(2)(C), which empowers courts to prohibit discovery where the proponent seeks information that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  "Rule 45(c)(3) requires the Court to quash a subpoena that 'subjects a person to an undue burden.'"  *Singletary v. Sterling Transp. Co*., 289 F.R.D. 237, 241 (E.D. Va. 2012).  The advisory committee notes "[e]mphasize the need for actual judicial use of subdivision (b)(2) to control excessive discovery."  Fed. R. Civ. P. 26 adv. comm. note (2000). Here, regardless of the merits of the Legislators' assertion of legislative privilege, Plaintiffs' subpoenas are overly broad and unduly burdensome and should be quashed for this reason alone.

## A.     Non-Parties are Entitled to Greater Protection from Intrusive and Burdensome Discovery

The subpoenaed members of the General Assembly are not defendants in this litigation; rather, the subpoenaed members are non-parties.  It is well established that non-parties are entitled to greater protection from intrusive and burdensome discovery requests.  *See Cusumano v. Microsoft Corp., 162 F.3d 708*, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"); *Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649 (9th Cir. Cal. 1980); *Belk v. Smith*, 2014 U.S. Dist. LEXIS 141736, *7 (M.D.N.C. Oct. 6, 2014) (noting "the recognized purpose of protecting non-parties from unnecessary discovery burdens"); *DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, *15 (S.D.N.Y. Sept. 26, 2011) ("Courts are especially sensitive to the burdens placed on nonparties."); *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009); *Collins & Aikman Corp. v. J. P. Stevens & Co*., 51 F.R.D. 219, 221 (D.S.C. 1971) ("There appear to be quite strong considerations indicating that the discovery

would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents."); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The rule is thus well established that nonparties to litigation enjoy greater protection from discovery than normal parties.").

**B.      The Subpoenas Are Overbroad And Impose Undue Burdens on Non-Parties That Require This Court To Quash The Subpoenas.**

As noted *supra*, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).  A subpoena *must* be quashed if it demands the production of privileged material or is overly broad and burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iii-iv).  Plaintiffs' subpoenas are both overbroad and unduly burdensome and, thus, should be quashed.

**1.      Plaintiffs' Subpoenas Are Overbroad**

A subpoena is overbroad where it  "does not limit the [documents] requested to those containing subject matter relevant to the underlying action."  *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (alteration in the original).  In *Singletary*, a Fair Labor Standards Act case involving overtime compensation, the court ruled that a subpoena was overbroad on its face where the subpoena sought from plaintiff's former employer plaintiff's entire employment file, without limitation.  *Id*. The court ruled that this would require the production of plaintiff's "medical information, social security numbers, payroll information, income tax information, information about family members, and other documents completely extraneous to this litigation." *Id.*  Consequently, the court quashed the subpoena.  *See id.* at 242.

Further, a subpoena is overbroad and properly quashed where the subpoena requests email communications within a six-week time frame but is not properly limited to the subject-

matter of the litigation *or* the persons connected with the litigation. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).

The subpoena at issue in this matter is overly broad and lacking in reasonable specificity insofar as it demands any and all communications, from January 1, 2008 to the present, between [legislator] and "any person," or between "any person" and [legislator's] employees, staff, agents, vendors, or consultants regarding any of nine broad topics: (i) SB 1; (ii) SB 663; (iii) SB 702; (iv) SB 964; (v) SB 1150; (vi) SB 1256; (vii) voter identification, including free voter ID; (viii) voter wait times and/or times at the polls; and (ix) re-enfranchisement of non-violent felons.

As noted above, this description encompasses unsolicited communications from members of the general public to their elected officials. These unsolicited communications include communications from individual constituents as well as communications generated by interest groups that are submitted to every member of the General Assembly. Although direct evidence of intent of a legislator and key advisors might be relevant to "[t]o the *broader* inquiry into legislative intent and the possibility of racially motivated decisions..." *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014) (emphasis added), it frays the fibers of the Federal Rules to claim that unsolicited communication from a constituent or interest group is evidence of direct intent. This Court should quash this overly broad subpoena because it is not properly limited to non-privileged communications between parties subject to this lawsuit and is otherwise extraneous to the litigation. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612; *Singletary*, 289 F.R.D. at 241-42.

Further, the subpoenas are not limited to any specific set of persons. Instead, the subpoenas demand *all* communications each Legislator had with *anyone*, plus *all*

communications the Legislator's staff, consultants, contractors, and "agents" had with *anyone*, about the broad topics listed.  This would include privileged and personal information unrelated to this litigation.  These subpoenas should therefore be quashed. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612; *Singletary*, 289 F.R.D. at 241-42.

Finally, the subpoenas are overbroad because the subpoenas require that the non-party legislators search the computers of their vendors and consultants, persons whose computers are not under the control of the non-party legislators. The subpoenas are therefore overbroad.

