# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| BARBARA H. LEE, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 3:15-CV-357-HEH |

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO LEGISLATIVE NONPARTIES' MOTION FOR STAY OF DISCOVERY AND MOTION TO QUASH SUBPOENAS AND/OR MOTION FOR PROTECTIVE ORDER

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. III

I. INTRODUCTION ...................................................................... 1

II. FACTUAL BACKGROUND ......................................................... 2

III. ARGUMENT .......................................................................... 3

   A. THE LEGISLATORS' MOTION TO QUASH THE SUBPOENAS ON THE
      GROUNDS THAT THE DOCUMENTS SOUGHT ARE PROTECTED BY
      LEGISLATIVE PRIVILEGE SHOULD BE DENIED ............................... 3

      1. Any applicable state legislative privilege is qualified, not absolute ................. 4

      2. Under the flexible, balancing test typically applied in voting rights
         cases, legislative privilege in this case should yield ...................................... 11

         a. The requested evidence is highly relevant to Plaintiffs' claims ........... 11

         b. Plaintiffs need not confine their case to circumstantial evidence ....... 13

         c. This litigation and the issues involved are highly significant .............. 14

         d. The state government's role in this litigation is direct......................... 15

         e. The purposes of the legislative privilege are not hindered by
            requiring disclosure ............................................................................... 15

      3. The Virginia Constitution's speech or debate clause is irrelevant in this
         case ........................................................................................................... 16

      4. Many communications the Legislators seek to withhold are not
         privileged.................................................................................................... 17

         a. Communications disclosed to outsiders .............................................. 17

         b. Communications outside the scope of the privilege ........................... 18

   B. THE LEGISLATORS' MOTION TO QUASH THE SUBPOENAS ON THE
      GROUNDS THAT THEY ARE OVERBROAD AND/OR UNDULY
      BURDENSOME SHOULD BE DENIED............................................... 19

      1. Plaintiffs' subpoenas are tailored to seek communications relating to
         the highly relevant issue of legislative intent ................................................. 20

2. Plaintiffs' subpoenas do not impose undue burdens on the Legislators .......... 22

C. THE LEGISLATORS' MOTION TO STAY DISCOVERY SHOULD BE
DENIED.................................................................................................................. 24

IV. CONCLUSION.................................................................................................................. 27

**Table of Authorities**

**Cases**

*Am. Sec. Ins. Co. v. McDonald*, No. 07-5, 2007 WL 1853857 (W.D.N.C. June 26, 2007).......... 19

*Baldus v. Wisc. Gov't Accountability Bd.*, No. 11-562, 2011 WL 6122542
    (E.D. Wisc. Dec. 8, 2011)................................................................................................. 8

*Bethune-Hill v. Va. State Bd. of Elections*, No. 14-852, 2015 WL 3404869,
    (E.D.Va. May 26, 2015) ............................................................................................ passim

*Burtnick v. McLean*, 76 F.3d 611 (4th Cir. 1996)........................................................................ 9

*Cantor v. Personhuballah*, 135 S.Ct. 1699 (2015) ...................................................................... 13

*Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-5065,
    2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011).................................................. 7, 14, 15, 18

*Doe v. Nebraska*, 788 F. Supp. 2d 975 (D. Neb. 2011) .............................................................. 18

*Doe v. Pittsylvania Cnty.*, 842 F. Supp. 2d 906 ( W.D. Va. 2012) ............................................... 8

*E.E.O.C. v. Wash. Suburban Sanitary Comm'n ("WSSC")*, 666 F.Supp.2d 526
    (D. Md. 2009) .......................................................................................................... 5, 7

*EEOC v. Washington Suburban Sanitary Comm'n ("WSSC II")*, 631 F.3d 174
    (4th Cir. 2011).......................................................................................................... 9, 18

*Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ........................................................... passim

*Geiser v. Simplicity, Inc.*, No. 10-21, 2011 WL 128776 (N.D. W. Va. Jan. 14, 2011) ............... 26

*Greenburg v. Collier*, 482 F. Supp. 200, 202 (E.D. Va. 1979).................................................... 17

*Hardin v. Belmont Textile Machinery Co.*, No. 05-492,  2007 WL 2300795
    (W.D.N.C. Aug. 7, 2007).......................................................................................... 20

*In re Grand Jury*, 821 F.2d 946 (3d Cir. 1987) ........................................................................ 19

*IntegraMed America, Inc. v. Patton*, 298 F.R.D. 326 (D.S.C. 2014) ........................................... 19

*Kline v. Martin*, 345 F. Supp. 31 (E.D. Va. 1972)...................................................................... 19

*League of Women Voters of Fl. v. Detzner*, No. 14-1905, 2015 WL 4130852
    (Fla. July 9, 2015) .................................................................................................... 22

*Malibu Media, LLC v. Doe*, No. 14-874, 2014 WL 5599105 (M.D. Fla. Nov. 3, 2014).............. 25

*Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304
(D. Md. 1992) ......................................................................................................... 5, 7, 10

*McCray v. Maryland Dept. of Transportation*, 741 F.3d 480 (4th Cir. 2014).............................. 9

*N.C. State Conf. of the NAACP v. McCrory*, No. 13-658, slip op. 3
(M.D.N.C. Mar. 27, 2014) ......................................................................................... 8, 10, 11

*Newbrough v. Piedmont Regional Jail Authority*, 822 F.Supp.2d 558
(E.D. Va. 2011)............................................................................................................... 24, 26

*Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980) ........................................................... 16

*Page v. Va. State Bd. of Elections (Page I)*, 15 F.Supp.3d 657 (E.D. Va. 2014) ................ 5, 7, 14

*Page v. Va. State Bd. of Elections (Page II)*, 58 F.Supp.3d 533 (E.D. Va. 2014) ....................... 13

*Perez v. Perry*, No. 11-360, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ................................ 7, 18

*Rodriguez v. Pataki*, 280 F.Supp.2d 89 (S.D.N.Y. 2003) ........................................................... 17

*S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251 (4th Cir. 1989) ................................................... 12

*Schlitz v. Virginia*, 854 F.2d 43 (4th Cir. 1988)........................................................................... 9

*Sehler v. Prospect Mortgage, LLC*, No. 13-473, 2013 WL 5184216
(E.D. Va. Sept. 16, 2013)................................................................................................... 24

*Smith v. Town of Clarkton*, 682 F.2d 1055 (4th Cir. 1982) ........................................................ 13

*Spears v. First American eAppraiseIT*, No. 13-52, 2014 WL 1045998
(S.D. Ohio Mar. 14, 2014) ................................................................................................. 25

*Stewart v. VCU Health Sys. Auth.*, No. 09-738, 2011 WL 7281603 (E.D. Va. Nov. 22, 2011)... 19

*Tenney v. Brandhove*, 341 U.S. 367.................................................................................... 8, 17

*Texas v. United States*, 887 F.Supp.2d 133 (D.D.C. 2012) ........................................................ 13

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ................................................................................. 12

*U.S. ex rel. Davis v. Prince*, 753 F.Supp.2d 561 (E.D. Va. 2010)................................................ 20

