IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

_____
                                        )
BARBARA H. LEE, et al.,                 )
                                        )
                        *Plaintiffs*,   )      Civil Action No:   3:15 CV 357
                                        )
            v.                          )
                                        )
VIRGINIA STATE BOARD OF ELECTIONS,      )
et al.,                                 )
                                        )
                        *Defendants*.   )
_____)

---

**NON-PARTY LEGISLATORS' REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR STAY OF DISCOVERY
AND MOTION TO QUASH SUBPOENAS AND/OR FOR PROTECTIVE ORDER**

---

## INTRODUCTION

Plaintiffs contend that the legislative privilege is both narrow and qualified, a view that is premised on an unwarranted extension of the Supreme Court's holding in *United States v. Gillock*, and buttressed by out-of-circuit case law. Plaintiffs efforts to distinguish and minimize the Non-Party Legislators demonstration that the legislative privilege is both broad and absolute (Op. Br. at 6-10, Dkt. No. 72),[1] are unavailing.

Contrary to Plaintiffs' contentions, (Oppn. Br. at 24-25, Dkt. No. 82)[2] the Supreme Court, without exception, has interpreted the Speech or Debate Clause broadly. *See, e.g.,*

---

[1] Citations of briefs are to the ECF generated pagination.
[2] Plaintiffs cite *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011) ('WSSC II') for the proposition that the state legislative privilege applies only to pre-decisional communications and not post-enactment. (Pls.' Oppn. Br. at 24). This misreads *WSSC II*. The court there declined to apply legislative privilege because the information sought was an administrative act not a legislative act *WSSC II*, 631 F.3d at 184 ("The modified subpoena's requests for documents regarding events after the restructuring likewise appear to relate to administrative rather than legislative acts.").

1

*Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501 (1975). The privilege protects more than just opinions and recommendations (Pls.' Oppn. Br. at 25), the privilege protects "[e]very other act resulting from the nature, and in the execution, of the office." *Tenney v. Brandhove*, 341 U.S. 367, 374 (1951). The privilege protects the full scope of acts and communications of legislators and their aides, experts, and consultants, that are an integral part of the deliberative and communicative process within the legislature's jurisdiction. *Gravel v. United States*, 408 U.S. 606, 616, 625 (1972). The privilege protects mental impressions, recommendations, and advice, s*ee In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987), as well as legislative investigations and the gathering of factual information. *See Eastland*, 421 U.S. at 504-05. Finally, given the mandatory nature of the Speech or Debate Clause's command—"shall not be questioned"— once it is determined that the legislator was acting in a legislative capacity, the privilege is absolute. *Eastland*, 421 U.S. at 503; *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) ('WSSC II') ("Consequently, if the EEOC or private plaintiffs sought to compel information from legislative actors about their legislative activities, they would not need to comply."). Even when the legislator does not face liability, compliance with discovery procedures can prove just as burdensome. *WSSC II,* 631 F.3d at 181. The privilege serves to protect the legislator from a hostile executive or judiciary, and the burden and distraction that results, all of which harms the public good. *Eastland*, 421 U.S. at 502-03.

The subpoenas are overly broad and burdensome and the information sought goes straight to the heart of what the legislative privilege exists to protect, namely,

communications about legislation. Ex. A, Dkt. No. 82-1 at 9-10. The subpoenas should be quashed.

## ARGUMENT

I.  **THE LEGISLATIVE PRIVILEGE IS ABSOLUTE UNDER BINDING SUPREME COURT AND FOURTH CIRCUIT PRECEDENT.**

A. **The Fourth Circuit Consistently Applies An Absolute Legislative Privilege**.

Judge Payne's decision in *Bethune-Hill* is, respectfully, mistaken and is not binding authority on the other judges within the Eastern District of Virginia. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 430-31 n.10 (1996). It also contradicts binding Fourth Circuit case law that holds that the legislative privilege is absolute. *See, e.g., Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) ("The purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves.");[3] *WSSC II*, 631 F.3d at 181; *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996); *see also Suhre v. Board of Comm'rs*, 894 F. Supp. 927, 932 (W.D. N.C. 1995) ("Because the commissioners are entitled to legislative immunity, they are protected from testifying concerning their motives for refusing to remove the commandments); *reversed on other grounds* 131 F.3d 1083 (4th Cir. 1997); *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D. N.C. 1994) ("[L]egislative immunity is both an evidentiary and testimonial privilege, as well as a protection against civil suit."); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) ("Legislative immunity not only protects state legislators from civil liability, it also functions as an evidentiary and testimonial

