IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BARBARA H. LEE, et al., ) | |
| ) | |
| *Plaintiffs*, ) | Civil Action No: 3:15 CV 357 |
| ) | |
| v. ) | |
| ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, ) | |
| et al., ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**NON-PARTY REGISTRARS' MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH**

**INTRODUCTION**

Without first attempting to obtain the documents they seek from the Defendants, in the weeks immediately preceding the 2015 Virginia elections, the Plaintiffs commandeered the limited resources of twenty-three city and county registrar offices—non-parties in these proceedings—demanding the production of 34 categories of documents. The Non-Party Registrars agreed to produce three categories of documents prior to the elections, namely, electoral board meeting agendas and minutes, poll books, and budgets. This production included approximately 90,000 pages of documents and was responsive to only five of the 34 document requests. The Non-Party Registrars have assessed the remaining documents that may be responsive to the remaining 29 requests—as well as two localities who have received follow-up subpoenas—and have determined

1

that producing these documents is unduly burdensome and could be obtained from the Defendants in this action, a more convenient source that is less burdensome and costly on the Non-Party Registrars. This Court should quash the remainder of the subpoena under Fed. R. Civ. P. 45(d)(3)(A)(iv) and Fed. R. Civ. P. 26(b)(2)(C)(i).

## DISCOVERY PRODUCED

Approximately six weeks prior to the Virginia elections, the Plaintiffs served subpoenas duces tecum on the 23 Non-Party Registrars containing a request for 34 categories of documents. (Ex. A). This was burdensome for the small staffs of these offices to comply with since they were simultaneously preparing for the Commonwealth's General Elections. In compliance with the Federal Rules of Civil Procedure, the Non-Party Registrars submitted objections to the subpoena. (Ex. B). With those objections, the Non-Party Registrars asserted that with 30 of the 34 Document Requests, the information sought was available or likely available from the Defendants.

On October 19, 2015, after consultations with Plaintiffs' counsel, the Non-Party Registrars agreed to produce documents responsive to five categories: electoral board meeting minutes and agendas, poll books, and budgets. Non-Party Registrars agreed to this production schedule in an effort to comply with Plaintiffs' demands that Plaintiffs experts needed this information to complete their expert reports by the November 19, 2015 deadline.[1] In an additional effort to assist Plaintiffs in completing their expert reports, Non-Party Registrars asked Plaintiffs what type of electronic poll book report Plaintiffs' experts needed. (Ex. C) (email chain between Aria Branch, counsel to

---

[1] This Court granted the Parties' November 6, 2015 joint request for an extension of time for Plaintiffs to file their expert reports. The new deadline for Plaintiffs' expert report is December 3, 2015, with Defendants filing their opposition expert reports on December 24, 2015 and Plaintiffs' reply is due January 4, 2016. (Dkt. No. 96).

2

Plaintiffs, and Jason Torchinsky, counsel to Non-Party Registrars). Plaintiffs responded that they did not know. (Ex. C). Plaintiffs did agree that the remaining categories of documents could be produced after the November 3, 2015 elections.

On November 4, 2015, the Non-Party Registrars produced all documents responsive to those categories and did not withhold any documents on a claim of privilege. The production included 6 Gigabytes of data or 99,108 pages of documents. This production also included the poll books from the jurisdictions from 2008 to 2014. This cost the Non-Party Registrars more than $20,000 in legal fees to first prepare the objections and then to review the potentially responsive documents. Additionally, the Non-Party Registrars paid $4,125 in expenses to prepare the data transfer. But most concerning is that it took 17 registrars with 40 staff members 274 hours to make this first production, a fraction of the document requests. *See generally* Ex. F (registrar affidavits).

