IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BARBARA LEE, *et al.*,  )
    Plaintiffs,  )
  )
v.  )    Civil Action No. 3:15CV357 (HEH-RCY)
  )
VIRGINIA STATE BOARD  )
OF ELECTIONS, *et al.*,  )
    Defendants.  )
_____)

## MEMORANDUM OPINION
### On Legislative Nonparties' Motion for Stay of Discovery and Motion to Quash Subpoenas and/or Motion for Protective Order

This matter is before the Court for resolution of non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) on the Legislative Nonparties' Motion for Stay of Discovery and Motion to Quash Subpoenas and/or Motion for Protective Order ("Mot. to Quash," ECF No. 71). Plaintiffs have served subpoenas on several nonparty current, or former, members of the Virginia General Assembly ("Nonparty Legislators").[1] Through these subpoenas, Plaintiffs seek to compel the Nonparty Legislators to produce communications between themselves and various other persons; these communications involve several senate bills and related topics discussed by the Virginia Senate. (*See* Notice of Additional Attach. to Mot. to Quash, ECF No. 73, Subpoena to Senator

---

[1] Plaintiffs have served subpoenas on the following Nonparty Legislators: Speaker of the Virginia House of Delegates William Howell; Majority Leader of the Virginia Senate Kirk Cox; Delegate Tim Hugo; Delegate Rob Bell; Delegate Margaret Ransone; Delegate Randy Minchew; Delegate David Ramadan; Delegate Buddy Fowler; Delegate Mark Cole; Delegate John O'Bannon; Delegate Nick Rush; Delegate Joseph Yost; Delegate Israel O'Quinn; Delegate Riley Ingram; Delegate Dave Albo; Delegate Steve Landes; Delegate Chris Jones; Senator Jill Vogel; Senator Bryce Reeves; Senator John Cosgrove; Senator Bill Carrico; Senator Mark Obenshain; Senator Steve Martin; Senator Dick Black; and Senator Jeffrey McWaters. (Legs.' Mot. to Quash at 1 n.1.)

Plaintiffs also have served subpoenas on Delegate John Cox, Delegate Jackson Miller, Delegate Thomas Garrett, and Senator Ralph Smith. These four legislators have not joined the Motion to Quash as they either have no responsive documents or do not object to the subpoenas. (*See* Pls.' Mem. Opp'n to Mot. to Quash ("Pls.' Opp'n") at 3 n. 2, ECF No. 82.)

Bryce E. Reeves, Attach. A ("Reeves Subpoena") at 5, ECF No. 73-1;[2] *see also* Non-Party Legislators' Mem. of P. & A. in Supp. of Legislators' Mot. to Quash ("Legs.' Mem. Supp."), ECF No. 72, Attach. 3, Decl. of Sen. Jill Holtzman Vogel ("Vogel Decl.") ¶ 4, ECF No. 72-3.) The Nonparty Legislators refused to produce these communications, arguing that the communications are protected by legislative privilege and that production would be unduly burdensome. (*See* Legs.' Mem. Supp. at 3-4.)

Having reviewed the submissions by Plaintiffs and the Legislative Nonparties, and for the reasons discussed herein, the Court holds (1) that legislative privilege precludes the production of communications between and among the Nonparty Legislators and any persons in the employ of the Nonparty Legislators ("Legislative Employees"); (2) that legislative privilege does not preclude the production of communications between and among the Nonparty Legislators and third parties, such as state agencies, constituents, and lobbyists, among others ("Third Parties"); (3) that legislative privilege does not preclude the production of communications between and among the Legislative Employees and Third Parties; and, (4) given the limitations noted below and the fact that discovery is broad in scope and freely permitted, that the production of communications with Third Parties is not unduly broad or burdensome.[3] Accordingly, the Court will grant the Motion to Quash to the extent set forth herein and otherwise will deny the Motion to Quash.

## I. BACKGROUND

Barbara H. Lee, Gonzalo J. Aida Brescia, and the Democratic Party of Virginia ("Plaintiffs") have brought this suit against the Virginia State Board of Elections and its officers as well as the Virginia Department of Elections and its commissioner (collectively, "Defendants"). Plaintiffs

---

[2] For all citations, the Court uses the pagination of the documents themselves, rather than the ECF pagination.

