IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| BARBARA H. LEE, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,<br><br>        Defendants. | Civil Action No. 3:15-CV-357 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

Plaintiffs the Democratic Party of Virginia, Barbara H. Lee, and Gonzalo Aida Brescia (collectively, "Plaintiffs") respectfully request that this Court reconsider its dismissal of Counts IV and V of Plaintiffs' Amended Complaint (Plaintiffs' intentional discrimination claims) and reinstate those claims. The Court should reconsider its dismissal of Plaintiffs' claims on three grounds. First, Plaintiffs did not have the opportunity to brief or argue the grounds upon which the Court dismissed the intentional discrimination claims.

Second, Plaintiffs respectfully submit that the Court's dismissal of Plaintiffs' intentional discrimination claims is clear legal error. It is well settled that when a plaintiff challenges the constitutionality of a law that harms him, that harm is fairly traceable to the government agent responsible for *enforcing* the law. Plaintiffs have alleged that they are harmed by the Virginia voter ID law, among other reasons, because its passage was motivated by the impermissible considerations of race and age, and that the Virginia State Board of Elections, its individual members, and the Department of Elections are responsible for enforcing the voter ID law. Therefore, any harm sustained by Plaintiffs as a result of the voter ID law is directly traceable to Defendants' enforcement of the law, and Plaintiffs have standing to raise their intentional discrimination claims.

Lastly, the Court's current ruling is manifestly unjust. Carried to its logical end, the Court's holding would require individuals to sue state legislatures and legislators rather than the officer or agency enforcing a law when a statute is passed in violation of the Fourteenth, Fifteenth, and Twenty-Sixth Amendments. This result, which runs contrary to decades of established practice and law, would effectively insulate from review laws passed intentionally to discriminate against racial minorities and young voters because state legislatures and legislators are generally shielded from suit under the Eleventh Amendment as well as general principles of

- 1 -

legislative immunity and privilege. This Court's holding would therefore leave these Plaintiffs and future plaintiffs without any recourse for alleged violations of the Fourteenth, Fifteenth and Twenty-Sixth Amendments.[1]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their Amended Complaint on August 14, 2015. The Amended Complaint alleges, in pertinent part, that the Commonwealth of Virginia intentionally discriminated against minorities and young voters when enacting Virginia's voter ID law.[2] Am. Compl. ¶¶ 117-126. In light of the unconstitutional motivations behind this law—race and age discrimination—the Amended Complaint seeks a declaration from the Court that the voter ID law is unconstitutional. Am. Compl. ¶ A (Prayer for Relief). Likewise, it asks the Court to enjoin the Virginia State Board of Elections ("SBE") and Department of Elections ("DOE") from enforcing the law. Am. Compl. ¶ B (Prayer for Relief).

On August 28, 2015, Defendants moved for dismissal of Plaintiffs' Amended Complaint. Defs.' Mot. to Dismiss, Dkt. No. 48. At that time, Defendants sought dismissal of Plaintiffs'

---

[1] Plaintiffs have alleged that Virginia's voter ID law intentionally discriminates against minorities, Am. Compl. ¶¶ 117-126, and that the law violates Section 2 of the Voting Rights Act ("VRA"). Because Section 2 claims can be proven both on intent as well as disparate impact/effects grounds, *N.C. State Conference of NAACP v. McCrory*, 997 F. Supp. 2d 322, 345 (M.D.N.C.), *aff'd in part, rev'd in part and remanded sub nom.*, *League of Women Voters of N. C. v. N.C.*, 769 F.3d 224 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015), Plaintiffs should be permitted to prove at trial that the voter ID law violates Section 2 not only because of its discriminatory effects but also because it was enacted with racially discriminatory intent. To the extent that the Court finds that Plaintiffs must expressly allege that the voter ID law violates Section 2 because it was passed with discriminatory intent, *but see Peters v. Jenney*, 327 F.3d 307, 322 (4th Cir. 2003) ("complaints need not 'plead law or match facts to every element of a legal theory'") (quoting *Krieger v. Fadley*, 211 F.3d 134, 137 (D.C. Cir. 2000)); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."), Plaintiffs respectfully request leave to amend the Amended Complaint in order to allege that legal theory expressly.

