IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| BARBARA LEE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:15CV357 HEH |
| | ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**THE BOARD AND DEPARTMENT'S RESPONSE TO
PLAINTIFFS' MOTION TO RECONSIDER THIS COURT'S
DECISION DISMISSING COUNTS FOUR AND FIVE**

---

**ARENT FOX, LLP**
Mark F. (Thor) Hearne, II
(admitted *pro hac vice*)
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel: 314.296.4000
Facsimile: 202.857.6395
Email: thornet@ix.netcom.com


Dana J. Finberg (VSB # 34977)
55 Second Street, 21st Floor
San Francisco, CA 94105
Telephone: 415.757.5500
Facsimile: 415.757.5501
Email: danafinberg@arentfox.com

*Attorneys for Defendants*

## INTRODUCTION

The Plaintiffs, two individual political operatives (**Lee** and **Aida**) and the Democrat Party of Virginia (**DPV** or **Democrat Party**), brought this lawsuit asking this Court to invalidate Virginia's law requiring a voter provide identification before the voter's ballot will be counted.[1] Plaintiffs also complained of long lines at polling places and asked this Court to order convicted felons to be automatically re-enfranchised upon completion of their criminal sentence. Plaintiffs have since dismissed the long lines and felon claims with prejudice. Thus, as currently composed, Plaintiffs challenge only Virginia's voter identification law.

Plaintiffs sued the Virginia State Board of Elections (the **Board** or **BOE**) and the Virginia Department of Elections (**Department**) and the members of the Board and Commissioner of the Department in their official capacities. Plaintiffs assert five counts claiming Virginia's voter identification law: (1) violates Section 2 of the Voting Rights Act, (2) violates the First Amendment and Equal Protection Clause of the Fourteenth Amendment due to "disparate treatment of individuals without a rational basis," (3) is unconstitutional "partisan fencing," (4) is an "intentional discrimination" by the Virginia General Assembly "abridg[ing] and deny[ing] the right to vote for African Americans and Latinos on account of race;" and, (5) "intentional discrimination [by Virginia on the basis of age" that "abridge[s] and den[ies] the right to vote for young voters on the account of age" in violation of the Twenty-sixth Amendment.[2] Importantly, Counts Four and Five allege "the General Assembly … intended, at least in part, to suppress the

---

[1]      In earlier pleadings we referred to Gonzalo J. Aida Brescia as "Brescia." During his Mr. Aida clarified his last name is Aida not Brescia.

[2]      Amended Compl., Dkt. No. 36, pp. 33-38.

number of votes cast by African Americans and Latinos" and "the General Assembly intended …
to suppress the number of votes cast by young voters."[3]

The Board and Department asked this Court to dismiss Plaintiffs' amended complaint
under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). [4]   We said dismissal was proper
because Lee, Aida and DPV lacked standing and failed to state a claim upon which relief can be
granted.   Lee and Aida possesses the requisite form of identification necessary to vote and the
DPV did not identify any member of the DPV (or, for that matter, any person) who is an eligible
Virginia voter and who had been (or would be) denied the right to vote by reason of Virginia's
voter identification law.  Because Lee, Aida and DPV lack standing, this Court lacks jurisdiction
under Article III.

After we filed our motion to dismiss, Plaintiffs voluntarily dismissed with prejudice their
claims about felon re-enfranchisement and long lines.[5]  Our motion to dismiss was briefed and
argued and this Court granted-in-part and denied-in-part our motion. This Court held Counts One
and Two survive 12(b)(6) scrutiny as to the voter identification law challenge.   But this Court
dismissed the long lines claim and dismissed Counts Four and Five entirely.[6]  This Court further
held that Count Three, alleging "partisan fencing," was a restatement of Count Two.  (Count Three
is "Count Two in a slightly different wrapper and it will be treated accordingly."[7])

---

[3]    Amended Compl., Dkt. No. 36, p. 36, para. 119 and p. 37, para. 124.