## 2.     Plaintiffs' Subpoenas Impose Undue Burdens on Non-Parties

"A subpoena imposes an undue burden on a party when a subpoena is overbroad."  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).  "Undue burden" also "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money…." *Cook v. Howard*, 484 Fed. Appx. 805, 812 n.7 (4th Cir. 2012). The potentially responsive document pool the Plaintiffs ask the non-party legislators to review—six weeks away from their elections—is in excess of one-hundred thousand documents. *See* Decl. of Vogel ¶¶ 7-8 (affirming that in just two email accounts alone, Senator Vogel has 60,000 potentially relevant documents that will cost over $250,000 to review); Decl of Torchinsky ¶¶ 4-5 (affirming that in Speaker Howell's legislative email account there are approximately 105,000 potentially relevant emails that will cost over $446,000 to review); Decl. of Senator Reeves ¶¶ 5-6 (affirming that in his search produced 57,000 emails between legislators and legislative staff on his legislative computer and legislative email account and estimating that reviewing the potentially relevant documents will cost approximately $120,000).  This only factors in three legislators who have only conducted searches on their legislative and—at most—their private business account. This

21

does not include their staff accounts. The subpoenas are therefore unquestionably burdensome. *See N.C. Right to Life, Inc. v. Leake,* 231 F.R.D. 49, 52 (D.D.C. 2005) (finding that subpoena was burdensome where subpoenaed non-parties estimated that it would take one staff member of one organization 15 to 20 days of work to comply with the subpoena and another large organization said it would take six staffers one month to comply); *Sahu v. Union Carbide Corp.,* 262 F.R.D. 308, 317-18 (S.D.N.Y. 2009) (quashing subpoena as unduly burdensome because of "the substantial burden it would impose [on the nonparty] and the low likelihood that it would yield documents beneficial to Plaintiffs beyond those they already have from prior  discovery and will receive from the discovery permitted herein.").

The subpoenas are unduly burdensome. These subpoenas were served a mere six weeks in advance of the the non-party legislators' elections, and now require the legislators to expend exorbitant amounts of time and money sifting through potentially relevant documents to determine which documents are responsive, non-responsive and privileged.  The timing of the subpoenas exacerbates this burden. This Court should quash the subpoenas. Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring courts to quash a subpoena that subjects a person to an undue burden).

### 3. Plaintiff's Subpoenas Seek Substantial Irrelevant Material

Courts have given effect to the principle that nonparties are entitled to additional discovery protections, in part, by requiring a heightened showing of "relevance."  *See R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.,* 2014 U.S. Dist. LEXIS 84193, *6 (D. Ariz. June 19, 2014) ("mere 'relevance' standard, however, does not apply to nonparties"); *Bio-Vita, Ltd. v. Biopure Corp.,* 138 F.R.D. 13, 17 (D. Mass. 1991) ("This 'relevance' standard does not apply to nonparties.").  "[T]he standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Stamy v. Packer,* 138 F.R.D. 412, 419 (D.N.J. 1990); *see also*

*Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (noting that "the cases have construed [relevancy] more narrowly when it is applied to non-parties").

"The party seeking to enforce a subpoena requesting documents from a non-party bears the burden of demonstrating that the documents sought are relevant." *Boykin Anchor Co. v. Wong*, No. 10-591, 2012 U.S. Dist. LEXIS 888, *7-8 (E.D.N.C. Jan. 4, 2012). Plaintiffs have made no such showing, and the matter is far from self-evident given the extreme scope and breadth of Plaintiffs' subpoenas. For instance, an unsolicited email from an interest group or a constituent that mentions one of the terms listed in the subpoena is not reasonably calculated to lead to the discovery of admissible evidence. *See N.C. Right to Life, Inc,* 231 F.R.D. at 52 (holding that the only bias that is relevant is that of a witness or party in a case and not that of an unrelated non-party that either filed an amicus brief in the or provided funds for the amicus brief).

## CONCLUSION

For the foregoing reasons, this Court should quash the subpoenas because they seek information that is privileged, and are overly broad, burdensome, and cumulative, and/or issue a protective order with respect to the subpoenas to narrow their scope to permissible bounds.

Respectfully submitted: September 25, 2015

/s/_____
Jason Torchinsky (Lead Counsel) (VA Bar 47481)
jtorchinsky@hvjlaw.com
J. Michael Bayes  (VA Bar 48076)
jmbayes@hvjlaw.com
Shawn Toomey Sheehy (VA Bar 82630)
ssheehy@hvjlaw.com
HOLTZMAN VOGEL JOSEFIAK PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809

*Counsel to Legislative Non-Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent a notification to all counsel of record.

Respectfully submitted,

By: ____/S/_____

Jason Torchinsky (VA 47481)
jtorchinsky@hvjlaw.com
HOLTZMAN VOGEL JOSEFIAK PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Phone: 540-341-8808
Fax: 540-341-8809

*Counsel to the legislative non-parties*