*United States v. Brewster*, 408 U.S. 501 (1972) .................................................................. 18, 19

*United States v. Cartledge*, 928 F.2d 93 (4th Cir. 1991) ................................................................ 7

*United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ........................................... 26

*United States v. Gillock*, 445 U.S. 360, 373 (1980) ............................................................. passim

*US v. Irvin*, 127 F.R.D. 169 (C.D. Cal. 1989) ............................................................................. 8

*Veasey v. Perry*, No. 13-193, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014) ............... passim

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ............................. 12

*Vill. of Arlington Heights*, 429 U.S. ......................................................................................... 21

*Wesberry v. Sanders*, 376 U.S. 1 (1964) ................................................................................... 14

*Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) .......................... 24

**Rules**
Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 19

**Other Authorities**
9A Wright & Miller, § 2463.1 ...................................................................................................... 25

# I.    INTRODUCTION

The motion submitted by 25 non-party members of the Virginia General Assembly (the "Legislators") which seeks a stay of discovery and an order quashing subpoenas served on them by Plaintiffs or, in the alternative, a protective order (the "Legislators' Motion"), should be denied.[1]  The Legislators are not entitled to the stay that they request, whether under this Court's prior decisions, which require that the movant seeking a stay of discovery make a "clear and convincing case" that a stay is necessary to avoid hardship, or even as evaluated using the framework applied in an unpublished decision from the Northern District of West Virginia, the only legal authority cited by the Legislators in support of their request for a stay.

The Legislators' arguments that the subpoenas should be quashed, or that they are entitled to a protective order from discovery in this case, are similarly unsupportable and contrary to law.  It is well settled that, while state legislators enjoy immunity from civil *liability*, the *evidentiary privilege* for state lawmakers is qualified, at best, and must yield in cases like this one, where the requested discovery is highly relevant to Plaintiffs' claims, which seek to enforce the important federal interest in eliminating intentional discrimination in voting.  Moreover, even if some limited legislative privilege applied in this case, it could not categorically shield from disclosure all of the subpoenaed documents, many of which fall outside the scope of the legislative privilege.

---

[1] The Legislators are: Speaker of the Virginia House of Delegates William Howell; Majority Leader of the Virginia Senate Kirk Cox; Delegate Tim Hugo; Delegate Rob Bell; Delegate Margaret Ransone; Delegate Randy Minchew; Delegate David Ramadan; Delegate Buddy Fowler; Delegate Mark Cole; Delegate John O'Bannon; Delegate Nick Rush; Delegate Joseph Yost; Delegate Israel O'Quinn; Delegate Riley Ingram; Delegate Dave Albo; Delegate Steve Landes; Delegate Chris Jones; Senator Jill Vogel; Senator Bryce Reeves; Senator John Cosgrove; Senator Charles Carrico; Senator Mark Obenshain; Senator Steve Martin; Senator Dick Black; and Senator Jeffrey McWaters.

The Legislators' arguments that the subpoenas are overbroad or unduly burdensome should similarly be rejected.  Plaintiffs' subpoenas are tailored to compel the production of documents evidencing legislative intent in the passage of the voter ID law and the General Assembly's failure to pass, in 2013, three specific Senate bills that had the potential to reduce wait times to vote.  Because legislative intent is a central component of several of Plaintiffs' claims, which include allegations of intentional discrimination on the bases of race, age, and political party affiliation, any communications evidencing discriminatory legislative intent are highly relevant to Plaintiffs' case.  Accordingly, the Legislators' Motion should be denied.

## II.    FACTUAL BACKGROUND

In this lawsuit, Plaintiffs allege that the Virginia General Assembly, in enacting a voter photo ID law and failing to address long wait times to vote, violated Section 2 of the Voting Rights Act ("VRA"); intended to suppress the vote of Democrats in violation of the First and Fourteenth Amendments; intended to suppress the vote of African Americans and Latinos in violation of the Fourteenth and Fifteenth Amendments; and intended to suppress the vote of young voters in violation of the Twenty-Sixth Amendment.  *See* Am. Compl. ¶¶ 117–26 (Dkt. No. 36).  Plaintiffs also allege that the voter ID law unduly burdens the right to vote in violation of the First and Fourteenth Amendments and that there is no rational basis for the law's refusal to permit certain types of ID to be used for voting, or for Virginia's requirement that voting rights be restored to certain felons on an individual basis.  *Id*. ¶¶ 108–13.

The parties are now in the midst of accelerated discovery in preparation for trial, which is scheduled to begin on February 22, 2016.  During the week of September 12, Plaintiffs served

subpoenas on twenty-nine members or former members of the Virginia General Assembly,[2] seeking communications between the Legislators and any other persons regarding six 2013 Virginia Senate bills—SB 1, SB 663, SB 702, SB 964, SB 1150, SB 1256—and documents regarding three additional topics—voter identification (including free voter ID), voter wait times and/or lines at the polls, and the re-enfranchisement of non-violent felons. *See* Ex. A. In response, the Legislators have moved to stay discovery pending the Court's decision on Defendants' motion to dismiss (which is scheduled for oral argument on October 23), and have moved to quash the subpoenas or, in the alternative, for a protective order. For the reasons discussed below, the Legislators are not entitled to any of the relief that they seek.

## III.    ARGUMENT

### A.    THE LEGISLATORS' MOTION TO QUASH THE SUBPOENAS ON THE GROUNDS THAT THE DOCUMENTS SOUGHT ARE PROTECTED BY LEGISLATIVE PRIVILEGE SHOULD BE DENIED

The Legislators' assertion that "absolute [legislative] privilege protects [them] from *any* compelled response to Plaintiffs' subpoenas," Mem. In Supp. of Mot. to Stay Disc. and Mot. to Quash Subpoenas and/or for Protective Order, ECF No. 72 (hereinafter "Leg. Br.") 6, is incorrect as a matter of law. "[T]he state legislative privilege is a qualified one when . . . a plaintiff proceeds against the <u>State</u> and seeks evidence to vindicate important <u>public</u> rights guaranteed by federal law." *Bethune-Hill v. Va. State Bd. of Elections*, No. 14-852, 2015 WL 3404869, at *8 (E.D. Va. May 26, 2015) (emphases added) (internal citations omitted). The Legislators argue that, in the Fourth Circuit, the legislative privilege is absolute and never yields. This exact same

---

[2] Plaintiffs served subpoenas on four former or current members of the Virginia General Assembly—former Delegate John Cox, Delegate Jackson Miller, Senator Ralph Smith, and Delegate Thomas Garrett—who have not joined the Legislators' Motion. Former Delegate John Cox contacted Plaintiffs' counsel on September 15 to inform her that he does not have in his possession any documents responsive to Plaintiffs' subpoena. Delegates Miller and Garrett and Senator Smith have not objected to the subpoenas.

argument was made by state legislators and rejected by the court in *Bethune-Hill*. For the same reasons that the court was not persuaded in that case, the Court should reject these arguments here.