---

[3] *Overruled on other grounds Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995) (holding that the state legislative privilege does not apply to municipalities in § 1983 claims).

privilege."); *2BD Assocs. Ltd. P'ship v. County Comm'rs*, 896 F. Supp. 528, 531 (D. Md. 1995) ("The effect of the doctrine is twofold; it protects legislators from civil liability, and it also functions as an evidentiary and testimonial privilege."); *see generally* (Op. Br. at 11-13). This Court should apply the legislative privilege in absolute terms consistent with Fourth Circuit precedent.

### B. Legislative Immunity And Legislative Privilege Are Inextricably Linked.

Plaintiffs claim that Non-Party Legislators conflate legislative immunity with legislative privilege. (Pls.' Oppn. Br. at 14). Plaintiffs seek the distinction because doing so is a necessary precondition for finding the privilege qualified. Non-Party legislators acknowledge that legislative immunity and legislative privilege are two distinct doctrines. But legislative privilege flows directly from legislative immunity and the concepts represent two sides of the same coin. Immunity and privilege serve the very same ends. *See WSSC II*, 631 F.3d at 181 ("Legislative privilege against compulsory process exists to safeguard this legislative immunity."); *see Simpson v. City of Hampton,* 166 F.R.D. 16, 18 (E.D. Va. 1996) (citing *Schlitz*, 854 F.2d at 45-46 ("The purpose of the doctrine [of legislative immunity] is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves."); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y. 2003) (noting that although different, legislative immunity and legislative privilege are often discussed interchangeably). Legislative privilege protects and preserves legislative immunity and this Court should reject Plaintiffs' contentions to the contrary.

**C.** **The Non-Fourth Circuit Cases Finding That The Legislative Privilege Is Qualified Are Premised On A Misreading Of *Gillock*.**

Plaintiffs cite no less than six non-Fourth Circuit decisions to demonstrate that the legislative privilege is qualified. (Pls.' Oppn. Mot. at 14-15). These cases mistakenly adopt the false premise that *Gillock* requires courts to balance claims of state legislative privilege against all claims arising under federal law. *See, e.g., In re Grand Jury*, 821 F.2d at 957 ("Gillock instructs us that any such privilege must be qualified, not absolute, and must therefore depend on a balancing of the legitimate interests on both sides."); *Doe v. Pittsylvania County*, 842 F. Supp. 2d 906, 920 (W.D. Va. 2012) ("In contrast to the privilege enjoyed by members of Congress under the Speech or Debate Clause, there is no absolute "evidentiary privilege for state legislators for their legislative acts.") (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980); *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) (relying on the Third Circuit's decision in *In re Grand Jury*, 821 F.2d at 957, for the proposition that state legislative privilege is qualified); *E.E.O.C. v. Wash. Suburban Sanitary Commission*, 666 F. Supp.2d 526, 532 (D. Md. 2009) ('WSSC I') (*aff'd on other grounds*) 631 F.3d 174 (4th Cir. 2011) (also relying on the Third Circuit's decision in *In re Grand Jury*, 821 F.2d at 958); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-5065, *21-24 2011 U.S. Dist. LEXIS 117656 (N.D. Ill. Oct. 12, 2011) (interpreting *Gillock* broadly to breach state legislative privilege in civil cases). *Perez v. Perry*, No. 11-360, 2014 U.S. Dist. LEXIS 1838 at *18 (W.D. Tex. Jan. 8, 2014) (interpreting *Gillock* and *In re Grand Jury Subpoena* to breach state legislative privilege in civil cases).

*Gillock*'s holding was plainly limited to the enforcement of federal *criminal* law and the Court's decision explicitly recognized that the Court's prior precedents afforded state

legislators the same robust absolute legislative privilege as federal legislators in civil cases. *See Supreme Court of Virginia v. Consumers Union of United States,* 446 U.S. 719, 733 (1980).  *Gillock* did not overrule *Tenney*, rather it distinguished *Tenney*. *See Gillock*, 445 U.S. at 373 (noting that Supreme Court precedent draws the line of legislative immunity at civil cases).