## **PLAINTIFFS DEMAND MORE**

Unsatisfied with this mammoth production, Plaintiffs complained that the electronic poll books were not produced in the "[c]orrect format *for the purpose of our request*." (Ex. D) (email from Aria Branch to Shawn Sheehy, counsel to Non-Party Registrars) (emphasis added). Plaintiffs did not say—and have never said—that the format was unusable or unsearchable; Plaintiffs merely complained that the poll books were not produced in a manner that the Plaintiffs' experts wanted. This was curious after Non-Party Registrars asked what type of reports experts wanted and received no specification and not specifying the format in which to produce the documents. *See* (Ex. C) (Plaintiffs' counsel stating that Plaintiffs are not in a position to request a specific

3

report from the poll books and simply stating that Plaintiffs want all poll book data without specifying any format). Non-Party Registrars produced the poll books in their original format. Further, Plaintiffs then asked that each of the Non-Party Registrars meet with the vendor of the poll book software and have that vendor manipulate the local jurisdictions' data in a manner that Plaintiffs' experts wanted. (Ex. D).

Moreover, as the Non-Party Registrars started reviewing their files for the documents responsive to the remaining requests, the Non-Party Registrars recognized that the number of documents responsive to the remainder of Plaintiffs' subpoena was unduly burdensome. Further, 30 of the 34 Document Requests seek information that could be obtained from the Defendants. *See* (Exs. A-B) (Request Nos. 1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34). Plaintiffs have not demonstrated that they have made any effort to obtain those documents from the Defendants, much less exhaust the means available to the Plaintiffs to obtain the requested documents from the Defendants. This is especially necessary here where the Non-Party Registrars need to focus their limited resources on preparing for the March 1, 2016 presidential primary.

After spending approximately 274 hours searching and producing these documents to counsel for the Non-Party Registrars; after counsel spent approximately 80 hours to review more than 90,000 pages of documents; after then producing and having legal counsel review more than 90,000 pages of documents at a cost greater than $25,000 to the Registrars that was responsive to only five of the 34 document requests, the Non-Party Registrars request that this Court quash the remainder of subpoena as unduly burdensome and because the information sought could be more easily obtained from the

4

Defendants. The Non-Party Registrars also request that this Court find that the Non-Party registrars have complied with the request for producing poll books and that nothing further is required on that request.

## ARGUMENT

### I. PLAINTIFFS' DEMANDS ARE UNDULY BURDENSOME

The undue burden standard codified in Rule 45 of the Federal Rules of Civil Procedure requires that this Court in its supervisory role over discovery in this case, "[b]e generally sensitive to the costs imposed on third parties." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). This concern is "[e]ntitled to special weight..." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. Cal. 1980); *Belk v. Smith*, 2014 U.S. Dist. LEXIS 141736, *7 (M.D.N.C. Oct. 6, 2014) (noting "the recognized purpose of protecting non-parties from unnecessary discovery burdens"); *DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, *15 (S.D.N.Y. Sept. 26, 2011) ("Courts are especially sensitive to the burdens placed on nonparties."); *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009); *Collins & Aikman Corp. v. J. P. Stevens & Co.*, 51 F.R.D. 219, 221 (D.S.C. 1971) ("There appear to be quite strong considerations indicating that the discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents."); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The rule is thus well established that nonparties to litigation enjoy greater protection from discovery than normal parties.").

Furthermore, "Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does

not mean that discovery must be had." *Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Therefore, the Rule 45 standard works in conjunction with Fed. R. Civ. P. 26(b)(2)(C), which empowers courts to prohibit discovery where the proponent seeks information that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

So sensitive is this concern of placing an undue burden on non-parties that "Rule 45[(d)(3)(A)(iv)] *requires* the Court to quash a subpoena that 'subjects a person to an undue burden.'" *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (emphasis added). The advisory committee notes "[e]mphasize the need for actual judicial use of subdivision (b)(2) to control excessive discovery." Fed. R. Civ. P. 26 adv. comm. note (2000).

The Non-Party Registrars are not defendants in this litigation; rather, they are non-parties. This Court must "[b]e generally sensitive to the costs imposed..." on the Non-Party Registrars by the Plaintiffs' subpoena. This Court must quash the subpoena because it is unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iv); *see In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).