[3] Because the Court finds that communications between and among the Nonparty Legislators and the Legislative Employees are privileged the Court will deny the Motion to Quash to the extent it seeks a protective order. Furthermore, because this Court has ruled on the Motion to Dismiss, (*see* Order, ECF No. 111), the Court will deny as moot the Motion to Quash to the extent it seeks a stay of discovery pending the resolution of the Motion to Dismiss.

allege that Virginia's recently-passed Voter Identification Law ("Voter ID Law") violates the Federal Constitution, violates the Voting Rights Act ("VRA"), and results in impermissible Partisan Fencing. (*See* Am. Compl. ¶¶ 100-11, 114-126, ECF No. 36.) Therefore, Plaintiffs ask the Court for declaratory and injunctive relief with regard to Virginia's Voter ID Law.[4] (*See* Am. Compl. at 38-39, ¶¶ A-D.)

In seeking evidence of the "legislative intent" of the Voter ID Law, Plaintiffs served the Nonparty Legislators with subpoenas, demanding the production of "[a]ll communications between any person and [the legislator], and/or [the legislator's] employees, staff, agents, vendors, or consultants, regarding or related to . . . "[v]oter identification, including free voter ID" and Senate Bills 1, 663, and 1256—enacted by the General Assembly in 2013 (collectively, "Voter ID Communications"). (*See* Reeves Subpoena at 5; *see also* Vogel Decl. ¶ 4.)[5]

The Nonparty Legislators refused to produce the Voter ID Communications demanded in the subpoenas and subsequently filed their Motion to Quash (ECF No. 71). For the reasons discussed below, the Court finds that all communications between and among the Nonparty Legislators and the Legislative Employees are protected by legislative privilege. The Court also finds, however, that communications between and among Nonparty Legislators and/or Legislative Employees and third parties are not protected by legislative privilege. Accordingly, the Court grants in part and denies in part the Nonparty Legislators' Motion to Quash (ECF No. 71).

---

[4] Plaintiffs originally also brought a claim regarding the re-enfranchisement of non-violent felons. (*See* Am. Compl. ¶¶ 112-13.) Plaintiffs have since voluntarily dismissed this claim. (Stipulation for Dismissal Pursuant to Rule 41(A)(1), ECF No. 97; *see* Order Dismissing part of Count II of the Am. Compl., ECF No. 98.)

Plaintiffs also originally brought claims regarding alleged "long wait times to vote." (*See* Am. Compl. ¶¶ 105-07, 116, 119, 121, 124-26.) However, the Court has since dismissed Plaintiffs' long-line claims. (*See* Order, ECF No. 111.)

[5] The subpoenas also demanded communications regarding original demanded communications regarding Senate Bills 702, 964, and 1150; "[v]oter wait times and/or lines at the polls;" and "re-enfranchisement of non-violent felons." (*See* Reeves Subpoena at 11; *see also* Vogel Decl. ¶ 4.) As Plaintiffs' claims regarding voter wait times and re-enfranchisement have been dismissed, *see supra* note 4, the Court will quash the subpoenas to the extent they demand communications regarding Senate Bills 702, 964, and 1150; voter wait time and/or lines at the polls; and, re-enfranchisement of non-violent felons.