[2] Not only does Plaintiffs' Amended Complaint contain these allegations but, since the Amended Complaint was filed, Plaintiffs have also produced expert reports that provide detailed support for these allegations.

- 2 -

intentional race and age discrimination claims on the grounds that Plaintiffs had failed to allege sufficient facts to state these claims. Defs.' Mem. in Supp. 4-5, Dkt. No. 49 ("Defs.' Mem."). While Defendants also challenged Plaintiffs' standing, they made no standing allegations specific to Plaintiffs' intentional discrimination claims; rather, almost all of Defendants' standing argument was based on the assertion that Plaintiffs had failed to establish that they were injured by the voter ID law. *See id.* at 10-17.

Plaintiffs filed their opposition on September 15, 2015, *see* Pls.' Opp., Dkt. No. 60, and Defendants replied on September 23, 2015. Defs.' Reply, Dkt. No. 66. Defendants' reply did not include any additional arguments regarding Plaintiffs' standing on their intent claims. On September 15, 2015, the Public Interest Legal Foundation ("PILF") filed an Amicus Brief in support of Defendants' motion. PILF Br., Dkt. No. 61-1. PILF's brief did not raise any standing arguments with respect to Plaintiffs' intentional discrimination claims.[3] On October 23, 2015, the Parties appeared in Court for an oral hearing on Defendants' motion. At no time during the hearing were Plaintiffs or Defendants asked whether Plaintiffs' intentional discrimination claims were fairly traceable to Defendants.

On December 18, 2015, the Court issued its Order and Memorandum Opinion on Defendants' Motion to Dismiss. Dkt. Nos. 110-111. Among other things, the Court dismissed

---

[3] While PILF's argument regarding Plaintiffs' long-lines claim under the VRA asserted that the practice or procedure that Plaintiffs were challenging was a result of the Virginia General Assembly's actions, not the named Defendants' actions, PILF made this argument in the context of a 12(b)(6)—not a 12(b)(1)—challenge, and the argument was limited to one sentence of PILF's twenty-page brief. PILF Br. 11-12. Accordingly, Plaintiffs responded to this argument proportionately, explaining in a footnote that their challenge was to the Commonwealth's actions as a whole (which include the actions of the General Assembly) and, therefore, the proper Defendants were SBE and DOE since they administered the elections. Pls.' Response to PILF's Br. 9 n.8, Dkt. No. 76. PILF's argument did not discuss Plaintiffs' intent claims in this case, and the only mention of standing in PILF's brief was a statement in a footnote in which PILF endorsed the arguments raised by Defendants. PILF Br. 15 n.7.

- 3 -

Plaintiffs' intentional discrimination claims on standing grounds, explaining that the claims were not "traceable" to the named Defendants because Plaintiffs' allegations focused on the "actions of the General Assembly, whose members [were] not a party to [the] case." Mem. Op. 20. Plaintiffs now file the instant motion seeking reconsideration of the Court's dismissal of these claims and reinstatement of Counts IV and V of Plaintiffs' Amended Complaint.

### III.   ARGUMENT

#### A.   Legal Standard for Granting Reconsideration

In the Fourth Circuit, a motion for reconsideration is treated like a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). *Guerrero v. Weeks*, No. 13-837, 2013 WL 6073886, at *1 (E.D. Va. Nov. 15, 2013) (citing *Lee–Thomas v. Prince George's Cnty. Pub. Sch.,* 666 F.3d 244, 247 n. 4 (4th Cir.2012)). Generally, a motion to alter or amend may be granted on the following grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Reconsideration is also appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Overall, the purpose of Rule 59(e) is to permit "a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995)). In the instant case, three of these grounds are present, warranting this Court's

reconsideration of its prior dismissal and the reinstatement of Plaintiffs' intentional discrimination claims.