[4]    Motion to Dismiss, Dkt. No. 48.

[5]    Dkt. No. 97 and Dkt. No. 118.  Plaintiffs dismissed their long lines claim pursuant to terms of
a consent decree.  Dkt. No. 117.

[6]    Memorandum Opinion, Dkt. No. 110; Order, Dkt. No. 111.

[7]    *Id*. at 20 ("The term 'partisan fencing' does not create an independent cause of action aside
from a typical First Amendment and Equal Protection Clause claim.").

Plaintiffs sought reconsideration under Rule 59(e).[8]  This Court agreed to reconsider its decision dismissing Counts Four and Five noting, "Plaintiffs offer authority bearing directly on the critical traceability element of standing in the election law context which could arguably convince the court that its initial impression was in error."[9]  Accordingly, this Court ordered "further briefing and consideration of the standing issue on Counts IV and V" and directed the Board and Department to "file a response concerning the merits of reinstating Counts IV and V, addressing the standing issue."[10]

## SUMMARY OF ARGUMENT

Lee, Aida and the Democrat Party's amended complaint should be dismissed in its entirety for lack of standing and for failure to state a claim.  Lee and Aida do not allege Virginia's voter identification law has denied, or will deny, them *personally* the right to vote.  Lee and Aida do not allege they lack (or cannot obtain for free) the requisite identification necessary to vote.  The Democrat Party has not identified in its amended complaint any member of the Party (nor, for that matter, any person in Virginia) who is denied the right to vote by reason of Virginia's voter identification law.  As such, Lee, Aida and DPV fail to allege a personal, actual or threatened injury resulting from the Board's or Department's conduct.  Lee, Aida and DPV do not allege a

---

[8]   Dkt. No. 124, p. 1.  Plaintiffs asked "this Court to reconsider its dismissal of Counts IV and V … [and to] reinstate those claims."

[9]   Order, Dkt. No. 126.

[10]   *Id*.  This Court's order directed Defendants to file their brief on Monday, January 25.  But, in light of the major winter storm that struck the East Coast on January 23 and 24, we asked the Court to extend the deadline one-day until Tuesday, January 26.  Dkt. No. 128.

violation of their own legal rights and interests but rest their claim on the legal rights or interests of hypothetical (and unidentified) third parties.[11]

Counts Four and Five allege "intentional discrimination" by Virginia's General Assembly, not by the Board or Department.  Count Five alleges the General Assembly intentionally discriminated against "young voters" in violation of the Twenty-sixth Amendment.[12]  Lee and Aida (or any other person) do not allege they are "young voters" and the DPV has not identified any member of the DPV who is a "young voter" denied the right to vote by reason of Virginia's voter identification law.

Plaintiffs fail to satisfy the traceability element of standing in Counts Four and Five. Plaintiffs fail to allege the "intentional discrimination" complained of in Counts Four and Five is due to conduct of the named defendants, the Board and Department, as opposed to a third party – the General Assembly.  Indeed, Plaintiffs affirmatively allege the "intentional discrimination" of which they complain is conduct of the General Assembly which is not a party before this Court. The Fourth Circuit holds, "[t]he traceability prong means it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court."  *Friends of Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (*Friends of Earth II*).

Confronted with a motion to dismiss the Plaintiffs are granted the benefit of assuming all their factual allegations are true. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  Thus,

---

[11]    We recognize, of course, this Court has held a challenge to the Plaintiffs' standing survives Rule 12(b)(6) scrutiny.  However we preserve this argument.