The Legislators' position is inconsistent with precedent from the Supreme Court, the Fourth Circuit, the Eastern District of Virginia, and a myriad of other federal courts, all of which have consistently held that "where important federal interests are at stake," the interests underpinning any state legislative privilege must yield. *United States v. Gillock*, 445 U.S. 360, 373 (1980). Although state legislators enjoy immunity from civil *liability*, the evidentiary *privilege* for state lawmakers is qualified, at best. That privilege must yield in this particular case, given the critical nature of the requested discovery and the important federal interest in enforcing the prohibition on intentional discrimination in voting. Moreover, even if some limited legislative privilege applied in this case, it could not categorically shield from disclosure all of the subpoenaed documents, many of which plainly fall outside the scope of the legislative privilege.

### 1.    Any applicable state legislative privilege is qualified, not absolute

This same issue arose in *Bethune-Hill*, a redistricting lawsuit that challenged the Commonwealth's twelve majority-minority House of Delegates districts as unconstitutional racial gerrymanders. There, the plaintiffs sought discovery from state legislators pertaining to legislative intent and the state legislators objected, arguing that the subpoenas should be quashed because they enjoy an absolute legislative privilege under Fourth Circuit precedent. The district court categorically rejected that argument. It held instead that, pursuant to Supreme Court precedent, "the state legislative privilege is a qualified one when . . . a plaintiff proceeds against the <u>State</u> and seeks evidence to vindicate important <u>public</u> rights guaranteed by federal law."

*Bethune-Hill*, 2015 WL 3404869, at *8 (emphases added) (citing *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992) (Murnaghan & Motz, J.J., concurring) ("The doctrine of legislative immunity . . . insulates legislators from liability for their official acts and shields them from judicial scrutiny into their deliberative processes [, but] . . . does not necessarily prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an overriding, free-standing public policy."); *see also Bethune-Hill*, 2015 WL 3404869 at *8 ("[I]n federal criminal cases brought against individual legislators, *or where important federal interests are at stake*, the presumption of absolute state legislative immunity or absolute state legislative privilege yields.") (emphasis added) (citing *Gillock*, 445 U.S. at 373 n. 11; *E.E.O.C. v. Wash. Suburban Sanitary Comm'n ("WSSC I")*, 666 F.Supp.2d 526, 532 (D. Md. 2009), *aff'd.* 631 F.R.D. 174 (4th Cir. 2011) ("The legislative privilege is one of non-evidentiary use of legislative acts against a legislator, not one of non-disclosure."); *Page v. Va. State Bd. of Elections (Page I)*, 15 F.Supp.3d 657, 665 (E.D. Va. 2014) (quoting *WSSC I*, 666 F.Supp.2d at 532) ("[T]he argument that 'legislative privilege is an impenetrable shield that completely insulates any disclosure of documents' is not tenable.").

In other words, the legislative privilege that may be claimed by *state* legislators is critically different from the federal legislative privilege enjoyed by members of Congress. While federal legislative privilege is absolute, "state legislative privilege—like state legislative immunity—likewise may become qualified based on the nature of the claim at issue." *Bethune-Hill*, 2015 WL 3404869 at *6. This is so for several reasons. To begin with, state legislative privilege differs from its federal counterpart in its "source of authority, purposes, and degree of protection." *Id*. at *5. Federal legislative privilege is grounded in the Speech or Debate Clause of the U.S. Constitution, which applies only to federal legislators, whereas state legislative

privilege in federal court is "governed by federal common law."  *Id.* at *5; *see also Favors v. Cuomo*, 285 F.R.D. 187, 208 (E.D.N.Y. 2012) ("[U]nlike federal constitutional legislative immunity, state legislative immunity in federal question cases is governed by federal common law.").  Importantly, state legislative immunity and privilege are "based on an interpretation of the federal common law that is necessarily abrogated when the immunity or privilege is incompatible with federal statutory law."  *Bethune-Hill*, 2015 WL 3404869, at *6.

Moreover, the two principles animating legislative immunity at the federal level—separation of powers and the protection of the legislative process—are either irrelevant or less significant in the state legislative privilege context.  *Id.* at *5.  The separation of powers principle is inapposite at the state level where federal laws are involved because "the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power," including those found in state law or a state's constitution.  *Id.* (citing *Gillock*, 445 U.S. at 370).  Similarly, "federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch of the Federal Government in the affairs of a coequal branch."  *Id.* (citing *Gillock*, 445 U.S. at 370).  Accordingly, state legislative privilege is qualified because the concerns that support the need for absolute legislative privilege in the federal context are of significantly less importance at the state level.

The Legislators have attempted to portray the *Bethune-Hill* opinion as an outlier and inconsistent with Fourth Circuit precedent.  *See* Leg. Br. at 11-12.  Neither is true.  To the contrary, that decision is consistent with and directly follows from well-established precedent on the issue of legislative privilege in cases decided by both the Supreme Court and the Fourth Circuit.  Thirty-five years ago, in *United States v. Gillock*, the Supreme Court rejected outright the argument that the common law provides state legislators with an absolute evidentiary

privilege analogous to that enjoyed by members of Congress under the Speech or Debate Clause. *Gillock*, 445 U.S. at 373. The Supreme Court's case law in this area consistently "teaches that, 'where important federal interests are stake,' legislative immunity for state actors may be curtailed." *Bethune-Hill*, 2015 WL 3404869, at \*5 (quoting *Gillock*, 445 U.S. at 373). The Fourth Circuit similarly recognized this in *United States v. Cartledge* when it acknowledged that the *Gillock* court "employed a balancing test" to weigh the state legislative privilege against the need to enforce federal law. 928 F.2d 93, 95–96 (4th Cir. 1991).

Indeed, since *Gillock*, the Fourth Circuit, other district courts in the Eastern District of Virginia, and federal courts in any number of other jurisdictions have routinely held that legislative privilege is not absolute. *See Schaefer*, 144 F.R.D. at 302 n.19, 304 (Murnaghan & Motz., J.J., concurring) (in an opinion "reflect[ing] [the court's] majority, and thus, prevailing views," holding that "testimonial legislative immunity is not an absolute"); *Page I*, 15 F.Supp.3d at 665 ("[T]he argument that legislative privilege is an impenetrable shield that completely insulates any disclosure of documents is not tenable[.]") (internal quotation marks and citation omitted); *WSSC I*, 666 F.Supp.2d at 532 ("[L]egislative privilege is . . . not one of non-disclosure"), *aff'd*, 631 F.3d 174 (4th Cir. 2011); *Favors*, 285 F.R.D. at 209 (recognizing that "[l]egislative privilege is related to, but distinct from, the concept of legislative immunity" and that "the legislative privilege for state lawmakers is, 'at best, one which is qualified'" (internal citation omitted); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-5065, 2011 WL 4837508, at \*7 (N.D. Ill. Oct. 12, 2011) (recognizing legislative privilege is qualified and applying a balancing test to determine whether disclosure is appropriate); *Perez v. Perry*, No. 11-360, 2014 WL 106927, at \*2 (W.D. Tex. Jan. 8, 2014) (while the common-law legislative immunity for state legislators is absolute, the legislative privilege is qualified, not absolute, and

may be overcome by a showing of need.); *Baldus v. Wisc. Gov't Accountability Bd.*, No. 11-562, 2011 WL 6122542, at *2 (E.D. Wisc. Dec. 8, 2011) (same); *US v. Irvin*, 127 F.R.D. 169, 173–174 (C.D. Cal. 1989) (same); *Doe v. Pittsylvania Cnty.*, 842 F. Supp. 2d 906,  920 ( W.D. Va. 2012) ("In contrast to the privilege enjoyed by members of Congress under the Speech or Debate Clause, there is no absolute 'evidentiary privilege for state legislators for their legislative acts.'") (quoting *Gillock*, 445 U.S. at 373); *see also N.C. State Conf. of the NAACP v. McCrory*, No. 13-658, slip op. 3 (M.D.N.C. Mar. 27, 2014) ("claims of legislative immunity or privilege in the discovery context must be evaluated under a flexible approach that considers the need for the information in the context of the particular suit presented"); *Veasey v. Perry*, No. 13-193, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014) (recognizing the existence of state legislative privilege but "declin[ing] to adopt Texas's characterization of that privilege as absolute").  The Legislators have not provided the Court with any sound reason to depart from this longstanding precedent.