The Fourth Circuit has faithfully applied *Gillock* and has not expanded that decision beyond its moorings in federal criminal law. *See United States v. Cartledge,* 928 F.2d 93, 96 (4th Cir. 1991) (relying on *Gillock* in applying a balancing test to claim of state legislative privilege in federal criminal case). The Fourth Circuit's interpretation is consistent with the Supreme Courts. *See Supreme Court of Virginia* 446 U.S. at 733 (noting that in *Gillock* state legislators are afforded less protection than federal legislators but noting that in the § 1983 context, federal and state legislators are afforded the same protections). Plaintiffs' reliance on district court cases that cite *Gillock* for the proposition that state legislators do not enjoy absolute legislative privilege in civil cases is therefore misplaced and contravene binding Supreme Court and Fourth Circuit precedent.

### D. *Bethune-Hill* Contradicts Fourth Circuit Precedent.

Plaintiffs attempt to ground the *Bethune-Hill* decision in the Supreme Court decision in *Gillock*, 445 U.S. at 373 n.10. *See* Pls.' Oppn. Mot. at 11. But the cited portion of the *Gillock* opinion stands for the unremarkable proposition that neither federal nor state legislators are immune from federal criminal prosecution. *Gillock*, 445 U.S. at 373 n.10. This is unremarkable because the language in both the Virginia and federal constitutional provisions provides for this outcome. *See*  U.S. Const. art. I, § 6 (stating that federal legislative immunity does not apply in cases of treason, breach of peace, or *felony*). By

contrast, the language of the Constitution's Speech or Debate clause is absolute when it declares "and for any Speech or Debate in either House, they shall not be questioned in any other Place." *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 418, 421 (D.C. Cir. 1995); *WSSC II*, 631 F.3d at 181.

Plaintiffs overstate their case when they claim that the state legislative privilege is qualified and is a 'longstanding' precedent. (Pls.' Oppn. Br. at 12-13). Of the eleven cases Plaintiffs cite, seven are redistricting cases, five of which were decided in the past four years.[4] Two cases involved a voter ID challenge and both were decided within the past year.[5] At best, these cases stand for the proposition that until this past year, some district courts wrongly held that state legislative privilege is qualified in redistricting cases.

### E.  The Legislative Privilege Is A Testimonial Privilege.

Plaintiffs contend that the legislative privilege "[i]s one of non-evidentiary use of legislative acts against a legislator, not one of non-disclosure." (Pls.' Oppn. Mot. at 11) (quoting *WSSC I*, 666 F. Supp.2d at 532). For this proposition the District of Maryland judge quoted a Third Circuit decision, *In re Grand Jury*, 821 at 958. The Fourth Circuit

---

[4] *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292 (D. Md. 1992); *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014); *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 117656 (N.D. Ill. Oct. 12, 2011); *Perez v. Perry*, No. 11-360, 2014 U.S. Dist. LEXIS 1838 at *18 (W.D. Tex. Jan. 8, 2014); *Baldus v. Members of the Wis. Gov't Accountability Bd.*, 2011 U.S. Dist. LEXIS 142338 (E.D. Wis. Dec. 8, 2011); *US v. Irvin*, 127 F.R.D. 169 (C.D. Cal. 1989).

[5] *Veasey v. Perry*, No. 13-193, 2014 U.S. Dist. LEXIS 45935 *8 n.3 (S.D. Tex. Apr. 3, 2014); *N.C. State Conf. of the NAACP v. McCrory*, No. 13-658, 2015 U.S. Dist. LEXIS 13648 (M.D.N.C. Feb. 4, 2015). The other cases involved an Establishment Clause challenge, *Doe v. Pittsylvania Cnty.*, 842 F. Supp. 2d 906, 920 ( W.D. Va. 2012), and a Section 1983 employment discrimination case, *EEOC v. Washington Suburban Sanitary Comm'n*, 666 F. Supp. 2d 526 (D. Md. 2009),

has not adopted this position and it is contrary to Fourth Circuit precedent. *See, e.g.,* *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) (holding that testimonial privilege is absolute in the Fourth Circuit); *see also WSSC II*, 631 F.3d. at 181 (holding that legislators need not comply with document request demanding information about legislative activities).

Furthermore, the Third Circuit's position has been criticized, *Brown & Williamson Tobacco Corp.*, 62 F.3d at 420, and rejected. *See United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 660 (D.C. Cir. 2007).