A. **Plaintiffs' Subpoenas Impose Undue Burdens on Non-Parties**

A subpoena imposes an undue burden where the subpoena requires the "[n]on-party to incur excessive expenditure of time or money...." *Cook v. Howard*, 484 Fed. Appx. 805, 812 n.7 (4th Cir. 2012); *see also In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) (""A subpoena imposes an undue burden on a party when a subpoena is overbroad."). The potentially responsive document pool the

6

Plaintiffs ask the Non-Party Registrars is massive and includes more than 60,000 pages of documents, requiring 1,541.5 hours to produce to counsel using 43 full time employees. *See* (Decl. of Amherst County ¶¶ 9-10); (Decl. of Augusta County ¶¶ 9-10); (Decl. of Brunswick County ¶¶ 9-10, 12); (Decl. of City of Danville ¶¶ 9-10); (Decl. of Fauquier County, ¶¶ 9-10); (Decl. of City of Falls Church ¶¶ 9-10) (Decl. of Floyd County ¶¶ 9-10); (Decl. of Gloucester County ¶¶ 9-10) (Decl. of Goochland County ¶¶ 9-10); (Decl. of James City County ¶¶ 9-10); (Decl. of Loudoun County ¶¶ 9-10); (Decl. of Newport News ¶¶ 9-10); (Decl. of Roanoke County ¶¶ 9-10); (Decl. of Stafford ¶¶ 9-10); (Decl. of the City of Suffolk ¶¶ 9-10); (Decl. of Warren County ¶¶ 9-10); (Decl. of the City of Winchester ¶¶ 9-10). It will cost the Non-Party Registrars more than $300,000 in legal fees to review these documents and prepare them for production. *See* (Decl. of Amherst County ¶ 11); (Decl. of Augusta County ¶ 11); (Decl. of Brunswick County ¶ 13); (Decl. of City of Danville ¶ 11); (Decl. of City of Falls Church ¶ 11) (Decl. of Fauquier County ¶ 11); (Decl. of Floyd County ¶ 11); (Decl. of Gloucester County ¶ 11) (Decl. of Goochland County ¶ 11); (Decl. of James City County ¶ 11); (Decl. of Loudoun County ¶ 11); (Decl. of Newport News ¶ 11); (Decl. of Roanoke County ¶ 11); (Decl. of Stafford ¶ 11); (Decl. of the City of Suffolk ¶ 11); (Decl. of Warren County ¶ 11);  (Decl. of the City of Winchester ¶ 11). In addition to the time the limited staff members of the Non-Party Registrars will need to spend searching for responsive documents, the more than 60,000 pages of documents could require an additional 1,000 to 2,000 hours of legal time for legal review for relevance and privilege at significant cost to the Non-Party Registrars.

The subpoenas are therefore unquestionably burdensome. *See N.C. Right to Life, Inc. v. Leake,* 231 F.R.D. 49, 52 (D.D.C. 2005) (finding that subpoena was burdensome where subpoenaed non-parties estimated that it would take one staff member of one organization 15 to 20 days of work to comply with the subpoena and another large organization said it would take six staffers one month to comply); *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317-18 (S.D.N.Y. 2009) (quashing subpoena as unduly burdensome because of "the substantial burden it would impose [on the nonparty] and the low likelihood that it would yield documents beneficial to Plaintiffs beyond those they already have from prior discovery and will receive from the discovery permitted herein.").

The subpoenas are unduly burdensome, especially in light of the March 1, 2016 presidential primaries. The Non-Party Registrars must focus their limited resources towards preparing for the presidential primary. This Court should therefore quash the subpoenas as unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring courts to quash a subpoena that subjects a person to an undue burden).