## II. DISCUSSION

### A. Legislative Immunity and Legislative Privilege

The Court begins by noting that "[l]egislative privilege clearly falls within the category of accepted evidentiary privileges." *EEOC v. Washington Suburban Sanitary Comm'n*, ("*WSSC II*") 631 F.3d 174, 180 (4th Cir. 2011) (citing *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996)). Legislative privilege derives from the doctrine of legislative immunity, and the twin doctrines are the two sides of the same coin. As the Fourth Circuit has stated, "[l]egislative privilege against compulsory evidentiary process exists to safeguard . . . legislative immunity and to further encourage the republican values it promotes." *Id.* at 181. As this Court has previously held, "[legislative] privilege is rooted in the absolute immunity granted to federal legislators . . . and exists to safeguard that immunity." *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 661 (E.D. Va. 2014) (quoting *WSSC II*, 631 F.3d at 180). Moreover, as the United States District Court for the District of Maryland has noted, "[l]egislative immunity not only protects state legislators from civil liability, it also functions as an *evidentiary and testimonial privilege*." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) (Smalkin, J.) (emphasis added). "The doctrine of legislative immunity (both in its substantive and testimonial aspects) itself embodies fundamental public policy. It insulates legislators from liability for their official acts and *shields them from judicial scrutiny into their deliberative process*. The doctrine is a bulwark in upholding the separation of powers." *Id.* at 304 (Murnaghan, J., & Motz, J.) (emphasis added). In short, the doctrine of legislative privilege—which extends equally to testimony and other evidence—exists to safeguard legislative immunity. *See Simpson v. City of Hampton*, 166 F.R.D. 16, *19 (E.D. Va. 1996) ("Pursuant to the Fourth Circuit['s holding in *Burtnick*,] the Court DENIES Plaintiff's Motion to Compel Discovery of the council members' *personal notes and files, as they are protected by testimonial legislative privilege*." (citing *Burtnick*, 76 F.3d 611) (emphasis added)).

4

## B. Legislative Immunity Applies to State Legislators

Federal legislators enjoy legislative immunity and legislative privilege that derives from the "Speech or Debate Clause" of the Federal Constitution.[6] *WSSC II*, 631 F.3d at 180 ("The Speech or Debate Clause provides [legislative] immunity to federal legislators."); *see also Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967) ("It is the purpose and office of the doctrine of legislative immunity, having its roots as it does in the Speech or Debate Clause of the Constitution, that legislators engaged 'in the sphere of legitimate legislative activity,' should be protected not only from the consequences of litigation's results but also from the burden of defending themselves."). State legislators also enjoy legislative immunity and legislative privilege; however, insofar as state legislators may employ these protections in federal court, the protections are grounded in federal common law.[7] *See Tenney v. Brandhove*, 341 U.S. 367 (1951) (recognizing legislative immunity for state legislators sued for violating the Civil Rights Act of 1871); *see also WSSC II*, 631 F.3d at 180-81 ("In recognition of the immunity's historical pedigree and practical importance the Supreme Court has extended it to a wide range of legislative actors." (citing *Tenney*, 341 U.S. at 372-76, for

---

[6] "[The Senators and Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1.

[7] The Nonparty Legislators argue that they have a separate legislative privilege stemming from the Virginia Constitution's Speech or Debate Clause. (*See* Legs.' Mem. Supp. at 7-8 (quoting Va. Const. art IV, § 9 ("Members of the General Assembly shall, an all cases, except treason, felony, or breach of the peace, be privileged from arrest during the sessions of their respective houses; and for any speech or debate in either house shall not be questioned in any other place.")).) The Court, however, does not separately analyze the claim of privilege under the Virginia Constitution as the analysis is substantially similar to that under the federal common law, wherein privilege for state legislators ultimately relates back to the Speech or Debate clause of the Federal Constitution. *See Greenburg v. Collier*, 482 F. Supp. 200, 202 (E.D. Va. 1979) ("The [Virginia] and federal immunities are very similar in their wording. Further, they appear to be based upon the same historical and public policy considerations."). Furthermore, because the Court—using Supreme Court and Fourth Circuit precedent interpreting both the federal common law and the Federal Speech or Debate Clause—ultimately finds that internal legislative communications are privileged, but that third-party communications are not, the Court does not undertake a separate analysis under the Virginia Speech or Debate Clause, which is substantially coterminous with its federal analog. *See id.* at 202-04 (discussing the Virginia Speech or Debate Clause and analyzing a privilege claim thereunder using Supreme Court precedent based on the Federal Speech or Debate Clause, ultimately holding that state legislators enjoyed legislative privilege and did not need to produce internal legislative communications that related to the motive underlying the passage of a Virginia state law) (citing *United States v. Brewster*, 408 U.S. 501 (1972)).

the proposition that the immunity has been extended to state legislators)); *Page*, 15 F. Supp. 3d at 661 ("In *Tenney v. Brandhove*, the Supreme Court of the United States found that the Speech or Debate Clause was part of a broader common law 'tradition [of legislative privilege] . . . well grounded in history' and extended the benefit of that tradition (though not the Speech or Debate Clause itself) to state legislators." (quoting *Tenney*, 341 U.S. at 372-76)). Moreover, state legislators enjoy the benefits of legislative immunity and legislative privilege regardless of whether they are named as parties to the underlying lawsuit. *Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) ("[W]e reject plaintiff's argument that he can circumvent the doctrine of legislative immunity by declining to name as defendants individual legislators. The purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves.").