### B. The Court Should Reconsider Its Dismissal of Plaintiffs' Intentional Discrimination Claims Because Plaintiffs Did Not Have the Opportunity to Brief this Issue for the Court

As explained in *Above the Belt*, *Inc.*, reconsideration of a court's prior order is appropriate where the court "made a decision outside the adversarial issues presented to the Court by the parties." 99 F.R.D. at 101. That is precisely the circumstance here. The Court dismissed Plaintiffs' claims based on an argument that was not raised by the parties in their briefing and that Plaintiffs never had an opportunity to rebut.

While Plaintiffs recognize that the Court has an independent obligation to assure itself of Plaintiffs' standing, basic principles of procedural fairness dictate that Plaintiffs should be granted notice of such allegations or concerns and then given an opportunity to address them. *See, e.g.*, *Ala. Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1269 (2015) (noting the district court's obligation to confirm its jurisdiction but explaining that "elementary principles of procedural fairness required that the District Court, rather than acting *sua sponte*, give the Conference an opportunity to provide evidence of member residence"); *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011) (addressing the issue of standing *sua sponte*, but first requesting additional briefing from the parties); *SunCom Mobile & Data, Inc. v. F.C.C.*, 87 F.3d 1386, 1388 n.3 (D.C. Cir. 1996) ("[T]he court, *ex mero motu*, requested supplemental briefs on standing to be submitted after oral argument."); *cf.* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed.) ("Although a formal hearing on the matter is not required, the district court should not dismiss the complaint on a Rule 12(b)(1) motion without giving the nonmoving party the opportunity to be heard"). Moreover, as

explained below, this principle is especially important here, where the Court's decision is clearly contrary to established law that Plaintiffs never had the opportunity to bring to the Court's attention. Accordingly, because Plaintiffs did not have the opportunity to be heard on this issue, the Court's dismissal of Plaintiffs' intentional discrimination claims is ripe for reconsideration, and the Court should grant Plaintiffs' request to reconsider its prior ruling.

### C. The Court's Dismissal of Plaintiffs' Intentional Discrimination Claims Constitutes Clear Legal Error

To have Article III standing at the pleading stage, plaintiffs must "(1) allege that they have suffered an injury in fact []; (2) the injury must be 'fairly traceable to the challenged conduct'; and (3) it must be likely that the injury will be redressed by a favorable decision." *N.C. Right to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 434 (4th Cir. 2008) (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)). Courts have explained that the latter two elements—causation and redressability—"will exist when a defendant has 'definite responsibilities relating to the application of' the challenged law." *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 828-32 (S.D. Tex. 2012) (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)), *rev'd and remanded sub. nom. on other grounds*, *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013). This is because "[u]nder United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant." *Am. Civil Liberties Union v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) (citing *Diamond v. Charles,* 476 U.S. 54, 64 (1986) ("The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III.")). This rule is grounded in the principle, explained by the Supreme Court, that "a suit against a state officer in his official capacity is, of course, a suit against the State." *Diamond*, 476 U.S. at 57

n.2. "Thus [when a plaintiff sues a state official in his official capacity] a controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as the source of injury." *Wilson v. Stocker*, 819 F.2d 943, 946-47 (10th Cir. 1987) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Indeed, this has been recognized for decades by numerous courts, including the Supreme Court, that have allowed cases with intentional discrimination claims centering on the actions of the legislature to proceed against the state officials designated to enforce the law, even where the legislature was not included in the suit. For example, in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), the Supreme Court reversed a district court's dismissal of plaintiffs' Fifteenth Amendment intentional discrimination claims, which plaintiffs had lodged against the local officials charged with enforcing the allegedly discriminatory act (a redefined map of the city), even though it was the state legislature that allegedly passed the act with the intent to disenfranchise African-American voters. *Id.* at 340-41, 348. While the Supreme Court did not consider the precise standing question at issue here, it is notable that the Court did not *ever* address standing in its opinion, let alone suggest that the plaintiffs' decision to name local officials (not the legislature) undermined plaintiffs' standing. In fact, the Court reversed the lower court's dismissal of the claim. *Id.* at 348.