[12]    "Young voters" are never identified.  Is a "young voter" younger than thirty?  Younger than twenty-one?  And what is the principled basis upon which to distinguish a "young voter" and a voter who is not "young?"

should this Court conclude Plaintiffs have standing to proceed at this pleading stage of the litigation, that does not finally resolve the issue of Plaintiffs' standing.  When evidence is adduced (under a Rule 56 motion for summary judgment or at trial) standing remains an outstanding issue and it remains the Plaintiffs' burden to establish their standing.  *Id.*

## ARGUMENT

I. **This Court properly dismissed Counts Four and Five because Plaintiffs failed to establish standing.**

A. **This Court's jurisdiction is limited to only those "cases and controversies" an individual plaintiff has standing to litigate.**

The Supreme Court explained, "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37-38 (1976) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968), and *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Less than a decade later, in *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 (1982), the Court reiterated the foundational importance of standing:

> But of one thing we may be sure:  Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.  Article III … is not merely a troublesome hurdle to overcome if possible so as to reach the "merits" of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers of the Constitution in Philadelphia in 1787, a charter which created a general government, provided for the interaction between that government and the governments of the several States, and was later amended so as to either enhance or limit its authority with respect to both States an individuals.

The Court then explained, "The term 'standing' subsumes a blend of constitutional requirements and prudential considerations."  The Court held:

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that the injury

"fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge*, 454 U.S. at 478.[13]

The Supreme Court defined the prudential standing considerations as follows:

Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.  Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and appropriately addressed in the representative branches. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."

*Id.* at 474.[14]

The Supreme Court held:

[A] plaintiff must meet three requirements in order to establish Article III standing. First, he must demonstrate "injury in fact" – a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical."  Second, he must establish causation – a "fairly … trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant.  And, third, he must demonstrate redressability – a "substantial likelihood" that the requested relief will remedy the alleged injury in fact.  These requirements together constitute the "irreducible constitutional minimum" of standing which is an "essential and unchanging part" of Article III's case-or-controversy requirement.

*Vermont Agency of Nat. Res. v. United States*,
529 U.S. 765, 771 (2000).[15]

---

[13]     Citing and quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979), and *Simon*, *supra*, at 38, 41.

[14]     Citing and quoting, *Warth*, *supra*, at 499-500, and *Assoc. of Data Processing Orgs. v. Camp*, 397 U.S. 150, 153 (1970).

[15]     Citing and quoting, *Friends of Earth Inc. v. Laidlaw Enviro. Srvs., Inc.*, 528 U.S. 167, 180-181 (2000), *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), *Simon*, supra at 41; and*, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Fourth Circuit observed, "[i]n most kinds of litigation, [such as automobile accidents and contract disputes] there is scant need for courts to pause over the standing inquiry." *Friends of the Earth II*, 204 F.3d at 153.   But in cases such as this involving a political challenge to legislation courts must "examine the allegations in such cases 'to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'  Such scrutiny is necessary to filter the truly afflicted from the abstractly distressed….  If the plaintiff can show that his claim to relief is free from excessive abstraction, undue attenuation, and unbridled speculation, the Constitution places no further barriers between the plaintiff and an adjudication of his rights." *Id.* at 154.[16]

### B.  Standing is jurisdictional and must be satisfied at every stage of this litigation.

Federal courts' "independent obligation to examine their own jurisdiction and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v Dallas*, 493 U.S. 215, 230-31 (1990) (citations omitted).  Standing is not a "mere pleading requiremen[t] but rather and indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561.

We challenged Lee, Aida and the DPV's standing at the initial pleading stage.   The Supreme Court explained that at this pleading stage of the litigation the plaintiffs' complaint:

---

[16]     Citing *Allen v. Wright*, 468 U.S. 737, 752 (1984).

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Id*. at 555.[17]

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id*. at 557.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

The Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,] 570.  *A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted))….  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss…. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*,
556 U.S. at 678-79.[18]

---

[17]     Citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[18]     Emphasis added; most citations omitted.