Instead, they misread and misapply Fourth Circuit authority in an attempt to cast *Bethune-Hill* as an outlier.  First, the Legislators improperly conflate "legislative immunity," which refers to state legislators' immunity from civil liability, with "legislative privilege," which, where it exists, is a qualified privilege.  *Compare Tenney v. Brandhove*, 341 U.S. 367, 376-77 (requiring a clear legislative statement to override common law legislative immunity), *with Gillock*, 445 U.S. at 373 (requiring only a strong federal interest to trump any common law state legislative privilege); *see also Favors*, 285 F.R.D. at 209 (recognizing that "[l]egislative privilege is related to, but distinct from, the concept of legislative immunity" and that "the legislative privilege for state lawmakers is, 'at best, one which is qualified'") (internal citation omitted).  This case has nothing to do with legislative immunity as none of the Legislators have

been named as Defendants.  Thus, the Legislators' reliance on cases that reference "absolute legislative immunity," *see* Leg. Br. at 11-12, is erroneous.

Second, the Legislators contend that the Fourth Circuit's holdings in *Burtnick v. McLean*, 76 F.3d 611 (4th Cir. 1996), *McCray v. Maryland Dept. of Transportation*, 741 F.3d 480 (4th Cir. 2014), and *EEOC v. Washington Suburban Sanitary Comm'n ("WSSC II")*, 631 F.3d 174 (4th Cir. 2011), require this Court to recognize an absolute privilege of state lawmakers to categorically withhold otherwise discoverable documents.  But the Legislators misread each of those cases, which are distinguishable and do not justify restricting the scope of discovery in this case.

In *Burtnick*, the Fourth Circuit held that the legislative privilege did not allow the plaintiff to compel *testimony* from a legislator.  *See* 76 F.3d at 613.  It did not hold that the privilege bars subpoenas *for documents* from legislators, which is the relevant issue here. *McCray* and *WSSC*, two cases which involved challenges to legislative budget enactments, are similarly inapposite.  The complainants in both *McCray* and *WSSC* were government employees who sought to use federal antidiscrimination law to challenge legislative budgetary decisions that adversely affected their employment.  *See McCray*, 741 F.3d at 481; *WSSC II*, 631 F.3d at 176-77.  In this distinctive context, involving quintessentially legislative decisions about how to allocate governmental resources, the Fourth Circuit concluded that the doctrine of legislative immunity also justified denying plaintiffs discovery into legislative motivations.  The Fourth Circuit's decisions in these cases were animated by the underlying notion that, to the extent the plaintiffs were actually challenging the quintessentially legislative act of passing a budget—or, in *Schlitz*, of deciding whether to reappoint a state court judge, *see Schlitz v. Virginia*, 854 F.2d 43, 45 (4th Cir. 1988)—they had no cause of action.

These Fourth Circuit employment-discrimination cases do not address the scope of legislative privilege in voting-rights cases, where legislation is precisely and properly the target of the statutory and constitutional claims.  In this case, as in other voting rights cases, "where Congress has acted to place legislative motive directly at issue, the judicially-created doctrine of legislative privilege should not absolutely preclude all discovery," and the Court "'should not simply rely upon bright line tests which have been developed in other contexts to bar virtually all discovery of relevant facts.'"  *N.C. State Conf. of the NAACP*, No. 13-658, slip op. at 6 (quoting *Schaefer*, 144 F.R.D. at 305).  Instead, "'[the Court] must accept the task . . . of closely monitoring the discovery process' and considering the testimonial and evidentiary issues present." *Id*.

Finally, to the extent that the Legislators argue that the *Bethune-Hill* opinion stands for the proposition that qualified legislative privilege only applies in "extraordinary" circumstances such as in redistricting where "the natural corrective mechanisms built into our republican system of government" are inoperative and there is a significant threat of "legislative self-entrenchment," *see* Leg. Br. at 13, they are incorrect.  As discussed above, courts have applied the qualified legislative privilege in a myriad of cases where important federal interests are involved, including in vote denial cases such as this one.  *See N.C. State Conf. of the NAACP*, No. 13-658, slip op.  at 6 ("consider[ing] the context of [the] suit under the Voting Rights Act" in applying a balancing test to determine the extent of the legislative privilege); *Veasey*, 2014 WL 1340077, at *2 (applying a five factor balancing test and finding that the balance of the privilege factors weigh in favor of disclosure).

## 2. Under the flexible, balancing test typically applied in voting rights cases, legislative privilege in this case should yield

In recent cases involving constitutional challenges to voting laws where the legislature's intent is centrally at issue, courts have evaluated "claims of legislative immunity or privilege in the discovery context . . . under a flexible approach that considers the need for the information in the context of the particular suit presented," *N.C. State Conf. of the NAACP*, No. 13-658, slip op. at 3, by using a balancing test to determine whether legislative privilege must yield to the need for documentary evidence from legislators. *See, e.g.*, *Bethune-Hill*, 2015 WL 3404869 at *9-14; *N.C. State Conf. of the NAACP*, No. 13-658, slip op. at 6; *Veasey*, 2014 WL 1340077 at *2-4. Under that balancing test, courts consider the following factors: (1) the relevance of the evidence sought; (2) the availability of other evidence; (3) the "seriousness" of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the purposes of the privilege. *See Bethune-Hill*, 2015 WL 3404869 at *9 (internal quotation marks omitted).  In this case, each factor weighs in favor of disclosure.

### a. The requested evidence is highly relevant to Plaintiffs' claims

The Legislators' contention that "the individual motivations of any individual legislator are wholly irrelevant even to Plaintiffs' claims of intentional discrimination," Leg. Br. at 14, defies law and logic.  Plaintiffs' claims—that the voter ID law, the General Assembly's intentional failure to act to ameliorate long lines at Virginia's election sites, and the Commonwealth's requirement that voting rights be restored to certain felons on an individual basis violate Section 2 of the VRA and/or the First, Fourteenth, Fifteenth, and/or Twenty-Sixth Amendments, and which include specific allegations that the General Assembly intentionally discriminated on the bases of race, age, and political party affiliation—will require the Court to undertake a fact-intensive "appraisal of the design and impact" of the challenged laws.