### F.   The Legislative Privilege Applies To Both Requests For Documents And Oral Testimony.

The Fourth Circuit held that legislative immunity and the legislative privilege are absolute. *See Burtnick*, 76 F.3d at 613.  In *Burtnick*, the plaintiff brought a 42 U.S.C. § 1983 action against the City of Baltimore for abridging his equal protection rights under the Fourteenth Amendment when the City eliminated his job. *Id.* at 612. After determining that the Plaintiff's former employer, Jacqueline McLean, the Comptroller of the City of Baltimore, had legislative immunity from suit, *Id.* at 612-13, the court then analyzed testimonial privilege. *Id.* at 613. The court fully sustained legislative privilege in the Fourth Circuit. *Id.* Importantly, the court reached this conclusion without any balancing analysis. Rather, the court ruled that the Plaintiffs' constitutional § 1983 claim to redress civil rights violations would proceed "[w]ithout the testimony of members of the Board as to their motives in abolishing Burtnick's job and establishing the new job." *Id.*

The Plaintiffs contend that *Burtnick* is distinguishable here because its holding applies only to prevent testimony whereas Plaintiffs' subpoena compels legislators to

produce documents. (Pls.' Oppn. Mot. at 15) (Dkt. No. 82). This is a factual distinction without a legal difference and no language in *Burtnick* supports drawing this line.

*First*, Plaintiff cites no authority for the proposition that the parameters of legislative privilege are determined by whether the subpoena is for documentary testimony or oral testimony. *See Brown & Williamson Tobacco Corp.*, 62 F.3d at 420.

In fact, Fourth Circuit precedent indicates that the source of the testimony—oral or documentary—does not determine the parameters of the legislative privilege. The Fourth Circuit in *WSSC II* analyzed a legislative privilege claim against the Equal Employment Opportunity Commission's subpoena for documents. *WSSC II*, 631 F.3d at 176. In determining the parameters of the privilege the Fourth Circuit held that legislators need not respond to a document request demanding production of information concerning their legislative activities. *Id*. at 181. For this proposition, the Fourth Circuit cited *Burtnick*, 76 F.3d at 613.

Even *Bethune-Hill* recognizes that the application of the legislative privilege does not depend on whether the party seeking discovery demands oral testimony or document production. *See Bethune-Hill v. Va. State Bd. of Elections*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 *20 (E.D. Va. May 26, 2015); *see also Simpson v. City of Hampton*, 166 F.R.D. 16 (E.D. Va. 1996) (sustaining city council's assertion of legislative privilege in response to request for production of documents). The Fourth Circuit applies legislative privilege broadly and absolutely regardless of whether information is sought through oral testimony or through documents.

*Second*, the distinction between document testimony and oral testimony does not make sense. "Documentary evidence can certainly be as revealing as oral

communications..." *Brown & Williamson Tobacco Corp.*, 62 F.3d at 420. As the Supreme Court ruled, the purposes of the Speech or Debate Clause was to prevent the diversion of legislators' time, energy, and attention from their legislative duties to responding to a subpoena. *Eastland*, 421 U.S. at 503. Whether the information sought is in the form of documents or in the form of oral testimony is immaterial because both infringe on the Speech or Debate Clause's purposes. *See Brown & Williamson Tobacco Corp.*, 62 F.3d at 421; *see also Rayburn House Office Bldg.,* 497 F.3d at 660 (rejecting the argument that legislative privilege only applies when the legislator or legislative staff is personally questioned and noting that the privilege applies to documentary evidence as well).

### G. <u>Legislation Concerning Elections Involves Quintessential Legislative Decisions.</u>

Plaintiffs attempt to distinguish *WSSC II* and *McCray* as cases involving "quintessentially legislative decisions about how to allocate governmental resources..." (Pls.' Oppn. Mot. at 15). This is true. It is also true that the federal Constitution vests the state *legislatures* with the power to determine the time, place, and manner of federal elections. U.S. Const. art. I, § 4. It follows then that legislation concerning the manner in which elections are held also involves quintessential legislative decisions. *See  Smiley v. Holm*, 285 U.S. 355, 366 (1932) (holding that the 'time, place, and manner' provision is comprehensive, vesting state legislatures with the power "[t]o provide a complete code for congressional elections" including provisions to prevent fraud). Thus in enacting its Voter ID provision, the Non-Party Legislators acted with both the authority vested in it by the people of the Commonwealth and under a direct grant of authority from the U.S. Constitution. *Bush v. Palm Beach County Canvassing Bd*., 531 U.S. 70, 76  (2000). Voter ID statutes are quintessential legislative acts as well. (Op. Br. at 3).