## II.   PLAINTIFFS CAN OBTIAN THE INFORMATION THEY SEEK THROUGH LESS INTRUSIVE MEANS.

Fed. R. Civ. P. 26(b)(2)(C)(i) *mandates* that this Court quash or modify a subpoena that demands information that can be "[o]btained from some other source that is more convenient, less burdensome, or less expensive." For example, in a patent infringement case, the court denied plaintiff's motion to compel the non-party, Department of Veteran Affairs, to produce information related to the Department's purchase of a product from the defendant that contained plaintiff's patented technology. *See Burlodge Ltd. v. Standex Int'l Corp. (In re Motion to Compel Compliance),* 257

F.R.D. 12, 13 (D.D.C. 2009). After quashing the majority of the subpoena on relevance grounds, the court considered two requests relevant: information on how the Department was to use the equipment that it purchased from the defendant, and any written instructional materials for the product. *See id.* at 18-19. But the Court still quashed the remainder of the subpoena for two reasons. First, there was no evidence that the plaintiff had first sought the information through a Freedom of Information Act Request. *See id.* at 19. Second, and most important for the Registrar's Motion, the plaintiff asked the defendant for the information and the defendant stated that it would not provide details of the transaction with the Department. *See id.* Rather than pursue the avenues available to plaintiff to compel the defendant to produce the information, the plaintiff issued a subpoena to the Department. The court quashed the subpoena ruling that no matter how limited in scope the plaintiffs subpoena could be, the subpoena is still unduly burdensome because the information sought could be obtained from a more convenient, less burdensome source. *See id; see also Educ. Fin. Council v. Oberg,* No. 10-0079, 2010 U.S. Dist. LEXIS 102221, 8-9 (D.D.C. Mar. 8, 2010) (holding that discovery request from plaintiff to non-party was unduly burdensome because the information sought was available from the defendant and absent evidence that defendants would not provide the information sought, the court would not require the non-party to comply with the subpoena).

Additionally, in another patent infringement suit, the defendant served a subpoena on a non-party. *See Macdermid Printing Solutions, L.L.C. v. E.I. du Pont de Nemours & Co.*, No. 10-038, 2012 U.S. Dist. LEXIS 29218 at *2-3 (M.D.N.C. Mar. 6, 2012). The non-party was an individual who had previously worked with the patent at issue. *See id.*

9

at *6. Further, the non-party had worked for the defendant and served as a consultant for the plaintiff. *See id*. The defendant argued that the non-party had information that would corroborate the defendant's testimony and documents concerning the defendant's "[p]rior use and sale of digital plates that invalidate certain claims of the [patent at issue] now asserted against [defendant]." *Id*. at *7-8. These plates were manufactured in Germany while the non-party worked in New Jersey. *See id*. at *8.

The Court concluded that because the defendant manufactured the plates, the defendant was the "[b]est source of information regarding the plates' prior sale." *See id*. The fact that the plates were manufactured in Germany only strengthened the finding. *See id*.

The Non-Party Registrars have declared to the Plaintiffs that much of the information they seek is obtainable from the defendant, State Board of Elections. *See generally* (Ex. B) (objecting that of 34 categories of documents, at least 30 could be obtained from the Defendants.[2]

Document requests 1, 2, 3, 4, 7, 20, 26, 29, and 34 all seek information that is available on the VERIS database. The Defendants have complete access to the VERIS

---

[2] On a stipulation of voluntary dismissal, this Court has dismissed those portions of Count II of the amended complaint that allege Virginia's system of re-enfranchising nonviolent felons violates the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 98). The Plaintiffs—unopposed by Defendants—also filed a motion asking this Court to sever or stay Plaintiffs' long line claims. (Dkt. No. 102). The Non-Party Registrars have received no additional communication from Plaintiffs about the status of the document requests related to those claims and whether Plaintiffs will narrow their requests. (Ex. E). Plaintiffs do seek information from Non-Party Registrars concerning these claims. *See, e.g.,* Requests 20 and 25 (subpart i) (nonviolent felon re-enfranchisement) and Requests 18 and 25 (subpart h) (lines at the polls). This Court should quash the subpoena as to those requests since the nonviolent felon re-enfranchisement claims has been dismissed and since the parties are likely to settle the long lines claim by December 16, 2015. (Dkt. No. 102 at 2).

database and can run custom reports to obtain responsive data. Plaintiffs should first attempt to obtain this information from the Defendants.