The Supreme Court and the Fourth Circuit have addressed the doctrine of legislative immunity in a number of cases. In what seems to be the first Supreme Court case to explicitly recognize federal common law legislative immunity for state legislators, *Tenney v. Brandhove*, the Supreme Court explicitly ruled "that it was not consonant with our scheme of government for a court to inquire into the motives of legislators." *Tenney*, 341 U.S. at 377. In that case, the Supreme Court found that state legislators enjoyed immunity for conduct that was alleged to have violated a civil rights statute passed in 1871 and aimed at enforcing the Fourteenth Amendment to the Federal Constitution. *Id.* at 378; *see also Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) ("Recognizing this venerable tradition [of legislative immunity], we have held that state and regional legislators are entitled to *absolute immunity from liability* under § 1983 for their legislative activities." (emphasis added) (citing *Tenney*, 341 U.S. 367)); *United States v. Gillock*, 445 U.S. 360, 371-72 (1980) (discussing *Tenney*). In so doing, the Supreme Court explained the dangers of curtailing legislative immunity by explicitly stating that "[i]n times of political passion, dishonest or vindictive motives

are readily attributed to legislative conduct and as readily believed . . . [and that c]ourts are not the place for such controversies." *Tenney*, 341 U.S. at 378.

Later, in *Supreme Court of Va. v. Consumers Union of the U.S., Inc.*, the United States Supreme Court reiterated its holding that state legislators enjoy legislative immunity by stating "[i]n *Tenney* we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislatures. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief." *Supreme Court of Va.*, 446 U.S. 719, 732 (1980) (recognizing a federal common law legislative immunity and legislative privilege for state legislators). The Supreme Court also reaffirmed that legislative privilege is an essential derivative of legislative immunity, stating that in order "[t]o preserve legislative independence, we have concluded that 'legislators engaged "in the sphere of legitimate legislative activity," should be protected not only from the consequences of litigation's results but also from the burden of defending themselves.'" *Id.* at 732 (quoting *Dombrowski*, 387 U.S. at 87 (quoting *Tenney*, 341 U.S. at 376)). The Supreme Court went so far as to declare that state legislators enjoy absolute immunity, at least in § 1983 civil claims, by noting that

> there is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committees, or members for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, *the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity*.

*Id.* at 733-34 (emphasis added). The parties have not proffered, and this Court is not aware of, any subsequent Supreme Court decision that has overturned the holdings in either *Tenney* or *Supreme Court of Virginia*.[8]

---

[8] As discussed below, the Court notes that in *United States v. Gillock*, 445 U.S. 360 (1980), the United States Supreme Court recognized an exception to the doctrine of legislative immunity insofar as a state legislator did not enjoy absolute legislative immunity or legislative privilege in the case of a criminal prosecution for violation of federal law. As discussed below, this Court is not convinced that the Supreme Court intended *Gillock* to create a broad carve-out to the

Likewise, the Fourth Circuit has consistently held that state legislators enjoy legislative immunity and legislative privilege. Indeed, the Fourth Circuit has explicitly stated that legislative immunity "allows [legislators] to focus on their public duties by removing the costs and distractions attending lawsuits . . . [and legislative immunity] shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *WSSC II*, 631 F.3d at 181. Furthermore, "[l]egislative privilege against compulsory evidentiary process exists to safeguard . . . legislative immunity and to further encourage the republican values it promotes." *Id.* Applying this safeguard in *Washington Suburban Sanitary Commission*, the Fourth Circuit specifically recognized that "if the [government agency] or private plaintiffs sought to compel information from legislative actors about their legislative activities, they would not need to comply." *Id.* (citing *Burtnick*, 76 F.3d at 613) (ADEA case brought by the EEOC).