Similarly, in *Page v. Va. State Board of Elections*, No. 13-678, 2015 WL 3604029 (E.D. Va. June 5, 2015), a three-judge panel in this circuit allowed allegations of a racial gerrymander (which necessarily focused on the intent and motivations of the Virginia General Assembly) to proceed to trial against the SBE, its members, and the Virginia Attorney General, despite the fact that neither the Virginia General Assembly nor its members were named Defendants.[4] Further, in

---

[4] Certain individual Congressional Representatives did seek to intervene in the case and the court

*League of Women Voters of N.C. v. N.C.*, 769 F.3d 224 (4th Cir. 2014), a voting rights case involving intentional discrimination claims under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments, the Fourth Circuit preliminarily enjoined the state officials sued in that case from enforcing part of an allegedly discriminatory act. *Id.* at 248-49. While the Fourth Circuit did not address the question of plaintiffs' standing, neither it nor the district court dismissed plaintiffs' intentional discrimination claims on standing grounds even though the primary factual allegations regarding intentionally discriminatory acts focused on the actions of the North Carolina General Assembly and its members, none of which were included as defendants in the suit. *See generally League of Women Voters of N.C.*, 769 F.3d 224; *McCror*y, 997 F. Supp. 2d at 355-62 (M.D.N.C. 2014) (considering plaintiffs' Fourteenth and Fifteenth Amendment intent claims on the merits rather than dismissing them for lack of standing). In fact, the district court explicitly found that the intervenor-plaintiffs, who had asserted claims under the Twenty-Sixth Amendment, had standing to pursue those claims. *Id.* at 363; *see also, Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1353 (4th Cir. 1989) (involving questions regarding the discriminatory intent of the legislature where the general assembly was not sued); *Mallory v. Eyrich*, 839 F.2d 275 (6th Cir. 1988) (intent claims at issue and legislature not joined in case); *Bethune-Hill v. Va. State Bd. of Elections*, No. 14-852, 2015 WL 6440332 (E.D. Va. Oct. 22, 2015) (allowing claims of racial gerrymander to proceed to trial against state officials charged with enforcing allegedly unconstitutional act); *Veasey v. Perry*, 29 F. Supp. 3d 896, 923 (S.D. Tex. 2014) (involving Fifteenth Amendment intentional discrimination claims and questions of legislative intent where the state legislature was not named as a defendant and the court found that the governor and

---

allowed their intervention. *Page v. Va. State Bd. of Elections*, No. 13-678, Dkt. No. 26. (E.D. Va. Dec. 2, 2013). However, the Supreme Court is considering the question of whether these Representatives have standing to sue. *See Wittman v. Personhuballah*, 136 S. Ct. 25 (2015).

another state official were proper defendants because they had some connection to the enforcement of the challenged voter ID law); *Anderson v. Mallamad*, No. 94-1447, 1997 WL 35024766, at *2-4 (S.D. Ind. Mar. 28, 1997) (finding state General Assembly was not a necessary party in a case involving intentional discrimination claims and holding that plaintiffs had successfully demonstrated an active case or controversy existed with the election board charged with administering the laws in question).

The instant case is no different from this long line of cases, which plainly support a finding that Plaintiffs have sued the correct parties and have standing to proceed against the named Defendants. The SBE, its individual members, and the DOE are charged with the enforcement of the Virginia voter ID law, which is the source of Plaintiffs' injuries in this case. Va. Code § 24.2-103 (SBE through the DOE has authority to administer elections and election law in the Commonwealth); Am. Compl. ¶¶ 12, 14 (alleging same); *see also* Mem. Op. at 20 (noting that Plaintiffs have demonstrated sufficient harm to challenge the voter ID law). Plaintiffs have alleged that they are injured by the voter ID law—not only because of its discriminatory effects on minorities and young voters, but also because the law was *intended* to have such effects—which in and of itself makes the voter ID law unconstitutional. *See* Am. Compl. ¶¶ 3, 5, 117-126. Because SBE, its individual members, and DOE enforce the voter ID law, not only are they the proper defendants in this case but, moreover, Plaintiffs' injuries are fairly traceable to them because they "represent[] the state whose statute is being challenged as the source of [Plaintiffs'] injuries." *See Wilson*, 819 F.2d at 946-47. Likewise, it is Defendants' actual enforcement of the statute which ultimately causes the harm Plaintiffs experience as a

result of the discriminatory intent behind the law and its resultant discriminatory effects.[5] Thus, the Court's dismissal of Plaintiffs' intentional discrimination claims is plainly in error and the Court should reconsider its ruling and reinstate Counts IV and V of Plaintiffs' Amended Complaint.