Thus, we are faced with the question, accepting Plaintiffs' factual allegations (but not their legal conclusions) as true, have they pled the following?  (1) That Lee, Aida and DPV personally suffered a "concrete," "particularized" injury-in-fact that is "actual or imminent, not conjectural or hypothetical?"  (2) Is "fairly traceable to the challenged action of the defendant [here the Board or Department] and not the result of the independent action of some third party not before the court?"  And, (3) will a favorable decision by this Court likely redress their alleged injury?  We explain in our original motion to dismiss why the Plaintiffs have failed on each of these three points.  Below we address Counts Four and Five and specifically the traceability element of standing as it relates to this Court's dismissal of Counts Four and Five.

## II.      Plaintiffs plead the General Assembly's conduct, not the Board's or Department's conduct, caused Plaintiffs' alleged injury.

Analyzing the traceability prong of standing requires we first consider the alleged "injury caused by the conduct complained of."  *Friends of the Earth II*, 204 F.3d at 154.  It is then necessary to consider whether the alleged injury is caused by the conduct of the named defendants or "the independent action of some third party not before the court."  *Id*.  And "finally, the redressability prong entails that it must be likely, and not merely speculative, that a favorable decision will remedy the injury."  *Id.* (citing *Lujan*, 504 U.S. at 561).  Plaintiffs fail to satisfy both the requirement of traceability and redressability.[19]

### A.      Plaintiffs alleged injury is that they, or in the case of DPV, its members, will be denied the right to vote because Virginia requires a voter to provide identification before their ballot is counted.

We begin by considering the injury.  The plaintiffs' alleged injury is an infringement of a person's right to cast a ballot and to have that ballot counted.  Counts Four and Five allege the

---

[19]      Plaintiffs also fail to satisfy the other standing requirements.  See our memorandum in support of motion to dismiss.  Dkt. No. 49.

General Assembly intended to suppress the votes of "African Americans and Latinos" and "young voters."  The vehicle by which Plaintiffs allege the General Assembly intended to suppress votes by these groups is Virginia's requirement that a voter identify himself before his ballot is counted. To have standing Lee, Aida and DPV must allege an "'injury in fact' – a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical'" and not "'abstract questions of wide public significance' which amount to 'generalized grievances' pervasively shared and appropriately addressed in the representative branches."  Thus, we turn first to what Virginia requires for a voter's ballot to be counted.[20]

Virginia has adopted a racially-neutral system of voter registration and identification.  To vote in Virginia a person must be:  (i) "18 years of age," (ii) "a resident of the Commonwealth and of the precinct in which he offers to vote;" and, (iii) "a registered voter."[21]  "Any person who is not registered to vote, but would otherwise be a qualified voter, is entitled to register to vote…."[22] Virginia requires no identification of any type to register to vote and a person may register to vote in-person, by mail or over the internet.[23]

---

[20]     "Voting" refers to the act of "offering" to cast a ballot.  As such "voting" is distinguished from having the proffered ballot *counted*.  In Virginia, as in every other state, only ballots cast by a qualified voter are entitled to be counted.  The "Right to Vote" refers to the ability to offer a ballot and to have the ballot counted.

[21]     Va. Code §24.2-101 (definition of "Qualified Voter").  Virginia excludes a person "convicted of a felony" from being a qualified voter unless the Governor has restored their right to vote.  Those adjudicated to be mentally incapacitated are also excluded from being a qualified voter.

[22]     Va. Code §24.2-401.

[23]     *See generally*, Va. Code. Chapter 4 §24.2-400 through §24.2-470.

While Virginia requires no identification or proof of eligibility to register to vote, Virginia does require a voter provide one of several forms of valid identification before a ballot is cast at a polling place is counted.[24]  Acceptable identification includes a Virginia driver's license, passport, any other photo identification issued by the Commonwealth, one of its political subdivisions or the United States.  Student identification provided by any public or private "institution of higher education located in the Commonwealth" or any photo identification issued by the person's employer is acceptable.[25]

Any person lacking one of these specified forms of identification may obtain a photo identification card without cost from the general registrar's office or from the Department.  There are 133 general registrar throughout Virginia who will provide a free photo identification card. To obtain a free photo identification card the person need only sign an application affirming their identity.[26]  Importantly, unlike other states with photo identification requirements, the voter does not need to provide *any* underlying documents (such as a birth certificate) to establish identity.