*Thornburg v. Gingles*, 478 U.S. 30, 79 (1986).  Documentary evidence of legislative intent is therefore highly relevant to Plaintiffs' case in chief, and should be disclosed by the Legislators.

Courts have held that because racial discrimination is not just another competing policy consideration, voting-rights cases such as this one are precisely the context in which judicial inquiry into legislative purpose is appropriate.  The Fourth Circuit is no different; it has explicitly recognized that race-discrimination cases are among the "limited exceptions to the principle that judicial inquiry into legislative motive is to be avoided."  *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 & n.6 (4th Cir. 1989).  The Legislators' claims to the contrary are baseless.  The Supreme Court has acknowledged that legislative evidence is highly relevant to "[d]etermining whether invidious discriminatory purpose was a motivating factor" in a legislative decision.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).  In *Arlington Heights*, the Court set forth a non-exhaustive list of evidentiary factors for courts to consider in cases like this one where plaintiffs allege intentional discrimination.  *Id.* at 266-68.  Under the *Arlington Heights* framework, this Court must assess, among other things, the historical background of the passage of Virginia's restrictive voter ID bill; the sequence of events leading up to the passage of the bill; whether passage of the bill departed, either procedurally or substantively, from the normal practice; and the legislative history, including contemporaneous statements and viewpoints held by the decision makers.  *Id.*  The documents produced by the Legislators in response to Plaintiffs' subpoenas will provide the Court with information that is highly relevant to undertake the *Arlington Heights* analysis.

In practice, in cases where evidence of legislative intent is relevant, courts routinely order the production of documents over which legislators claim legislative privilege.  For example, in *Veasey v. Perry*, a case challenging Texas' voter photo identification law under Section 2 of the

VRA, the court required disclosure of evidence regarding legislative intent which was "highly relevant" to the United States' Section 2 claim "because it bears directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent in enacting SB 14." *Veasey*, 2014 WL 1340077, at *2. Other recent court decisions make clear that courts routinely look to legislative evidence—including documents and testimony obtained from legislators and their staff—when determining whether voting laws were enacted with discriminatory intent. *See Page v. Va. State Bd. of Elections (Page II)*, 58 F.Supp.3d 533, 542 (E.D. Va. 2014) (relying on direct evidence of legislative intent, including statements by the legislation's sole sponsor in finding that race predominated in the drawing of Virginia's majority-minority congressional district) *rev'd on other grounds sub nom. Cantor v. Personhuballah*, 135 S.Ct. 1699 (2015); *Texas v. United States*, 887 F.Supp.2d 133, 161 & n.32 (D.D.C. 2012), *vacated on other grounds*, 133 S. Ct. 2885 (2013) (relying in part on emails exchanged among state legislative staff and consultants to conclude that Texas' congressional redistricting plan "was motivated, at least in part, by discriminatory intent").

### b.   Plaintiffs need not confine their case to circumstantial evidence

The Legislators argue that Plaintiffs should be required to seek evidence from publicly available sources before seeking disclosure from them. However, as the court recognized in *Bethune-Hill*, reliance on public statements alone would undercut the inquiry into legislative purpose because officials acting in their official capacities "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority." *Bethune-Hill*, 2015 WL 3404869, at *12 (citing *Veasey*, 2014 WL 1340077, at *3; *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)). Moreover, "the availability of alternate evidence does not render the evidence sought here irrelevant by any

measure." *Bethune-Hill*, 2015 WL 3404869, at *12.  Just as in *Bethune-Hill*, this factor weighs in favor of disclosure.

**c.      This litigation and the issues involved are highly significant**

There can be little doubt that this litigation and the issues involved are serious and highly significant.  The Supreme Court has held that "no right is more precious . . . than that of having a voice in the election of those who make the laws."  *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Moreover, "[t]he right to vote and the rights conferred by the Equal Protection Clause are of cardinal importance."  *Page I*, 15 F.Supp.3d at 667.  This case is about Virginia's efforts to undermine, and in some circumstances completely suppress, the exercise of that basic, fundamental right through the passage of its voter ID law, its failure to address the Commonwealth's recurring problem with long wait times to vote, and its requirement that voting rights be restored to felons on an individual basis.  Thus, as the Legislators themselves recognize,[3] this case involves issues of fundamental importance.  *See Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *6 ("Voting rights cases, although brought by private parties, seek to vindicate public rights.  In this respect, they are akin to criminal prosecutions."); *Veasey*, 2014 WL 1340077, at *2 ("[T]he importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated").  The Legislators' unsolicited and unfounded assessment of the viability of Plaintiffs' legal claims, *see* Leg. Br. at 16, has no bearing on the seriousness of this litigation or the issues it involves.

---

[3] *See* Leg. Br. at 16 (acknowledging that the interests raised in the Plaintiffs' Complaint are serious).

14

#### d.      The state government's role in this litigation is direct

The Legislators' role in the claims alleged in this case is direct.  The General Assembly, along with its members, aides and consultants, was primarily responsible for drafting the voter ID law challenged in this case.  It is also responsible for failing to pass the three 2013 Senate bills that had the potential to reduce wait times to vote.  These actions are all under scrutiny in this case.  Similar to *Committee for a Fair & Balanced Map*, then, "[t]his is not . . . the usual deliberative process case in which a private party challenges governmental action . . . and the government tries to prevent its decision-making process from being swept up unnecessarily into [the] public [domain]."  *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *8.  Rather, "the decision-making process . . . [itself] *is* the case."  *Id*.  The direct role of the Legislators in this case militates in favor of disclosure.

#### e.      The purposes of the legislative privilege are not hindered by requiring disclosure

In this case, neither the legislative privilege's "distraction interest" nor its "legislative independence interest" support withholding the documents.  *See Bethune-Hill*, 2015 WL 3404869, at *13 ("The state legislative privilege protects a 'distraction' interest—to guard legislators from the burdens of compulsory process—and a 'legislative independence' interest— to encourage legislators to engage deeply in the legislative process and act boldly in the public interest without fear of personal consequence").  First, the distraction interest involved is minimal.  A request for documents is significantly less burdensome than a request for testimony, and "[b]ecause even absolute legislative privilege 'does not bar an inquiry into whether a legislator's activities and conversations were, in fact, legislative in nature,' some degree of documentary review is necessary for the privilege to be claimed in the first place."  *Id*.  The legislative independence interest likewise does not significantly weigh against disclosure.  The

threat to this interest is significantly lowered where, as here, individual legislators are not subject to liability.  *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 656 (1980) ("The inhibiting effect [on the legislative process] is significantly reduced, if not eliminated, however, when the threat of personal liability is removed.").

The Legislators separately contend that legislative privilege exists to protect legislators from politically motivated litigation.  *See* Leg. Br. at 17.  In that vein, the Legislators attempt to obscure the important legal issues by painting the case in a partisan light.  But this case is not about politics.  It is about protecting and preserving the free and fair right to vote for all eligible voters in the Commonwealth.[4]  Moreover, Plaintiffs' motivations in bringing this lawsuit are not at issue nor are they relevant in this case; it is the Legislators' motivations in passing the voter ID law and failing to pass legislation that could have reduced wait times to vote that are at issue. This factor weighs in favor of disclosure.