It is also not true that the decisions in *McCray*, *WSSC II*, and *Schlitz* were motived by the underlying notion that the plaintiffs had no cause of action. (Pls.' Oppn. Mot. at 15). In fact, the courts ruled that there was a cause of action that had not yet implicated legislative immunity or privilege. *WSSC II*, 631 F.3d at 176. "In other words, a legislative immunity holding is premature if the case might evolve in a way that poses no threat to legislators." *McCray v. Md. DOT*, 741 F.3d 480, 487 (4th Cir. 2014); *see also id*. (noting that the plaintiff's lawsuit had not yet implicated legislative immunity and may not threaten legislators).

## II.   EVEN UNDER A BALANCING TEST, THE LEGISLATIVE PRIVILEGE SHOULD NOT YIELD.

Even if this Court determines that the *Bethune-Hill* decision should be expanded from the redistricting context and into the Voter ID context and hold that the legislative privilege is qualified, the factors weigh in favor of sustaining the privilege. *See* (Op. Br. at 13-17).

### 1.   Relevance Of Evidence

Divining legislative intent is a perilous exercise. (Op. Br. at 14-15) *see also South Carolina Education Asso. v. Campbell*, 883 F.2d 1251, 1261 (4th Cir. 1989) ('SCEA').

Plaintiffs contend, however, that direct evidence of legislative intent is highly relevant for two reasons: *First*, Plaintiffs claim that under *Thornburg v. Gingles*, the Court must "[u]ndertake a fact-intensive appraisal of the design and impact of the challenged laws." (Pls.' Oppn. Br. at 17). *Second*, Plaintiffs contend that because the Complaint alleges racial discrimination in violation of the U.S. Constitution, the Court must inquire into legislative motivation. (Pls.' Oppn. Br. at 18) (citing *SCEA*, 883 F.2d at 1259 and n.6. Neither contention is correct.

*First*, as demonstrated previously, (Op. Br. at 11 and 13), the cases Plaintiffs rely on are redistricting cases (Pls.' Oppn. Br. at 19) which are *sui generis* because "[t]he natural corrective mechanisms built into our republican system of government" are operative and there is no "threat of legislative self-entrenchment." *Bethune-Hill*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 at *14-15. Therefore, *Page*, *Bethune-Hill*, and *Texas v. United States* should be confined to the redistricting context and not applied here.

*Second*, courts that apply a balancing approach when analyzing qualified legislative privilege weigh the potential probative value of the information sought against the impact of infringing legislative privilege, including the resultant distraction and the costs of forcing the legislator to bear the burden of complying with the compulsory process. *See Veasey*, No. 13-193, 2014 U.S. Dist. LEXIS 45935 at *9-10; *see also Eastland*, 421 U.S. at 502-03; *see also WSSC II,* 631 F.3d at 181; Fed. R. Civ. P. 26(b)(2)(C)(3) (granting district courts the discretion to limit discovery where the benefit of the information sought is outweighed by the burden of producing it). Here Non-Party Legislators will bear a herculean burden. (Decl. of Sen. Reeves, Dkt. 72-4, ¶¶ 5-7); (Decl. of Sen. Vogel, Dkt. No. 72-3, ¶¶ 7-8); (Decl. of Torchinsky, Dkt. No. 72-5, ¶¶ 4-5). The risk of significant distraction and the costs of compliance are therefore great. Further, the potential probative value of the information sought varies greatly due to the extreme breadth of Plaintiffs' subpoenas. For example, there is little probative value in documents concerning legislation that did not pass; documents evidencing unsolicited communications; and documents concerning communications as far back as 2008, five years before the contested legislation was discussed and prior to when some Non-Party

Legislators had become members of the General Assembly.[6] The heavy burden placed on Non-Party legislators greatly outweighs any relevance the subpoenaed documents may have and this Court should sustain the privilege. (Op. Br. at 15).

### 2. Availability Of Other Evidence

Plaintiffs should first exhaust other reasonable avenues for discovery before piercing Non-Party Legislators legislative privilege. (Op. Br. at 15). In other qualified privilege contexts, the party seeking discovery is required to first exhaust every reasonable alternative sources of information. *See, e.g., Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981).[7] Given the constitutional basis for the legislative privilege *see Tenney*, 341 U.S. at 372-75; *Greenberg*, 482 F. Supp. at 201-202, the legislative privilege should *at least* be afforded the same deference as the First Amendment privilege.