Document Requests 9 and 10 request information regarding who applied for and obtained a free voter ID as well as the types of systems that are in use to issue free voter ID. The Defendants actually make the free voter IDs and therefore are in the best position to provide information responsive to this Request. Furthermore, specifically to Document Request 22, the Defendants act as grantors and thus accept and approve applications from the localities to obtain this equipment. The Defendants are therefore in the best position to provide responsive documents.

Document Requests 11, 14, and 16 request information regarding training materials that the Non-Party Registrars use. Here, the Defendants actually provide the training materials. The Plaintiffs should seek this information from the Plaintiffs first.

Document Requests 12 and 25 seek communications with the Defendants and Defendants staff, employees, agents, vendors, and consultants. Plaintiffs should first ask the Defendants for these communications before burdening the Non-Party Registrars with these requests.

Document Request 13 requests the production of all voter fraud studies. The Defendants are in the best position to answer this Request as the Defendants have the resources to conduct and pay for any type of election related study. Plaintiffs should first ask the Defendants for this information before burdening the local Non-Party Registrars with this request.

Document Request 21 requests documents concerning outreach efforts to inform voters about voter registration deadlines and requirements as well as voter ID

11

requirements and voting procedures. Defendants conduct statewide voter outreach and Plaintiffs should first seek this material before burdening the Non-Party Registrars.

Document Request 27 requests digitized boundaries of districts. Defendants have this information. Plaintiffs should seek this information from Defendants first.

Document Request 28 requests all election results for all precincts from 2000, 2004, 2008, 2010, 2012, and 2014. This information is in the Defendants possession. Plaintiffs should seek this information from the Defendants first. The information is also publicly available. *See* www.elections.virginia.gov/resultsreports/index.html.

Document Request 31 requests all sample ballots for each precinct from the 2008, 2010, 2012, and 2014 general elections. The Defendants have all of this information because the Defendants must first approve each ballot before the local electoral board sends the ballot to a printer for printing.

Document Request 33 requests all documents concerning the number and type of voting machines used at polling stations for the 2016 elections. The local electoral boards are prohibited from changing the voting systems without the prior approval of the Defendants. The Defendants are therefore in possession of what voting systems are in use.

There is no evidence that the Plaintiffs have tried and failed to obtain this information from the Defendant. There is certainly no evidence that Plaintiffs have exhausted the legal avenues available to them to compel the Defendant to produce the desired information or admit that the Defendant does not have desired information. This Court should compel Plaintiffs to use these legal avenues first before requiring the Non-Party Registrars to expend 1,541.5 hours expend more than $300,000 in legal fees. *See*

*See Burlodge Ltd.,* 257 F.R.D. at 18-19; *Macdermid Printing Solutions, L.L.C.*, No. 10-038, 2012 U.S. Dist. LEXIS 29218 at *6-8.

## CONCLUSION

For the foregoing reasons, this Court should quash Plaintiffs' subpoenas. Compliance with the subpoenas is unduly burdensome for the Non-Party Registrars and Plaintiffs can obtain the information they seek from the Defendants. This Court, like the Court in *Burlodge*, should require the Plaintiffs to first exhaust the legal avenues available to them to obtain the information from Defendants before burdening the Non-Party Registrars with compliance.

*Respectfully submitted on this 24th day of November 2015.*

/s/_____
Jason Torchinsky (Lead Counsel) (VA Bar 47481)
jtorchinsky@hvjt.law
J. Michael Bayes (VA Bar 48076)
jmbayes@hvjt.law
Shawn Toomey Sheehy (VA Bar 82630)
ssheehy@hvjt.law
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809

*Counsel to Non-Party Registrars*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 24, 2015, I filed the foregoing via the CM/ECF system which sent a notification of the filing to all counsel of record.

      Respectfully submitted,

      By: /s/ _____

      Jason Torchinsky (VA 47481)
      jtorchinsky@hvjt.law
      HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
      45 North Hill Drive, Suite 100
      Warrenton, VA 20186
      Phone: 540-341-8808
      Fax: 540-341-8809
      *Counsel to Non-Party Registrars*