In the earlier case of *Burtnick v. McLean*, the Fourth Circuit also recognized that legislative immunity applied to individual state and local legislators sued under § 1983. The Fourth Circuit specifically held that "McLean, in her individual capacity as a legislator, is still immune from suit under the legislative immunity doctrine." *Burtnick*, 76 F.3d at 613 (citations omitted). The Fourth Circuit further reinforced this holding by noting that "local legislators are *entitled to absolute immunity* when acting in a legislative capacity." *Id.* (citation omitted) (emphasis added). Noting that "[t]he existence of testimonial privilege is the prevailing law in [the Fourth Circuit]" and that "this privilege [is] still viable," the Fourth Circuit held that the plaintiff's "attempt to establish a prima facie case [of discrimination] will have to be accomplished without the testimony of members of the Board as to their motives." *Id.* (citations omitted).

---

doctrine of legislative immunity for state legislators. Indeed, in *Supreme Court of Virginia*, immediately prior to noting that Virginia legislators "could successfully have sought dismissal [of a § 1983 case] on the grounds of *absolute legislative immunity*," *Supreme Court of Va.*, 446 U.S. at 734 (emphasis added), the United States Supreme Court recognized its holding in *Gillock* as only curtailing immunity for state legislators in the criminal context, *id.* at 733 ("the separation-of-powers doctrine justifies a broader privilege for Congressmen than for state legislators in criminal actions") (citing *Gillock*, 445 U.S. 360).

Moreover, in rejecting an argument that legislative immunity for state legislators is not absolute, the Fourth Circuit has held that "where . . . the suit would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force." *Schlitz*, 854 F.2d at 45 (citing *Dombrowski*, 387 U.S. at 85). In reaching that holding, the Fourth Circuit specifically stated that—in the course of ADEA litigation—an inquiry into "whether [the Virginia General] Assembly's purported motives for declining to reelect [a state judge] are a pretext for age discrimination" was an inquiry that ran "squarely afoul of the doctrine of legislative immunity." *Id.* at 45.

Likewise, in *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462 (4th Cir. 2012), the Fourth Circuit held that a district court did not err "in refusing to inquire into the allegedly unconstitutional motive behind the County's budget." *Kensington*, 684 F.3d at 467. In reaching this holding, the Fourth Circuit expounded on Supreme Court precedent and "warned that it was a 'hazardous matter' to inquire into legislative motives because '[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.'" *Kensington*, 684 F.3d at 468 (quoting *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968)).

In summation, the Fourth Circuit and Supreme Court have consistently held that state legislators enjoy both legislative immunity and its supporting doctrine, legislative privilege.

### C. Recognized Exceptions to Legislative Immunity for State Legislators

The United States Supreme Court has recognized a specific exception to the doctrines of legislative immunity and legislative privilege. In *United States v. Gillock*, the Supreme Court held that a state legislator could not invoke legislative privilege in a case wherein the state legislator was being prosecuted for violation of a federal criminal statute. *Gillock*, 445 U.S. at 361-62, 374. Specifically, the Supreme Court concluded

9

> that although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields. . . . Here, we believe that recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process.

*Id.* at 373. In reaching its decision, the Supreme Court distinguished its holding in *Tenney*, explaining that legislators enjoy immunity in civil cases, but that legislators cannot utilize the "judicially fashioned doctrine of official immunity . . . to immunize criminal conduct proscribed by an Act of Congress." *Id.* at 372 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974) (quoting *Gravel v. United States*, 408 U.S. 606, 627 (1972))). Moreover, the Supreme Court further seemed to limit its holding in *Gillock* to criminal matters, stating explicitly that "*Tenney* and subsequent cases on official immunity have drawn the line at civil actions." *Id.* at 373.

Citing the Supreme Court's holding in *Gillock*, some in-circuit district courts have found a limited exception to legislative privilege in cases involving legislative redistricting. *See Bethune – Hill v. Va. State Bd. of Elections*, No. 3:14CV852, 2015 WL 3404869, *9 (E.D. Va. May 26, 2015); *Page*, 15 F. Supp. 3d at 657, 665; *Schaefer*, 144 F.R.D. at 292, 304. These courts have all noted, essentially, that "[l]egislative redistricting is a *sui generis* process." *Schaefer*, 144 F.R.D. at 304; *see Bethune-Hill*, 2015 WL 3404869, at *9; *Page*, 15 F. Supp. 3d at 665 (quoting *Schaefer*, 144 F.R.D. at 304). In ordering limited production in *Bethune-Hill*, this Court explained the unique nature of redistricting cases by noting that they are "extraordinary" and that "the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of 'legislative self-entrenchment." *Bethune-Hill*, 2015 WL 3404869, at *9. Likewise, in *Page*, this Court found that "a consultant who was employed by a partisan political committee" could not claim legislative privilege. *Page*, 15 F. Supp. 3d at 662. The Court determined, however, that even were the partisan consultant eligible to assert legislative privilege, the privilege would