        E.        **The Court's Dismissal of Plaintiffs' Intentional Discrimination Claims is Manifestly Unjust**

Where "there exist[s] a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy" a court's decision is shown to be manifestly unjust. *In re Yankah*, 514 B.R. 159, 166 (E.D. Va. 2014) (quoting *Westerfield v. United States*, 366 Fed. App'x 614, 619 (6th Cir. 2010)); *see also EEOC v. Lockheed Martin Corp.*, 116 F.3d 110 (4th Cir. 1997). In the instant case, taken to its logical end, the Court's dismissal of Plaintiffs' intentional discrimination claims is manifestly unjust because it undermines the protections of the Fourteenth, Fifteenth, and Twenty-Sixth Amendments by insulating laws promulgated in violation of these amendments from suit.

---

[5] As a practical matter, it is because the voter ID law is enforced that Plaintiffs experience harm. This is why enjoining SBE and DOE's enforcement of the law fully redresses Plaintiffs' injuries. *See LeBlanc*, 627 F.3d at 123 ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." (citing *Larson v. Valente,* 456 U.S. 228, 243 n.15 (1982)). Moreover, this is precisely why SBE and DOE were the proper parties for Plaintiffs to sue, as they are the only arms of the Commonwealth charged with the law's enforcement.

The Court essentially recognized this fact in its earlier decision to deny Senator Obenshain, the primary sponsor of the voter ID law, intervention in this case. *See* 9/4/2015 Mem. Op. 8, Dkt. No. 57. Specifically, the Court found that despite his integral role in the passage of the voter ID law, Senator Obenshain had no right to intervene (effectively indicating he was not a necessary party to the suit) because SBE and DOE, as the entities charged with enforcing Virginia election laws, would have the same goals as Senator Obenshain in this litigation: advocating for the validity of the voter ID law. *Id.*

The Supreme Court has explained that "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). "[U]njustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 626 (1969). Together, the Fourteenth, Fifteenth, and Twenty-Sixth Amendments provide a broad constitutional guarantee that individuals may remain free from restriction and discrimination on account of race or age when exercising the franchise. *See Lane v. Wilson*, 307 U.S. 268, 275 (1939) ("The [Fifteenth] Amendment nullifies sophisticated as well as simpleminded modes of discrimination. It hits onerous procedural requirements which effectively handicap exercise of the franchise by the colored race although the abstract right to vote may remain unrestricted as to race."); *Colo. Project-Common Cause v. Anderson*, 178 Colo. 1, 8 (1972) (holding based on "[h]istory and reason" that the Twenty-Sixth Amendment's "prohibition against denying the right to vote to anyone eighteen years or older by reason of age applied to the entire process involving the exercise of ballots and its concomitants"). To enforce these rights, citizens have the ability to challenge laws which deny or abridge their right to vote on account of their age and race. *See Lane*, 307 U.S. at 273-74 (recognizing an action at law under the Fifteenth Amendment); *Walgren v. Howes*, 482 F.2d 95 (1st Cir. 1973) (recognizing an action under the Twenty-Sixth Amendment).