A person presenting themselves at a poll to vote who lacks any of the specified identification will be given a provisional ballot.[27]  "[A]n officer of election, by written notice given

---

[24]     A "valid" form of identification is a document (i) that appears to be genuinely issued by the agency or issuing entity appearing upon the document, (ii) the bearer of the document reasonably appears to be the person whose photograph is contained thereon, and (iii) the document shall be current or have expired within the preceding 12 months.  *See* <http://law.lis.virginia.gov/admincode/title1/agency20/chapter40/section10/>.

[25]     Va. Code §24.2-643.B.  A provisional ballot is identical to a normal ballot in all respects. A provisional ballot is placed in a separate envelope and counted once the voter's identity is confirmed.

[26]     1 VAC 20-40-90; *see also* 2013 Va. Laws Ch. 725 (SB 1256).

[27]     Va. Code §24.2-643.B.

11

to the voter, shall … inform a voter voting provisionally … that he may submit copy of one of the forms of identification specified … to the electoral board by facsimile, electronic mail, in-person submission, or timely United States Postal Service or commercial mail delivery, to be received by the electoral board no later than noon on the third day after the election."[28]

Further Virginia voters need not appear at their polling place on election day to cast a ballot. Chapter Seven of Virginia's election law provides for absentee voting.[29]  Those able to vote absentee include, *inter alia*, any person absent from their county on election day, students and the spouse of a student, members of the military, any person whose disability, illness or pregnancy prevents them from going to the polls and any person confined to jail awaiting trial or sentenced to jail due to a misdemeanor.[30]  Virginia also provides for "emergency" absentee ballots to "any person registered and otherwise qualified to vote who becomes incapacitated [within seven days of the election or … who becomes hospitalized [within fourteen days before the election]."[31]  Such a voter may request "an emergency absentee ballot be delivered to him in the hospital." "'Incapacitated' means hospitalized, ill and confined to his residence, bereaved by the death of a spouse, child, parent or otherwise incapacitated by an emergency."[32]

If the application for an absentee ballot is completed in-person at the general registrar's office the applicant must provide one of the forms of identification required to vote in-person at a

---

[28]     Va. Code §24.2-653.A.

[29]     Va. Code §24.2-700 through §24.2-713.

[30]     Va. Code §24.2-700 (1) – (5).

[31]     Va. Code §24.2-705.

[32]     Va. Code §24.2-705.

polling place.[33]  But an absentee ballot application submitted by mail, internet or fax (including the federal postcard application) does not require the voter to present the photo identification required at the polling place.[34]  The federal Help America Vote Act of 2002, 52 U.S.C. §21083 (HAVA), requires that a voter who registers to vote by mail must present a HAVA designated form of identification before casting a ballot whether in-person or by an absentee ballot.  Virginia has adopted the HAVA identification requirements for mail-in absentee ballots.  A first-time mail-in-registered voter is required to "submit with his ballot (i) a copy of a current and valid photo identification or (ii) a copy of a current utility bill, bank statement, government check, paycheck or other government document that shows the name and address of the voter."[35]

So, in Virginia a person may appear at their polling place on Election Day without any form of identification.  The officers of election will still provide the voter a ballot.  The ballot will be put in a provisional ballot envelope and the ballot will be counted provided the voter sends the registrar a copy of any of the acceptable forms of photo identification before close of business on Friday following Election Day.  Not only that, if the voter has no acceptable form of photo identification, the voter will be given free photo identification by the Department or by one of the 133 registrars' offices throughout Virginia and the voter's ballot will be counted.  The voter can obtain the free photo identification after casting a provisional ballot.