### 3.    The Virginia Constitution's speech or debate clause is irrelevant in this case

The Legislators also make much of the fact that Article IV, Section 9 of the Constitution of Virginia contains a speech or debate clause similar to the one in the United States Constitution.  *See* Leg. Br. at 12-13.  In addition to the federal common law, the Legislators contend that the Virginia Constitution provides a "separate source[ ] of protection for state legislators."  *See id*. at 13.  But courts have consistently held that where a state has ratified a similar provision to the federal Speech or Debate Clause in its constitution, federal courts are not bound by those provisions where plaintiffs assert federal claims.  *Favors*, 285 F.R.D. at 208 ("And while most states—including New York—have ratified similar provisions in their

---

[4] Plaintiffs' lawsuit is politically motivated in that Plaintiffs have alleged that the challenged laws violate the constitutional rights of certain Virginia voters, including Democrats. But contrary to the Legislators' claims, Plaintiffs' lawsuit is not motivated by electoral politics.

constitutions, federal courts are not bound by those state protections where, as here, the plaintiffs have asserted federal claims.") (internal citation omitted); *see Rodriguez v. Pataki*, 280 F.Supp.2d 89, 95 (S.D.N.Y. 2003) ("Under the Supremacy Clause, a federal court clearly is not bound by the Speech or Debate Clause of the New York Constitution.") (citing *Gillock*, 445 U.S. 370).   Moreover, "the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power," including those found in state law or a state constitution. *Bethune-Hill*, 2015 WL 3404869, at *5 (quoting *Gillock*, 445 U.S. at 370 ).   Thus, state legislative immunity in federal question cases is governed by federal common law *Id.* , at *5; *see also Tenney*, 341 U.S. at 372; *Gillock*, 445 U.S. at 371-72; *Favors*, 285 F.R.D. at 208.[5]   This Court should reject the Legislators' attempt to argue otherwise.

### 4.      Many communications the Legislators seek to withhold are not privileged

Finally, even if this Court were to find that some limited legislative privilege applies in this case, the Legislators cannot categorically shield from disclosure all of the subpoenaed documents, many of which plainly fall outside the scope of any legislative privilege.   The Legislators appear to contend that communications that have been disclosed to outsiders and communications related to post-enactment implementation of the legislation in the subpoena fall within the privilege and are thus exempt from disclosure.   The Legislators' position is contrary to settled law.

### a.      Communications disclosed to outsiders

As the court recognized in *Bethune-Hill*, "a conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation is a session for which no one

---

[5] The Legislators' reliance on *Greenburg v. Collier*, 482 F. Supp. 200, 202 (E.D. Va. 1979), is misplaced because *Greenburg* involved a challenge to the constitutional validity of Virginia state law, not federal law.

could seriously claim privilege." *Bethune-Hill*, 2015 WL 3404869, at *15. Indeed, "[a]s with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider." *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *10. In this context, "outsiders" include constituents, lobbyists, employees of state agencies, and other non-legislative actors. *Perez*, 2014 WL 106927, at *2. Any relevant communications that individual Legislators had with outsiders or purposely disclosed to outsiders are not subject to the legislative privilege and must be disclosed.

### b. Communications outside the scope of the privilege

Further, the state legislative privilege extends only to materials reflecting "integral steps in the legislative process." *WSSC II*, 631 F.3d at 184. That limitation has both a temporal and substantive dimension. Temporally, the privilege extends only to materials predating the relevant enactment. *See Bethune-Hill*, 2015 WL 3404869 at *15 (requiring House of Delegates to produce any documents or communications created after the redistricting legislation's enactment); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985 (D. Neb. 2011) (legislative privilege "protects only documents which are pre-decisional"). Thus, to the extent that any communications relate to post-enactment implementation of the legislation in the subpoena, they are outside the scope of legislative privilege and must be disclosed because post-enactment implementation is not a "legislative act" or an "integral step[] in the legislative process." *WSSC II*, 631 F.3d 174, 184 (4th Cir. 2011) (declining to quash subpoena that sought information about events occurring after a legislative act).

Substantively, the privilege is limited to "those things generally done in a session of the House by one of its members in relation to the business before it . . . as a representative, in the exercise of the functions of that office." *United States v. Brewster*, 408 U.S. 501, 512-13 (1972)

(internal quotation marks and citation omitted).  For example, the privilege does not extend to "preparing so-called 'news-letters' to constituents, news releases, and speeches delivered outside of Congress."  *Id.* at 512.  "Although these are entirely legitimate activities, they are political in nature rather than legislative," and hence not covered by the privilege.  *Id.*  In addition, even records regarding legislative activities are outside the privilege if they reflect only facts, not legislators' subjective thoughts and opinions.  *See In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (privilege extends only to "communications involving opinions, recommendations or advice about legislative decisions).  The Legislators must disclose all such communications.

## B.   THE LEGISLATORS' MOTION TO QUASH THE SUBPOENAS ON THE GROUNDS THAT THEY ARE OVERBROAD AND/OR UNDULY BURDENSOME SHOULD BE DENIED

The Legislators have also moved to quash the subpoenas on the grounds that they are overbroad and unduly burdensome.  This motion should similarly be denied.  "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26."  *IntegraMed America, Inc. v. Patton*, 298 F.R.D. 326, 331 (D.S.C. 2014).  Therefore, a "court reviews a subpoena under the relevancy standards set forth in Rule 26(b)," which "permit[] discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  *Id.* (citing Fed. R. Civ. P. 26(b)(1)).  This is true whether the discovery is sought from parties to the action or from third parties.  *See, e.g.*, *Am. Sec. Ins. Co. v. McDonald*, No. 07-5, 2007 WL 1853857 (W.D.N.C. June 26, 2007).  Indeed, this court has held that plaintiffs must be allowed "adequate opportunity to obtain evidence through the broad discovery contemplated by the Federal Rules."  *See Stewart v. VCU Health Sys. Auth.*, No. 09-738, 2011 WL 7281603, at *8 (E.D. Va. Nov. 22, 2011) (*citing Kline v. Martin*, 345 F. Supp. 31, 32 (E.D. Va. 1972)) ("Federal Rules contemplate the broadest discovery possible in the search for the truth").  In the Fourth

Circuit, "[t]he party seeking to quash [a subpoena] bears a heavy burden to show compliance with the subpoena would be unreasonable and oppressive." *Hardin v. Belmont Textile Machinery Co.*, No. 05-492, 2007 WL 2300795, at *4 (W.D.N.C. Aug. 7, 2007) (internal quotation marks omitted).

The subpoenas that the Legislators received are neither overly broad nor unduly burdensome and the Legislators' motion to quash them on these grounds should be denied. Further, as discussed below, the Legislators' motion for a protective order should be denied because the Legislators have failed to carry their burden of establishing that "specific prejudice or harm will result if no protective order is granted." *U.S. ex rel. Davis v. Prince*, 753 F.Supp.2d 561, 565 (E.D. Va. 2010).