Plaintiffs argue that "[p]ublic statements alone would undercut the inquiry into legislative purpose...". (Pls.' Oppn. Br. at 19). But the Court should sustain the privilege until the Plaintiffs first seek discovery from the Defendants and elsewhere. To permit the Plaintiffs to use the Non-Party Legislators as a source of first resort reduces the qualified legislative privilege to a nullity and unnecessarily burdens and distracts legislators forcing them to defend themselves in discovery proceedings. *See WSSC II*, 631 F.3d at 181.

---

[6] The following Non-Party Legislators arrived in the General Assembly after 2008: Delegate Ramadan (2012); Delegate Israel O'Quinn (2012); Delegate Joseph Yost (2012); Delegate Nick Rush (2012); Delegate Buddy Fowler (2014); Delegate Randy Minchew (2012); Delegate Margaret Ransone (2012); Senator Bryce Reeves (2012); Senator Tom Garrett (2012).

[7] *Vacated as moot Smith v. Black Panther Party*, 458 U.S. 1118 (1982). *See Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 n.6 (D.D.C. 2002) (noting that "[t]here is no suggestion in later case law in this Circuit that [*Black Panther*'s] reasoning or analysis has been rejected or abandoned by our Court of Appeals.").

### 3.  Seriousness Of Litigation And Issues Involved

Plaintiffs contend that their lawsuit should be viewed simply as a "voting rights" case, and that "the viability of Plaintiffs' legal claims … has no bearing on the seriousness of this litigation or the issues it involves."  (Pls.' Oppn. Br. at 14). But legislative privilege cannot be merely at mercy of pleadings that allege a novel theory that seeks to vindicate a never-before-recognized voting "right."

When balancing the interests in a qualified privilege analysis, the courts are careful to note that the context of the suit is important and is balanced against the intrusion on legislative sovereignty to prevent legislative distraction. *See N.C. State Conf. of the NAACP v. McCrory*, No. 13-658, slip op. at 5 n.1, 6.

The "context" of this lawsuit is that it is one of several filed by Plaintiffs' counsel in so-called "battleground" states throughout the country seeking to have the courts overturn Republican-enacted legislation in advance of the 2016 Presidential election in the hopes of gaining partisan advantage.[8]  In this particular lawsuit, Plaintiffs' allegations include novel claims regarding an unspecified "right" to short waiting times at polling stations, and an unspecified "right" to compel the Commonwealth to reconsider its felon re-enfranchisement petitions differently. (Compl. ¶ 5) (Dkt. No. 37).   These are not

---

[8] See also Maggie Haberman and Amy Chozick, *Democrats Wage a National Fight Over Voter Rules*, NEW YORK TIMES, June 3, 2015, http://www.nytimes.com/2015/06/04/us/politics/democrats-voter-rights-lawsuit-hillary-clinton.html ("Democrats allied with Hillary Rodham Clinton are mounting a nationwide legal battle 17 months before the 2016 presidential election, seeking to roll back Republican-enacted restrictions on voter access that Democrats say could, if unchallenged, prove decisive in a close campaign.")

"serious" legal claims.  The Court should not pierce legislative privilege on novel legal claims until the pending motion to dismiss those claims is decided.

### 4.  <u>Role of the Government</u>

Plaintiff confuses the "role of the government" in this litigation with "the role of the government *in Plaintiff's allegations*." (Pls.' Oppn. Br. at 15).  The two are not the same, and the balancing inquiry properly focuses on the former. *See  Zinker v. Doty*, 637 F. Supp. 138, 141 (D. Conn. 1986) (finding that disclosure not warranted because the government did not initiate the litigation); *see also Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 329 (D.D.C. 1966); *see* (Op. Br. at 16).

### 5.  <u>Purposes of Legislative Privilege</u>

The purposes of the legislative privilege strongly support quashing Plaintiff's subpoenas or issuing a broad protective order.  *Bethune-Hill* notes that "[t]he state legislative privilege protects a 'distraction' interest - to guard legislators from the burdens of compulsory process - and a 'legislative independence' interest - to encourage legislators to engage deeply in the legislative process and act boldly in the public interest without fear of personal consequence."  *Bethune-Hill*, 2015 U.S. Dist. LEXIS 68054, *36.  Other interests include protecting legislators' confidentiality and guarding against "the potential for 'timidity' stemming from disclosure."  *Id*. at *38.  The court in *Page* carefully weighed "the potential for 'future timidity' within the halls of the legislature that may 'inhibit frank and full deliberations' in legislative activity."  *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014). The Southern District of New York sustained the legislative privilege as to deliberative communications because it was concerned that to overrule the privilege would chill future deliberations.  *Rodriguez*, 280

F. Supp. 2d at 100, 103; *see also Favors*, 285 F.R.D. at 220 (privilege protects the ability to have open and honest discussion between legislators, and legislative staff and retained experts).