yield because of the *sui generis* nature of the redistricting claims brought in that case. *See id.* at 665 (quoting *Schaefer*, 144 F.R.D at 304). This court specifically held that the "significant difference [of redistricting cases] prompted the [*Schaefer*] court to require a flexible approach to resolving discovery objections based on legislative privilege." *Id.* Ultimately, based on the unique nature of redistricting cases, the *Bethune-Hill, Page,* and *Schaefer* courts held that a flexible, qualified privilege analysis was required with regard to legislative privilege.

The Court is unconvinced, however, that the same flexible approach is appropriate in the instant case. First, this Court's holding in *Page* was ultimately based on the unremarkable proposition that a consultant hired by a partisan political caucus and "paid as an independent contractor" by a partisan political campaign committee was ineligible to claim legislative privilege. *See Page*, 15 F. Supp. 3d at 660, 664. Second, this Court reached its holding in *Bethune-Hill*, based on the "extraordinary" nature of legislative redistricting cases. *Bethune-Hill*, 2015 WL 3404869, at *9. Moreover, even accounting for that "extraordinary" nature, this Court still did not order a general production of all legislative communication, but rather still limited the scope of production, in part due to "the importance of the legislative privilege." *Id.* at *15-*17. Finally, while the *Schaefer* court also ordered the limited production of communications due to the unique nature of legislative redistricting cases, one member of the three-judge panel stated that "[i]t is evident that any action (or inaction) taken by the Maryland Legislature after the Governor's plan was introduced on January 8, 1992 falls within the scope of legislative immunity." *Schaefer*, 144 F.R.D. at 299. Likewise, the other two judges on the panel stated that they

> would flatly prohibit [the legislators'] depositions from being taken as to any action which they took after the redistricting legislation reached the floor of the General Assembly as President of the Senate and Speaker of the House, respectively (unless they ultimately are listed by the Defendants as trial witnesses) because of the direct intrusion of such discovery into the legislative process.

*Id.* at 305.

In summation, this Court is not persuaded by Plaintiffs' argument that these in-circuit district court cases compel the broad production of documents sought in the instant case, especially in light of binding Fourth Circuit precedent that warns of the "hazardous" nature of inquiring into legislative motive, *Kensington*, 684 F.3d at 468 (quoting *O'brien*, 391 U.S. at 383-84), and that continues to hold that "[t]he existence of testimonial privilege is the prevailing law in [the Fourth Circuit]," *Burtnick*, 76 F.3d at 613 (citations omitted).[9]

## D. Legislative Privilege and Production in the Instant Case

Ultimately, adhering to the Fourth Circuit's ruling that legislative privilege is "still viable" in this Circuit, *see Burtnick*, 76 F.3d at 613 (citations omitted), the Court will briefly discuss the extent to which the Nonparty Legislators and the Legislative Employees may claim that privilege.

First, the Court concludes that the Legislative Employees are in substantially the same position as the Nonparty Legislators themselves in terms of eligibility to claim legislative privilege. *See, e.g., Gravel v. United States* 408 U.S. 606, 616-17 (1972) (discussing legislative privilege and noting that a legislator "and his aide are to be 'treated as one' and that the refusal to recognize legislative privilege for aides would frustrate the purpose of legislative privilege for the legislator); *see, e.g., also, N.C. NAACP*, No. 1:13CV658, ECF No. 207, Slip Op. at 14 (concluding that