The Court's dismissal of Plaintiffs' intentional discrimination claims leaves Plaintiffs without realistic recourse and, if this Court's decision were to be followed by other courts, the constitutional protections envisioned and endorsed by these amendments would not only be hampered but, in many cases, wholly denied. The Court's order effectively forces the Plaintiffs

in this suit (as well as plaintiffs in future litigations) to sue the state legislature and/or members thereof rather than the officials responsible for enforcing a law when raising claims that a law is unconstitutional because it was intentionally passed to discriminate on the basis of race or age. But state legislatures and legislators are often protected from suit under the Eleventh Amendment, principles of legislative privilege, and, in some cases, legislative immunity. *See, e.g.*, *Consumers Union v. Supreme Court of Va.*, 446 U.S. 719, 732-34 (1980) (holding that the Virginia Supreme Court's chief justice was protected by absolute legislative immunity when sued in his official capacity for acts taken in a legislative capacity just like the Virginia State Legislature would be). *Compare Hall v. La.*, No. 12-00657, 2015 WL 1475062, at *4 (M.D. La. Mar. 31, 2015) (finding that the Secretary of State is a proper party for suit in a case involving claims that an apportionment system for city judges was discriminatory), *with Hall v. La.*, 974 F. Supp. 2d 944, 954-55 (M.D. La. 2013) (dismissing the legislature as a defendant because plaintiffs' suit against it was barred under the Eleventh Amendment; the legislature had no enforcement power; and, in part, because of the legislature had absolute legislative immunity). *See generally Ex parte Young*, 209 U.S. 123, 157 (1908) (carving out an exception to Eleventh Amendment immunity by permitting suits against state officials in their official capacity in order to enjoin *enforcement* of an unconstitutional state statute).

In short, the Court's decision would make it extraordinarily difficult for these Plaintiffs and future plaintiffs to challenge laws on Fourteenth, Fifteenth, and Twenty-Sixth Amendment grounds.[6] As such, the Court's dismissal of Plaintiffs' intentional discrimination claims is manifestly unjust and should be reconsidered.

---

[6] Plaintiffs in this suit have no reason to believe that the legislature or individual legislators would waive their potential immunities or privileges such that the Plaintiffs could name them as defendants in this action, in large part because the relevant individual legislators have already

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court reconsider its dismissal of Counts IV and V of Plaintiffs' Amended Complaint and, upon reconsideration, that the Court reinstate Plaintiffs' claims.

DATED: January 11, 2016

Respectfully submitted,

By: */s/ Amanda R. Callais*
    Marc Erik Elias (admitted *pro hac vice*)
    Bruce V. Spiva (admitted *pro hac vice*)
    Elisabeth C. Frost (admitted *pro hac vice*)
    Aria Branch (VSB # 83682)
    Amanda R. Callais (VSB # 85891)
    Ceridwen Cherry (admitted *pro hac vice*)
    **PERKINS COIE LLP**
    700 Thirteenth Street, N.W., Suite 600
    Washington, D.C. 20005-3960
    Telephone: 202.434.1627
    Facsimile: 202.654.9106
    Email: MElias@perkinscoie.com
    Email: BSpiva@perkinscoie.com
    Email: EFrost@perkinscoie.com
    Email: ABranch@perkinscoie.com
    Email: ACallais@perkinscoie.com
    Email: CCherry@perkinscoie.com

    Joshua L. Kaul (admitted *pro hac vice*)
    **PERKINS COIE LLP**
    1 East Main Street, Suite 201
    Madison, WI 53703-5118
    Telephone: 608.663.7460
    Facsimile: 608.283.1007
    Email: JKaul@perkinscoie.com

    *Attorneys for Plaintiffs*

---

asserted these defenses in response to discovery requests and subpoenas. *See* Nonparty Legislators Mot. and Mem. to Quash, Dkt. Nos. 71 & 72.

Case 3:15-cv-00357-HEH-RCY   Document 124   Filed 01/11/16   Page 15 of 15 PageID# 1341

## CERTIFICATE OF SERVICE

On January 11, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Dana J. Finberg
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel: 415.757.5500
Fax: 415.757.5501
dana.finberg@arentfox.com

Mark F. (Thor) Hearne, II
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel: 314.296.4000
Fax: thornet@ix.netcom.com

Stephen G. Larson
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel: 213.629.7400
Fax: 213.629.7401
stephen.larson@arentfox.com

*Attorneys for Defendants*

By */s/ Amanda R. Callais*
Amanda R. Callais (VSB #85891)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone:  (202) 654-6338
Fax:  (202) 654-9106
ABranch@perkinscoie.com

*Attorney for Plaintiffs*