If any voter is disabled, incapacitated, incarcerated (for a non-felony offense), a student, or simply out of town for business or vacation, he may still vote by casting an absentee ballot.  To cast an absentee ballot, a person need only request an absentee ballot (by mail, in-person or over

---

[33]      Va. Code §24.2-701.B.1

[34]      Va. Code §24.2-701.B.2.

[35]      Va. Code §24.2-706.

the Internet) and return the ballot.  If the voter is newly-registered and has not previously voted they need to include a copy of their HAVA, non-photo, identification with the absentee ballot. But if the voter has previously voted in-person or has provided the HAVA specified identification to the registrar, the voter does not need to include any identification with their absentee ballot.

**B.    Virginia's General Assembly and the local electoral boards and registrars are not defendants before this Court.**

Plaintiffs allege in Counts Four and Five that Virginia's General Assembly adopted the Commonwealth's voter identification requirements with the "intent" of discriminating against "young voters" and "African Americans and Latinos."  But Plaintiffs did not sue the General Assembly.  Plaintiffs sued only the Virginia State Board of Elections and the Virginia Department of Elections.  Plaintiffs also did not sue any local electoral board nor any registrar.  Not having the relevant local electoral board or registrar before this Court means the traceability and redressability requirements of standing have not been met.  We explain why below.  But, first we review the manner in which Virginia elections are conducted and how Virginia's voter identification law is enforced within the context of Virginia elections.

Virginia provides elections are conducted by four different entities: The State Board of Elections (Board), the Department of Elections (Department), Local Election Boards (Electoral Boards) and Registrars (Registrars). Each local electoral board appoints individual Officers of Election to conduct the election in each precinct.  While the Board, through the Department, provides local electoral boards guidance about how to conduct elections, it is the electoral boards that actually conduct the election and, as it relates to photo identification, it is the officers of election acting under direction and supervision of the local electoral board that enforces Virginia's voter identification law.

### 1.   *The State Board of Elections*[36]

The State Board of Elections is a three-member body appointed by the Governor and confirmed by the General Assembly.  Two members are from the Governor's political party and one member is from the opposing political party.  The current Board members are James B. Alcorn, Chairman and Singleton B. McAllister, Secretary, both Democrats and Clara Belle Wheeler, Vice Chairman, who is Republican.  The Board, "through the Department of Elections shall supervise and coordinate the work of the county and city election boards and the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections."  The Board "shall make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrar to promote the proper administration of election laws."  Finally, the "State Board shall prescribe appropriate forms and records for the registration of voters, conduct of elections, and implementation of this title, which shall be used throughout the Commonwealth."

### 2.   *The Department of Elections*[37]

Virginia's Governor appoints "a Commissioner of Elections" who shall "employ the personnel required to carry out the duties imposed by the State Board of Elections."  And, "[t]he State Board, through the Department of Elections, shall ensure that the members of the electoral boards and general registrars are properly trained to carry out their duties" by offering training and "set[ting] training standards."  The current Commissioner of Elections is Edgardo Cortes.

---

[36]     The description of the State Board of Elections is taken from Va. Code, Title 24.2, Article 2, §24.2-102 through §24.2-105.2.

[37]     *Id.*

### 3.   *The Local Boards of Election*[38]

"There shall be in each county and city an election board composed of three members who shall be appointed by a majority of the circuit judges of the judicial circuit for the county or city." Virginia requires that two electoral board members shall be of the Governor's political party and one member of the other political party.  "Each electoral board shall appoint the general registrar for its city or county and officer of election for each precinct who shall serve in all election." Further, "The electoral board shall perform the duties … including … preparation of ballots, the administration of absentee ballot provisions, the conduct of the election, and the ascertaining of the results of the election."  There are 133 local city and county electoral boards in Virginia.