### 1.     Plaintiffs' subpoenas are tailored to seek communications relating to   the highly relevant issue of legislative intent

Plaintiffs' subpoenas only seek documents likely to be relevant to this action. Specifically, the documents sought are likely to contain evidence of legislative intent that is highly probative of Plaintiffs' claims that the voter ID law and the General Assembly's failure to take action to reduce wait times to vote violate Section 2 of the VRA, and the First, Fourteenth, Fifteenth, and Twenty-Sixth Amendments.  Indeed, with respect to Plaintiffs' allegations of intentional discrimination on the bases of race, age, and political party affiliation, this case is no different from *Bethune-Hill* in that "the intent of the legislature is the dispositive issue in this case." *Bethune-Hill*, 2015 WL 3404869, at *14.

It follows that the subpoenas are not overbroad.  They are directed at legislators who are likely to have first-hand knowledge relating to the development and passage of Virginia's voter ID law and the General Assembly's failure to pass in 2013 three Senate bills which had the potential to reduce wait times to vote.  Plaintiffs' subpoenas compel the production of documents

that will be crucial to evaluating the process leading up to the passage of the voter ID bill and the failure of the bills that proposed solutions to long wait times to votes; the facts and issues considered in enacting or failing to pass those bills; and the likely or potential impact of those bills on voters.  Such information is highly relevant to Plaintiffs' intentional discrimination claims and must be disclosed.  *See Vill. of Arlington Heights*, 429 U.S. at 266 (acknowledging that legislative evidence is highly relevant to "[d]etermining whether invidious discriminatory purpose was a motivating factor" in a legislative decision).  Such information is also relevant to Plaintiffs' undue burden and VRA claims, as documents disclosed by the Legislators may include evidence of the burden that the voter ID law and long wait times to vote place on voters, as well as the costs of and administrative burdens imposed by these measures.

The Legislators' contention that Plaintiffs' subpoenas are overbroad because they require the disclosure of unsolicited communications between the Legislators and persons who are not parties to this lawsuit, *see* Leg. Br. at 20, is unfounded.  While the Legislators may be correct that unsolicited communications from constituent groups, lobbyists, or members of the general public *alone* may not always constitute evidence of legislative intent—though they do provide evidence of the Legislators' knowledge, which is probative of their intent—the Legislators' responses to such communications, to the extent that they exist, *are* direct evidence of legislative intent.  Similarly, evidence that the voter ID legislation was crafted by outside individuals or entities with a discriminatory agenda could be circumstantial evidence of legislative intent, as could evidence that the legislators were strongly lobbied by outside individuals or entities with a discriminatory agenda to approve or reject the relevant legislation.

Indeed, in a recent redistricting case in Florida, communications between legislators and partisan operatives figured prominently as evidence of the Florida Legislature's improper

21

partisan intent in drawing the congressional redistricting plan.  *See League of Women Voters of Fl. v. Detzner*, No. 14-1905, 2015 WL 4130852, at *24 (Fla. July 9, 2015) (recognizing that evidence introduced at trial that political operatives "obtain[ed] the necessary cooperation and collaboration" from the legislature and that the operatives "were successful in their efforts to influence the redistricting process and the congressional plan under review" supported the lower court's finding that the redistricting process and resulting map were tainted with improper partisan intent).  Here, there may be similar evidence of communications between legislators and outsiders.  Plaintiffs are entitled to such communications to the extent that they exist.

### 2.     Plaintiffs' subpoenas do not impose undue burdens on the Legislators

The Legislators' contentions that Plaintiffs' subpoenas are unduly burdensome because they are overbroad and seek irrelevant material and because the potentially responsive document pool for certain select legislators is large,[6] *see* Leg. Br. at 21, are also without merit.  Each of the document production topics listed in Plaintiffs' subpoenas is tailored to compel documents about issues that are highly relevant to this litigation.  In addition, the subpoenas have a temporal limit; they request documents from 2008 until the date of the subpoena.  Thus, the Court should not find that the subpoenas are unduly burdensome on the grounds that they are overbroad or seek irrelevant material.

To the extent that the Legislators contend that Plaintiffs' subpoenas are unduly burdensome because the subpoenas require them to review a large number of documents during the weeks leading up to the November 2015 election, Plaintiffs note that Speaker Howell—one of the legislators who provided an affidavit in support of the Legislators' motion to quash—was

---

[6] The sheer number of emails that at least three of the Legislators claim may be responsive to Plaintiffs' subpoena likely indicates that at least some of these communications may contain evidence of legislative intent.

the Speaker of the House of Delegates when the legislation related to Plaintiffs' claims was proposed and under consideration.  Accordingly, it is highly likely that Speaker Howell has considerably more potentially responsive communications than many of the other legislators Plaintiffs have subpoenaed.[7]  The burden, whatever it may be, is therefore unlikely to fall equally across all of the subpoenaed members of the General Assembly.

Moreover, Plaintiffs stand willing to meet and confer to create search terms, search connectors, and other parameters that will narrow the potentially responsive pool of documents.[8] Plaintiffs would also consider discussing the possibility of limiting searches to particular custodians, if provided information that will aid them in identifying which custodians are most likely to have the bulk of the responsive materials.  Further, Plaintiffs are willing to supply technical assistance or personnel to assist in alleviating any claimed burden.  Because the information sought by Plaintiffs' subpoenas is highly relevant to their claims, not protected by legislative privilege, and the Legislators have not yet worked with Plaintiffs to lessen the allegedly large number of potentially responsive documents, the Legislators' motion to quash the subpoenas on the grounds that they are unduly burdensome is premature and unfounded, and it should be denied.

---

[7] Even though he has not provided an affidavit, the same argument applies to Senator Obenshain who was Chair of the Senate Privileges and Elections Committee during the 2012-2014 regular legislative sessions.

[8] During the meet and confer between counsel for the Legislators and Plaintiffs' counsel, the Legislators took the position that "absolute" legislative privilege protected them from being required to produce any documents responsive to Plaintiffs' subpoenas.  As such, the Parties did not meet and confer regarding the Legislators' unduly burdensome argument.  Had the Parties meet and conferred on this issue, Plaintiffs would have been willing to work with the Legislators in the manner provided above.

**C.      THE LEGISLATORS' MOTION TO STAY DISCOVERY SHOULD BE DENIED**

The Legislators' request that the Court stay discovery against them pending resolution of the motion to dismiss should similarly be denied.  As this Court has recognized, central to any request for a stay is the question of whether granting the stay would prejudice the non-moving party.  Thus, "if there is even a fair possibility that the stay for which he prays will work damage to someone else," the burden is on the moving party "to justify its request, . . . '[by making] out a clear case of hardship or inequity in being required to go forward.'"  *Newbrough v. Piedmont Regional Jail Authority*, 822 F. Supp. 2d 558, 588 (E.D. Va. 2011) (quoting *Williford v. Armstrong World Indus., Inc*., 715 F.2d 124, 127 (4th Cir. 1983)); *see also Sehler v. Prospect Mortgage, LLC*, No. 13-473, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013) ("[A] district court [deciding a motion for a stay] must weigh competing interests and maintain an even balance" among "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.") (internal quotation marks omitted).