Permitting Plaintiffs' discovery in the present matter would establish a highly damaging precedent that has, thus far, been limited to redistricting questions in Virginia. If expanded beyond the narrow confines of *Bethune-Hill*, legislators will undoubtedly be discouraged from engaging in "open and honest deliberations" out of well-founded fear that they will constantly be subjected to intrusive, burdensome, and costly discovery demands made by the losing side that seeks to obtain outcomes in courts that cannot be obtained through normal legislative channels. *See*, *e.g.*, *Kay*, 2003 U.S. Dist. LEXIS 27311, *62 (expressing concern that "allowing the discovery sought … would open the proverbial floodgates to more and more requests for discovery prying into how the legislature made its decisions"). Legislators must be able to conduct their business free of interference from litigious partisans, and protecting the Legislature from "political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *WSSC II*, 631 F.3d at 181.

## III. THE SUPREMACY CLAUSE DOES NOT ABROGATE LEGISLATIVE PRIVILEGE.

Plaintiffs contend that the Supremacy Clause renders Virginia Speech or Debate Clause a nullity in federal question cases. (Pls.' Oppn. Br. at 22). Plaintiffs rely on *Bethune-Hill* which quoted *Gillock* statement that "[t]he Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power." *Gillock*, 445 U.S. at 370; *Bethune-Hill*, No. 14-852, 2015 U.S. Dist. LEXIS 68054 at *14.

*First*, Plaintiffs remove this comment from its context. Both *Bethune-Hill* and *Gillock* made this comment within the context that separation of powers principles do not support state legislative privilege not that state constitutional provisions have no value in federal court. *See Gillock*, 445 U.S. at 370. Even *Gillock* and *Tenney* acknowledged that § 1983 suits did not abrogate federal common law legislative privilege without Congress expressly declaring it so. *Gillock*, 445 U.S. at 372-73; *Tenney*, 341 U.S. at 376. The *Gillock* Court's holding is limited to federal criminal cases. *Supreme Court of Virginia*, 446 U.S. at 733.

*Second*, the Fourth Circuit still maintains absolute legislative privilege in civil actions. *See, e.g., WSSC II*, 631 F.3d at 181; *Burtnick*, 76 F.3d at 613. As the *Tenney* Court noted in civil suits alleging violations of constitutional rights it is unfathomable that Congress, in enacting the Civil Rights Act, would implicitly pierce legislative privilege. *See Tenney*, 341 U.S. at 376. The Supremacy Clause cannot be used to pierce state legislative privilege in civil cases absent Congress authorizing the action.

*Third*, Plaintiffs attempt to distinguish *Greenberg v. Collier*, because it involved a constitutional challenge to a Virginia state law. (Pls.' Oppn. Br. at 23 n.5). But that is precisely the scenario Plaintiffs' case presents. Plaintiffs seek to declare Virginia's Voter ID statute in violation of the Voting Rights Act and unconstitutional under the First and Fourteenth, Amendments to the U.S. Constitution. (Pls.' Oppn. Br. at 8).

*Fourth*, it would be a gross violation of state sovereignty if the Supremacy Clause granted the ability to pierce state legislative privilege in a civil case because "[a] core function of state sovereignty is to protect the processes by which state laws are made." Steven F. Huefner, The Neglected Value Of The Legislative Privilege In State

Legislatures, 45 Wm. & Mary L. Rev. 221, 304 (2003). This is true especially here where in enacting a Voter ID law, the Virginia General Assembly acted under a direct grant of authority in the U.S. Constitution and as duly elected representatives of the people. *See Bush*, 531 U.S. at 76.  The Supremacy Clause does not create substantive rights for the federal government and thus Plaintiffs cannot rely on the Supremacy Clause as a grant of authority to pierce state legislative privilege. *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law.").