---

[9] The Court notes that, even if it were to adopt a "qualified analysis" as used in the redistricting cases, it would still ultimately reach the same holding it reaches without adopting the qualified analysis. The Court would reach the same conclusion in large part for the reasons articulated by Judge Peake in *North Carolina State Conf. of the NAACP v. McCrory*, No. 1:13CV658, ECF No. 207, Slip Op. at 5-15 (M.D.N.C. Nov. 20, 2014). In *N.C. NAACP*, Judge Peake addressed subpoenas for legislative communications and a motion to quash in a case involving a challenge to a state voter identification law. *See id.* at 1-5. In analyzing the discovery disputes, Judge Peaked essentially adopted the same qualified privilege analysis that the *Bethune-Hill, Page,* and *Schaefer* courts utilized. *See id.* at 5. Judge Peake characterized this analysis as "a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process." *Id.* After performing the qualified analysis, Judge Peak ultimately concluded "that communications between legislators and third parties are not ordinarily within the scope of legislative privilege, [and] that any such privilege has been waived as to those communications." *Id.* at 14. However, Judge Peake also concluded that legislative privilege did apply "to purely internal legislative communications (i.e., communications solely among legislators and communications between legislators and legislative staff)." *Id.* Ultimately, therefore, this Court notes that it would reach the same result either under the qualified privilege analysis stemming from the redistricting cases or under the absolute privilege analysis, "the existence [of which] is the prevailing law in [the Fourth Circuit]." *Burtnick*, 76 F.3d at 613 (citations omitted).

communications between legislators and legislative staff are privileged under the doctrine of legislative privilege).

Second, the Court concludes that the Nonparty Legislators were acting in a legislative capacity by passing the Senate Bills in question and debating the topic of voter identification. That is, the Nonparty Legislators were engaged in "the adop[tion of] prospective, legislative-type rules . . . that establish[] . . . a general policy affecting the larger population." *WSSC II*, 631 F.3d at 184 (quoting *Alexander v. Holden*, 66 F.3d 62, 66-67 (4th Cir. 1995) (citation omitted)) (internal quotation marks omitted) (alterations in original).

Third, the Court concludes that any communications the Nonparty Legislators or the Legislative Employees made with Third Parties—such as state agencies, constituents, lobbyists, and other third parties—are not protected by legislative privilege. The Nonparty Legislators and the Legislative Employees may not claim legislative privilege with regard to communications made to or from third parties because the involvement of third parties inherently destroyed any privilege that may or may not have existed. *See Alexander*, 66 F.3d at 68 n.4 (noting that it is possible to waive the legislative privilege (quoting *Schaefer*, 144 F.R.D at 298)); *N.C. NAACP*, No. 1:13CV658, ECF No. 207, Slip Op. at 9 ("[Legislative] privilege was waived when the communications were shared with non-legislative outside parties." (citing *Alexander*, 66 F.3d at 68 n.4)).

Fourth, noting that the Senate Bills in question were introduced in early 2013 and maintaining consistency with the scope of discovery previously ordered by this Court, (*see* Order, ECF No. 105), the Court will limit the time period for production of any communications to 2012 through the date on which the Complaint was filed, June 11, 2015.

Fifth, given the limited scope of time, the limitations imposed by the application of privilege, the fact that the communication records are apparently searchable electronically, and the fact that "[d]iscovery . . . is broad in scope and freely permitted," *Carefirst of Md., Inc. v. Carefirst*

13

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003), this Court concludes that the productions ordered herein are not unduly broad or burdensome, *cf. N.C. NAACP*, No. 1:13CV658, ECF No. 207, Slip Op. at 10-11.

### III. CONCLUSION

Having considered the Parties' motions, briefs, and controlling Fourth Circuit and Supreme Court law, and for the reasons discussed above, the Court holds (1) that legislative privilege precludes the production of communications between and among the Nonparty Legislators and the Legislative Employees; (2) that legislative privilege does not preclude the production of communications between and among the Nonparty Legislators and Third Parties, such as state agencies, constituents, and lobbyists, among others; (3) that legislative privilege does not preclude the production of communications between and among the Legislative Employees and Third Parties; and, (4) given the limitations noted above and the fact that discovery is broad in scope and freely permitted, that the production of communications with Third Parties is not unduly broad or burdensome. Accordingly, the Court will grant the Motion to Quash (ECF No. 71) to the extent set forth herein and otherwise will deny the Motion to Quash.

An appropriate Order shall issue.

Let the Clerk file this Memorandum Order electronically and notify all counsel accordingly.

/s/
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: <u>December 23, 2015</u>