### 4.   *The General Registrar*[39]

Virginia provides, "each electoral board shall meet … and shall appoint a general registrar."  Article Four provides, "the general registrar, and the assistant registrars acting under his supervision, shall [*inter alia*] [m]aintain the official registration records for his county or city," The registrars also "[v]erify the accuracy of pollbooks provided for each election, … [m]aintain accurate and current registration records … [ and] [w]henever any person is believed to be registered or voting in more than one state or territory of the United States at the same time, inquire about, or provide information from the voter's registration and voting records to [the other election authority]."

---

[38]     The Local Boards of Election are defined in Va. Code, Title 24.2, Article 3, §24.2-106 through 24.2-109.1.

[39]     The appointment and duties of a general registrar are found in Va. Code, Title 24.2, Article 4, §24.2-110 – 24.2-114.

5. *Officers of Election*[40]

Each local electoral board "shall appoint officers of election."  At least three officers of election shall be appointed for each precinct and are to be selected equally from both major political parties.  "The electoral board shall designate one officer as the chief officer of election and one officer as the assistant for each precinct.  The officer designated as the assistant for a precinct, whenever practicable, shall not represent the same political party as the chief officer for the precinct….  The electoral board shall instruct each chief officer and assistant in his duties … and shall conduct training of the officers of election consistent with the standards set by the State Board."  The officers of the election under the electoral board's direction are the individuals who actually conduct the election and enforce voter identification requirements.

C.     **Because Plaintiffs failed to include all the necessary defendants, Plaintiffs fail to satisfy the traceability and redressability requirements for standing.**

In *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), individual Indiana citizens, Democrat party organizations and organizations representing "elderly, disabled, poor and minority voters" sued to challenge Indiana's law requiring photo identification to vote. *Id.* at 187. The defendants in *Crawford* were Indiana's Secretary of State, Todd Rokita, *and* the Marion County Election Board which was the local election authority responsible for enforcing the law relevant to those individuals and organizations bringing the challenge.  Importantly, the defendant was not just Indiana's Secretary of State but included the separate election authority, Marion County Election Board, responsible for enforcing the law.  Standing was not an issue in *Crawford.*

As to Counts Four and Five, this Court rightly observed:

---

[40]     The appointment and duties of officers of election are found in Code of Va., Title 24.2, Article 5, §24.2-115 – 24.2-123.

The epicenter of Counts Four and Five is not a standard practice or procedure promulgated or administered by any of the named Defendants in this case. The wellspring of discrimination is the voting practices of the Virginia General Assembly; which Plaintiffs contends evinces a discriminatory voting pattern….

Counts Four and Five appear to present freestanding claims of constitutional violations, not merely additional theories of proving other contentions. It is unclear … what what specific relief Plaintiffs are seeking in these counts, which do not appear to invoke the Civil Rights Act. Furthermore, viewed as untethered claims, Counts Four and Five appear to focus on actions of the General Assembly, whose members are not parties to this case.

*Opinion* at 11.

Plaintiffs cite a number of cases for the proposition that naming only the Board and Department as defendants is sufficient. For example, Plaintiffs cite *Page v. Va. State Board of Elections*, No. 13-678, 2015 WL 3604029 (E.D. Va. June 5, 2015). But *Page* is a redistricting case. *Page* challenged Virginia's state-wide reapportionment of congressional districts – particularly the Third Congressional District. The individuals bringing the challenge were residents of the challenged district and (unlike enforcement of individual voter identification requirements) the reapportionment of the Virginia's Third Congressional District was not enforced or determined by the electoral boards or registrars.

*Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352 (4th Cir. 1989), demonstrates the importance of having the specific election officials responsible for enforcing the challenged law as defendants. *Irby* challenged Virginia's appointive system for selecting school board members. The challenge "was brought by seven individual black citizens who reside in the [named city and counties]" that made up the school district. *Id.* at 1353. And, to our point, "The suit named three sets of defendants: (1) members of the appointing bodies for local school boards in [the named city and counties]; (2) members of the Electoral Boards in each of those five jurisdictions; and (3) Susan H. Fitz-Hugh, Secretary of the State Board of Elections." *Id.* at 1353-54.