The Legislators' Motion, which omits any discussion whatsoever of the significant prejudice that Plaintiffs will suffer if the request for a stay is granted, falls far short of this "clear and convincing" standard.  Instead, the Legislators do nothing more than make vague and speculative assertions that the motion to dismiss could end or narrow this dispute, and that requiring compliance with the subpoenas now would impose "an undue burden."  This Court has previously rejected similar types of "equivocal assertions" as insufficient to justify a motion to stay.  *See Newbrough*, 822 F.Supp.2d at 588.  And the Legislators' wholly conclusory statements that they will suffer "undue burden," without any specific explanation or support, are precisely the type of unsubstantiated assertions that federal courts regularly find insufficient to demonstrate that requiring compliance with a discovery request will, in fact, impose a burden

appropriately characterized as "undue."  *See, e.g.*, *Spears v. First American eAppraiseIT*, No. 13-52, 2014 WL 1045998, at *4 (S.D. Ohio Mar. 14, 2014) (finding witness's "conclusory statement that attending [a] deposition 'would be time-consuming and burdensome' . . . insufficient to show that the burden . . . outweighs the probable relevance of her testimony or its potential value to the parties"); *Malibu Media, LLC v. Doe*, No. 14-874, 2014 WL 5599105, at *6 (M.D. Fla. Nov. 3, 2014) (finding request for protective order to protect against "annoyance, embarrassment, oppression, and undue burden" insufficient to grant protective order, the standard for which "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"); 9A Wright & Miller, § 2463.1 (explaining a person moving to quash a subpoena based on an undue burden objection "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance").  The Legislators' failure to carry this burden is reason alone to deny their request for a stay.

But, even if the Legislators had made a clear and convincing case of hardship (which they plainly have not), it could not outweigh the serious prejudice that Plaintiffs are virtually certain to suffer if the request for a stay is granted.  As explained, the information the subpoenas seek is highly relevant to Plaintiffs' claims.  *See* discussion *supra* Sections III.A.2.a, III.B.1.  And, for the reasons discussed in Plaintiffs' response in opposition, Defendants are unlikely to succeed in their motion to dismiss.  *See generally* Pls.' Opp. to Defs.' Mot. to Dismiss, ECF No. 60. Moreover, the motion to dismiss was already pending when the Court issued the orders setting the schedule for the case, under which Plaintiffs' expert reports are due in less than two months, on November 19, *see* Consent Order, ECF No. 75, and trial is scheduled to begin in a little over four months, on February 22, 2016, *see* Pretrial Order, ECF No. 59.  The Court, of course, is in

the best position to determine the best use of judicial resources, and it has set this case to be tried in February.  The Legislators' request, therefore, is at odds with the Court's judgment as to the best way to manage "the expeditious and comprehensive disposition of the causes of action on the court's docket." *Newbrough*, 822 F.Supp.2d at 588 (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)).  Thus, under these circumstances, concerns of judicial economy also weigh in favor of denying the motion for a stay.

Finally, the only case that the Legislators cite in support of their motion for a stay actually counsels *against* granting their request.  In *Geiser v. Simplicity, Inc.*, No. 10-21, 2011 WL 128776 (N.D. W. Va. Jan. 14, 2011), a third party requested that the court stay discovery directed toward it until the court resolved a pending motion for summary judgment.  The district court *denied* the third party's request for a stay in its entirety.  *Id*. at *5.  In doing so, the court recognized that there is some authority for staying discovery "in some circumstances when dispositive motions are pending."  *Id*. at * 4.  It further recognized, however, that there is no binding precedent from the Fourth Circuit on this issue.  *Id*.  Moreover, it explained that "[i]n today's litigation world . . . discovery is only stayed in rare instances," for "two critical reasons." *Id*.  First, dispositive motions "are often not decided until shortly before trial." *Id*.  Thus, staying discovery whenever a dispositive motion is pending would often run contrary to efficient docket management.  Second, "no matter how strongly . . . counsel believes in the merits of her position, there is no guaranteed outcome of any legal matter."  *Id*.

As in *Geiser*, both of these considerations counsel against granting the requested stay here.  Argument for the motion to dismiss is set for October 23.  Defendants presumably believe in the merits of that motion, but Plaintiffs believe just as strongly that the motion will be denied. And if the Court does deny the motion, it will be virtually impossible to ensure that the requested

26

materials could be produced and reviewed, and that any disputes over the adequacy of the production could be addressed and resolved, before Plaintiffs' expert reports are due, unless the Legislators are required to comply with the subpoenas now.

For all of these reasons, the Legislators' request for a stay should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Legislators' motion for stay of discovery, motion to quash subpoenas, and/or motion for protective order.

DATED:  October 9, 2015

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
Aria C. Branch (VSB # 83682)
Amanda R. Callais (VSB # 85891)
Ceridwen Cherry (admitted *pro hac vice*)
**PERKINS COIE** LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com
Email: EFrost@perkinscoie.com
Email: ABranch@perkinscoie.com
Email: ACallais@perkinscoie.com
Email: CCherry@perkinscoie.com

Joshua L. Kaul (admitted *pro hac vice*)
**PERKINS COIE** LLP
1 East Main Street, Suite 201
Madison, WI 53703-5118
Telephone: 608.663.7460
Facsimile: 608.283.1007
Email: JKaul@perkinscoie.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On October 9, 2015, I will electronically file the foregoing with the Clerk of Court using

the CM/ECF system, which will then send a notification of such filing to the following:

Dana J. Finberg
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel: 415.757.5500
Fax: 415.757.5501
dana.finberg@arentfox.com

Mark F. (Thor) Hearne, II
ARENT FOX LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel: 314.296.4000
Fax: thornet@ix.netcom.com

Stephen G. Larson
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel: 213.629.7400
Fax: 213.629.7401
stephen.larson@arentfox.com

*Attorneys for Defendants*

John C. Adams
ELECTION LAW CENTER PLLC
300 N. Washington St., Suite 405
Alexandria, VA 22314
Tel: 703.96.8611

Kaylan L. Phillips
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
Tel: 317.203.5599
Fax: 888.815.5641

*Attorneys for Amicus Public Interest Legal
Foundation, Inc.*

Jason B. Torchinsky
Shawn T. Sheehy
HOLTZMAN VOGEL JOSEFIAK PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Tel: 540.341.8808
Fax: 540.341.8809

*Attorneys for the Legislative Non-Parties*

Michael A. Carvin
Anthony J. Dick
John M. Gore
Mark R. Lentz
Michael F. Murray
Stephen A. Vaden
JONES DAY (DC-NA)
51 Louisiana Ave. NW
Washington, DC 20001
Tel: 202.879.3724
Fax: 202.656.1700

*Attorneys for Movants Sen. Mark Obenshain,
Virginia County Election Officials, and
Virginia Voters*

By */s/ Aria C. Branch*
Aria C. Branch (VSB # 83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone:  (202) 654-6338
Fax:  (202) 654-9106
ABranch@perkinscoie.com

*Attorney for Plaintiffs*

29