## IV.    THE SUBPOENAS ARE OVERLY BROAD AND BURDENSOME.

*First*, Plaintiffs contend that the subpoenas are not overly broad because the subpoenas are directed at specific legislators concerning a bill that was passed in 2013 and three bills that failed to pass in 2013. (Pls.' Oppn. Br. at 26). But the subpoena requests that the legislators produce *all* communications between the legislator, the legislator's staff, agents, consultants, and vendors with *anyone* from *2008* to the present. The subpoena on its face is overly broad. *See* (Op. Br. at 20-21).

*Second*, Plaintiffs do not attempt to justify the temporal breadth of the subpoena that seeks documents *five* years prior to the votes on the legislation Plaintiffs are interested in. (Op. Br. at 4). Further, Plaintiffs admit that unsolicited communications from even lobbyists and constituent groups do not, alone, "[c]onstitute evidence of legislative intent." (Pls.' Oppn. Br. at 27). This admission should end the matter. The relevance standard limits discovery to information that is reasonably calculated to lead to the discovery of admissible evidence, not to the discovery of relevant information. (Op. Br. at 20-21).

*Third*, Plaintiffs do not challenge the unduly burdensome nature of the subpoenas. (Pls.' Oppn. Br. at 28-29). Instead, Plaintiffs speculate that the burden will not be shared equally among the Non-Party Legislators and state that they are willing to narrow the request to certain custodians and limit search terms. (Pls.' Oppn. Br. at 29).[9] But Plaintiffs argument that a judicial determination that their subpoenas are unduly burdensome is premature neglects the fact that a subpoena is an order of the court. *See In re Antitrust Grand Jury Investigation (Under Seal)*, 714 F.2d 347, 350 n.8 (4th Cir. 1983). Counsel does not have the power to modify a court order.

## V.   THE COURT SHOULD STAY DISCOVERY UNTIL THE COURT HAS RULED ON THE MOTION TO DISMISS.

Plaintiffs' wrongly assert that the Non-Party legislators did not demonstrate a burden and an inequity if discovery were not stayed. (Pls.' Oppn. Br. at 30). The Legislators' did in fact detail the herculean burden imposed upon them now less than three weeks away from an election. (Op. Br. at 17-23).  (Decl. of Sen. Reeves, Dkt. 72-4, ¶¶ 5-7); (Decl. of Sen. Vogel, Dkt. No. 72-3, ¶¶ 7-8); (Decl. of Torchinsky, Dkt. No. 72-5, ¶¶ 4-5). Because the Legislators are non-parties it is inequitable to compel production prior to the Court's ruling on the Motion to Dismiss which could narrow the document requests and decrease the burden. (Op. Br. at 5-6). Given the schedule in this case, should the Court deny Non-Party Legislators' Motion, (Dkt No. 75) the Plaintiffs' experts will only have incurred a minor inconvenience at most in preparing their opinion(s) in a condensed timeframe.

---

[9] Plaintiffs are wrong to insinuate that Non-Party Legislators did not fulfill their meet and confer obligation. (Pls.' Oppn. Br. at 29 n.8), discussion between counsel on September 23, 2015, *opened* with the overly broad nature of the subpoena requiring Non-Party Legislators to review all communications, even unsolicited communications. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612 ("A subpoena imposes an undue burden on a party when a subpoena is overbroad."). Plaintiffs did not offer any accommodation. The discussion then turned to legislative privilege when Plaintiffs' counsel inquired if that was also part of the Motion to Quash.

## <u>CONCLUSION</u>

For the foregoing reasons, and for those stated in the Non-Party Legislators' opening brief, Dkt. No. 72, this Court should grant the Motion to Quash and the Motion to Stay Discovery.

Respectfully submitted: October 15, 2015

/s/_____
Jason Torchinsky (Lead Counsel) (VA Bar 47481)
jtorchinsky@hvjlaw.com
J. Michael Bayes  (VA Bar 48076)
jmbayes@hvjlaw.com
Shawn Toomey Sheehy (VA Bar 82630)
ssheehy@hvjlaw.com
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809

*Counsel to Legislative Non-Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent a notification to all counsel of record.

Respectfully submitted,

By: ___/S/_____

Shawn Toomey Sheehy (VA Bar 82630)
ssheehy@hvjlaw.com
HOLTZMAN VOGEL JOSEFIAK PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Phone: 540-341-8808
Fax: 540-341-8809

*Counsel to the legislative non-parties*