Plaintiffs also reference the North Carolina case, *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014). *League of Women Voters* involved a challenge to provisions of North Carolina's voter election law including its photo identification requirement. But, unlike here, in *League of Women Voters*, the named defendants *included* the state of North Carolina as a state, North Carolina's Governor, the North Carolina State Board of Elections and members of the board in their official capacities. Plaintiffs rightly note that standing was not an issue in *League of Women Voters*, but there the State *qua* state and Governor were named parties. The Fourth Circuit's decision considered a Section 2 challenge and a preliminary injunction involving several specific voting practices. The Fourth Circuit decision in *League of Women Voters* did not involve "intentional discrimination" claims like those in Counts Four and Five which the Plaintiffs here frame against the Virginia General Assembly.

### III.    Apart from failing the traceability and redressability requirements, Counts Four and Five are superfluous.

It is unclear what, exactly, Counts Four and Five add to the Plaintiffs' challenge to Virginia's voter identification law. Plaintiffs have dismissed the felon re-enfranchisement and long-lines claims. The sole surviving challenge is to Virginia's voter identification requirement. And, as this Court observed, "[i]t is unclear … what specific relief Plaintiffs are seeking in these counts."

This Court correctly noted the Supreme Court's decision in *Crawford* would appear to preclude a facial challenge to Virginia's photo identification law on behalf of voters generally. And, Plaintiffs do not bring an "as applied" challenge because they fail to identify any qualified Virginia voter to whom the voter identification law, *as applied*, will prevent from voting. This Court noted, Counts One and Two seem to plead a combination of facial and class-based challenges to Virginia's voter ID law." *Opinion* at 15. But, "although the factual support for the

voter identification claims are thin, viewed in Plaintiffs' favor they appear sufficient to survive Rule 12(b)(6) scrutiny…. Therefore, as far as they relate to voter identification, Counts I and II will survive." *Opinion* at 16. So, given that Counts One and Two proceed, Counts Four and Five are superfluous. To the extent Count Five seeks to add "young people" to Plaintiffs' challenge, "young people" are already included in Count Two and Count One invoking Section Two of the Voting Rights Act, which only applies to discrimination on the basis of race, not age.

## CONCLUSION

Given that Plaintiffs' challenge to Virginia's voter identification law pled in Counts One and Two survived our motion to dismiss, it is uncertain what substantive merit there is to Counts Four and Five and, as this Court noted, Plaintiffs fail to specify what remedy they seek in Counts Four and Five. Lacking any remedy, there is no redressability and this Court correctly dismissed Counts Four and Five. Further, the "intentional discrimination" complained of in Counts Four and Five is not traceable to the Board or Department but is an allegation directed specifically against Virginia's General Assembly and the General Assembly is not a party.

**Accordingly**, this Court should affirm its previous decision to dismiss Counts Four and Five of Plaintiffs' amended complaint.

DATED January 26, 2016

Respectfully submitted,

**ARENT FOX, LLP**


By: */s/ Mark F. (Thor) Hearne, II*
    Mark F. (Thor) Hearne, II
    (admitted *pro hac vice*)
    112 S. Hanley Road, Suite 200
    Clayton, MO 63105
    Tel: 314.296.4000
    Facsimile: 202.857.6395
    Email: thornet@ix.netcom.com

    Dana J. Finberg (VSB # 34977)
    55 Second Street, 21st Floor
    San Francisco, CA 94105
    Telephone: 415.757.5500
    Facsimile: 415.757.5501
    Email: danafinberg@arentfox.com

    *Attorneys for Defendants*




## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's CM/ECF system

on January 26, 2016, to the following:

Joshua L. Kaul
Perkins Coie LLP
1 East Main Street, Suite 201
Madison, WI 53703

Marc E. Elias
Bruce V. Spiva
Elisabeth C. Frost
Aria C. Branch
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005-3690

*/s/ Dana J. Finberg*