IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| BARBARA H. LEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Civil Action No. 3:15-CV-357 |

**REPLY IN RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

## INTRODUCTION

Through their Motion for Reconsideration (the "Motion"), Plaintiffs request that the Court reconsider one discrete issue: the dismissal of Plaintiffs' intentional discrimination claims (Counts IV and V of Plaintiffs' Amended Complaint), which the Court dismissed for lack of Article III standing. Specifically, the Court concluded that Plaintiffs had not made "some showing" that their injury "is fairly traceable to the actions of" the named Defendants—the Virginia State Board of Elections (SBE), the Department of Elections (DOE), or their individual members—since "[t]he wellspring of discrimination" alleged "is the voting practices of the Virginia General Assembly." 12/18/2015 Mem. Op. 11-12, Dkt. 110. In their Motion, Plaintiffs argue that dismissal of these claims was clear error, because it is well settled that, when a plaintiff challenges the constitutionality of a law that harms him, the plaintiff's harm is fairly traceable to government agents responsible for *enforcing* that law—whether the plaintiff's claims allege discriminatory intent, disparate impact, undue burden, or any other applicable theory of law. As applied to this case, Plaintiffs have standing to pursue their claims for intentional discrimination against these Defendants because SBE and DOE enforce (and supervise local elections officials' administration of) the Commonwealth's voter identification law, thereby *directly* causing Plaintiffs injury.

The greater part of Defendants' opposition brief is devoted, not to the legal question at issue, but to a broad-based rehashing of their original argument that Plaintiffs did not allege sufficient injury—which this Court rejected, and for which no Party has sought reconsideration. Only three paragraphs of Defendants' twenty-two page brief even attempt to address the legal authorities Plaintiffs cite in support of their position that they meet Article III's causation and redressability elements. And, in doing so, Defendants concede that plaintiffs bringing intentional

discrimination claims in election cases have standing to sue the "election officials responsible for enforcing the challenged law." 1/26/2016 Defs.' Opp. 18, Dkt. 129. Tellingly, Defendants make *no* argument directly supporting the Court's original ruling that, because the discriminatory intent originated with the General Assembly, Plaintiffs lacked standing to bring an intentional discrimination claim against anyone but the General Assembly or its members.

Instead, Defendants propose a brand new argument for dismissal—contending that Plaintiffs should have sued each local county board of elections, rather than SBE and DOE. Not only is there no authority for this newly-minted position, it is contrary the Court's earlier ruling in this case, in which the Court denied a motion to intervene filed by, *inter alia*, several members of county boards of elections and a county-level general registrar. In doing so, the Court expressly found that SBE and DOE "supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections," and that the local officials "have very little discretion in the exercise of their duties, which, although mandated by statute, are closely regulated by the SBE." 9/4/2015 Mem. Op. 6-7, Dkt. 57 (citing Va. Code § 24.2-103(A)). Moreover, Defendants fail to cite *a single case* where a Court dismissed a party like SBE or DOE on the grounds that Defendants now urge here.

For all of these reasons, Plaintiffs respectfully request that the Court find that its dismissal of Plaintiffs' intentional discrimination claims was in error and reinstate Counts IV and V of Plaintiffs' Amended Complaint.

## ARGUMENT

**A.     Plaintiffs' Intentional Discrimination Claims Meet Article III's Causation (Traceability) and Redressability Requirements**

In their Motion, Plaintiffs explained that their intentional discrimination claims are fairly

traceable to SBE, DOE, and their individual members because Plaintiffs are harmed by SBE's and DOE's enforcement of the challenged voter ID law—not only because of its discriminatory effects, but also because it was intended to have those effects. As Plaintiffs noted, "[u]nder United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant." *Am. Civil Liberties Union v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) (citing *Diamond v. Charles,* 476 U.S. 54, 64 (1986) ("The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III.")). This rule is grounded in the principle that "a suit against a state officer in his official capacity is, of course, a suit against the State." *Diamond*, 476 U.S. at 57 n.2. Thus, Plaintiffs' injuries are fairly traceable to the named Defendants because they "represent[] the state whose statute is being challenged as the source of injury." *Wilson v. Stocker*, 819 F.2d 943, 946-47 (10th Cir. 1987) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Defendants identify no authority refuting these principles. Instead, they appear to embrace them, arguing for the first time that Plaintiffs' claims are not fairly traceable to or redressable by Defendants—not because they are traceable to the General Assembly, as the Court found—but rather, because it is the local boards of elections, not SBE or DOE, that are responsible for the last line of enforcement of the voter ID law (*i.e.*, they are the entities that actually request that voters present their photo identification when they appear to vote in person at the polls on Election Day). Even if it were proper for Defendants to make this argument in the first instance in a response to a motion for reconsideration (which it is not), the argument is wholly without merit and should be rejected.

The Virginia Code makes it clear that SBE, through DOE, "has definite responsibilities related to the application of the" voter ID law and, accordingly, that Plaintiffs claims are fairly traceable to, as well as fully redressable by, SBE, DOE, and their individual members. *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 828-32 (S.D. Tex. 2012), *rev'd and remanded sub. nom. on other grounds*, *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013). For example, it is the responsibility of SBE, through DOE, to "supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." Va. Stat. Ann. § 24.2-103(A). Likewise, SBE is required to "make rules and regulations and issue instructions . . . to the local electoral boards and registrars to promote the proper administration of election laws." *Id.* Moreover, where a local electoral board member or registrar acts outside of the law, SBE is empowered to institute removal proceedings and/or petition the courts "for a writ of mandamus or prohibition . . . for the purpose of ensuring that elections are conducted as provided by law." *Id* at (D).

This Court recognized as much when it rejected a motion to intervene in these proceedings filed by (among others) certain local county board members and a general registrar. In rejecting their argument that they should be permitted to intervene in these proceedings as defendants (either as a matter of right or pursuant to the doctrine of permissible intervention), the Court found that:

> By statute, it is the responsibility of the SBE, through the [DOE], to "ensure that members of the electoral boards and general registrars are properly trained to carry out their duties." Va. Code § 24.2-103(B). The SBE also "set[s] the training standards for officers of elections to be fulfilled by the local electoral boards and general registrars[.]" . . . . *Id*. *It appears that the County Election Officials have very little discretion in the exercise of their duties*, which, although mandated by statute, are closely regulated by the SBE. *See* Va. Code §§ 24.1-103, 109, 114."

9/4/2015 Mem. Op. 6-7 (emphasis added).

Standing does not require that the defendant have responsibility over *all* applications of the law. *Voting for Am., Inc.*, 888 F. Supp. 2d at 828. Rather, all that Article III requires is that there be "some" connection between the defendant and the application of the challenged law.[1] *Id.* That requirement is met—and the causation and redressability elements of standing are fulfilled—"when a defendant has 'definite responsibilities relating to the application of' the challenged law." *Andrade*, 888 F. Supp. 2d at 828-32 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). Further, the Supreme Court has expressly found that redressability exists if a declaration against a governmental defendant is reasonably likely to cause nonparties to obey the court's order. *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

Defendants' implication that the county boards of elections are independent causes of Plaintiffs' injury is similarly untenable. While it is true that local county boards and registrars are responsible for performing discrete duties flowing from Virginia's election laws and, ultimately, for physically giving effect to those laws, *see* Va. Stat. Ann. §§ 24.2-109, 24.2-114, "County Election Officials have very little discretion in the exercise of their duties, which, although mandated by statute, are closely regulated by the SBE." 9/4/2015 Mem. Op. 7. In short, regardless of the role that county boards play in Virginia elections, it is SBE, through DOE, not the local electoral boards, that serves as the ultimate enforcer and administering agent of

---

[1] *See also Veasey v. Perry*, 29 F. Supp. 3d. 896, 923 (S.D. Tex. 2014) (finding that certain members of the executive were proper defendants where they had "some connection with the enforcement of [the challenged law]") *and compare with Lowery v. Governor of Georgia*, 506 F. App'x 885, 886 (11th Cir. 2013) (finding that the governor was not a proper party where he had "no power to provide any of the relief requested") *cert. denied sub nom. Lowery v. Deal*, 134 S. Ct. 266 (2013). This Court similarly recognized as much in its memorandum opinion on Defendants' motion to dismiss. *See* 12/18/2015 Mem. Op. at 11 ("A vital prerequisite to Article III standing is *some* showing that Plaintiffs' injury is fairly traceable to the actions of the Defendants.") (emphasis added).

Virginia's elections laws, including the voter ID law at issue here.[2] Thus, if Plaintiffs were to receive their requested relief—an injunction prohibiting the enforcement of the voter ID law—it would be SBE, through DOE, that would have the power to ensure that the Court's order was carried out and that all county boards and registrars uniformly stopped applying the law.[3] An argument to the contrary would "assume[] that . . . if the Voter ID law were declared invalid, the County Election Officials would continue to require voters to present identification prior to voting, contrary to the law and presumably, contrary to their oath of office." *Id*. at 5, n.5. Defendants cite no authority that would permit the Court to make such an untenable presumption and dismiss SBE and DOE as Defendants in this action.

*Crawford v. Marion County Board of Elections*, 553 U.S. 181 (2008), does not hold otherwise. The fact that the plaintiffs in that case chose to name as a defendant, *in addition* to the state defendant, a local board of elections does not mean that the plaintiffs were required to sue local boards of elections to establish standing. Nor does it mean that suing the state official who administered the voter ID law was improper. In fact, the inclusion of the state official as a defendant in that case only reinforces Plaintiffs' position, *i.e.*, that causation and redressability are met when plaintiffs sue the state entity responsible for administering and enforcing the law

---

[2] The DOE is also charged with additional duties that are also specific to the voter ID law. Va. Stat. Ann. § 24.2-404(A)(3) (discussing duties of DOE specific to the provision of the free voter ID).

[3] Taking Defendants' argument to its logical end, for Plaintiffs to fully redress their injuries presumably they would have to sue every local board of elections in the Commonwealth since Plaintiffs seek to have the voter ID law enjoined statewide. Such a result is not only impracticable, it is plainly unnecessary where there are two state agencies that can enforce this Court's decision statewide and completely redress Plaintiffs' injury. Likewise, as this Court has already recognized, the interests of these localities in this litigation are fully represented by SBE and DOE, and neither the local boards nor their members are even necessary, much less indispensable, parties to this suit. *See* 9/4/2015 Mem. Op. 5-6.

and that the state official is a proper defendant in this context.

In sum, it is beyond dispute that Plaintiffs' claims are fairly traceable to and redressable by SBE and DOE and it is these agencies, not the county boards or the General Assembly, that are the proper defendants on all of Plaintiffs' claims in this case.

## B.     Defendants' Limited Attempts to Distinguish Authority Cited By Plaintiffs Fail

Although Defendants do not directly refute Plaintiffs' central argument or authorities in their opposition brief, they do attempt to distinguish three of the cases that Plaintiffs cited in their Motion as offering additional support: *Page v. Va. State Board of Elections*, No. 13-678, 2015 WL 3604029 (E.D. Va. June 5, 2015); *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224 (4th Cir. 2014); and *Irby v. Va. State Bd. of Elections*, 889 F.2d 1352 (4th Cir. 1989). In each case, Defendants' attempt to distinguish these decisions reinforces that plaintiffs alleging intentional discrimination claims in the election law context have standing to sue the election officials that implement and enforce those laws. Furthermore, Defendants' new argument—*i.e.*, that SBE and DOE should be dismissed because the *only* defendants against whom such cases can be brought are the local boards of elections—finds no support in these cases.

For example, Defendants assert that Plaintiffs' reliance on *Page v. Virginia State Board of Elections* is misplaced because *Page* is a congressional redistricting case and, as such, only required that SBE, not the local boards, implement the congressional map in question. This distinction is completely irrelevant in the instant case. First, Virginia law makes it clear that SBE and DOE administer and enforce Virginia's election laws, including the voter ID law. Thus, the role of the local boards in both this case and *Page* has no bearing on Plaintiffs' standing to sue SBE or DOE. Further, for the purposes of the question before this Court—*i.e.*, whether Plaintiffs have standing to sue SBE and DOE where they allege that the General Assembly acted with

discriminatory intent—the key factor in *Page* is not the role of *local boards*, but rather the roles of the *General Assembly* and *SBE*. In this respect, *Page* is precisely on-point.

In *Page*, plaintiffs sued SBE, its members, and the Virginia Attorney General to enjoin them from enforcing a congressional map passed by the Virginia General Assembly in violation of the Constitution's equal protection clause. 2015 WL 3604029 at *1-2. Specifically, plaintiffs argued that the General Assembly drew Virginia's third congressional district by intentionally dividing voters on the basis of their race. *Id.* Despite the fact that it was the General Assembly's intent that resulted in the unconstitutional map, the General Assembly was not a party to the action. Instead, defendants were the three entities responsible for enforcing and administering the map. *Id.* In the instant case, Plaintiffs have alleged that the General Assembly acted with discriminatory intent when passing the voter ID law and, in response, they have sued the entities responsible for enforcing and administering the law. Thus, in all relevant aspects *Page* is analogous to this case and provides support for Plaintiffs' argument that they have standing to sue SBE and DOE rather than the General Assembly when asserting their intent claims.

To the extent that any distinction can be drawn between a redistricting case and the instant case, that distinction only serves to bolster Plaintiffs' argument. In a redistricting case, enjoining the enforcement of an unconstitutional map generally will not result in complete relief to the plaintiffs. Rather, a new, constitutional map must be drawn for a plaintiff's injury to be fully redressed. Such maps cannot be drawn by the enforcing agencies, but instead can only be drawn by the state legislature or the court. *See, e.g.*, *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978). Thus, in a redistricting case, at least in the first instance, only a third-party not before the court, *i.e.*, the General Assembly, can afford complete relief to plaintiffs. *See id.* Nevertheless, the three-judge panel in *Page* (as well as panels in numerous other redistricting cases) appropriately

permitted the case to proceed without the General Assembly's presence and made no finding that plaintiffs lacked standing to sue the named defendants. *See Franklin*, 505 U.S. at 803 (finding that redressability will exist if a declaration against a governmental defendant is reasonably likely to cause nonparties to obey the court's order). Unlike in a redistricting case, Plaintiffs in this case *can* receive complete relief from the named Defendants, further demonstrating that Plaintiffs have standing to pursue their intentional discrimination claims against these Defendants.

Defendants' attempts to distinguish *Irby v. Virginia State Board of Elections* further underscore that Plaintiffs have standing in this case. In *Irby*, the plaintiff sued *both* SBE and certain local election and school boards that participated in the administration of the voting scheme in question. 889 F.2d at 1353; *Irby v. Fitz-Hugh*, 692 F. Supp. 610, 612 (E.D. Va. 1988). The suit alleged that the appointment scheme had been passed and maintained by the General Assembly with discriminatory racial intent. *Id.* at 1353-54. Again, as in *Page*, it was the *General Assembly's* intent that was at issue, and the court permitted the intent claims to proceed against the enforcing and administering agencies and boards. *Id.* At no point did the court find that the plaintiffs did not have standing to sue SBE, or dismiss SBE from the case. Nor is the fact that the plaintiffs in *Irby* named entities *in addition to SBE* as defendants in that suit of any consequence to Plaintiffs' standing arguments in this case. In fact, since all the entities named were alleged to have some role in enforcing and/or administering the appointment scheme (but not in actually passing the law), this fact reinforces Plaintiffs' position by showing, again, that the proper defendants in a suit with intent claims are the enforcing agencies, not the legislative body that passed the law.[4] As explained *supra*, in this case those agencies are plainly SBE and DOE and,

---

[4] There is no discussion in *Irby* of the various roles that each defendant played in the

therefore, Plaintiffs' intent claims are fairly traceable to them.

Lastly, Defendants attempt to distinguish *League of Women Voters of N.C. v. N.C.* by noting that, in addition to the state board of elections, the case also named the state of North Carolina and the governor as defendants.[5] First, as in the cases discussed above, at no point did the court find that the plaintiffs did not have standing to sue the state board, or dismiss the state board from the case. Second, the fact that the state of North Carolina was specifically named as a defendant in *League of Women Voters of N.C.* is wholly irrelevant to the issue before the Court in this Motion, but in any event, the difference is easily explained. In that case, the United States also participated as a plaintiff and, as such, because it faced no Eleventh Amendment barriers, it was able to sue the state of North Carolina directly. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 n.12 (1984) ("[T]he Eleventh Amendment does not bar the United States from suing a State in federal court."). Thus, North Carolina was able to be directly named as a defendant. Not only is this option unavailable to the Plaintiffs in this case, but, moreover, it is also simply unnecessary where a suit against SBE, DOE, and their individual members is "of course, a suit against the State." *Diamond*, 476 U.S. at 57 n.2.

---

enforcement scheme and/or the degree of enforcement and administration that each entity had over the appointment scheme; however, Plaintiffs note that for standing purposes as long as a defendant is involved with "some" application of a challenged law then an action is fairly traceable to him and he is a proper defendant. *Voting for Am., Inc.*, 888 F. Supp. 2d at 828-32.

[5] The reference here to *League of Women Voters of N.C. v. N.C.* is also intended to encompass any arguments by Defendants about *N.C. State Conference of NAACP v. McCrory*, 997 F. Supp. 2d 322 (M.D.N.C. 2013), specifically. *League of Women Voters of N.C.* is merely the appeal of the *McCrory* case, and Defendants' criticisms, which focus on the defendants named in the case, could apply equally to either version of the case. Since Defendants use *League of Women Voters of N.C.* in their opposition brief, Plaintiffs use *League of Women Voters of N.C.* here. Plaintiffs note that the district court in *NAACP v. McCrory* specifically considered the merits of plaintiffs' intentional discrimination claims under the Fourteenth and Fifteenth Amendments as well as the intervenor's standing to bring their Twenty-Sixth Amendment claims. 997 F. Supp. 2d at 340-43, 355-62. In neither instance did the court find that these claims were not fairly traceable to the named defendants, none of which included the state legislature.

Finally, similar to *Irby*, the fact that another member of the executive branch with the authority to administer and enforce the challenged election laws was sued in *League of Women Voters of N.C.* only further supports Plaintiffs' position in this case. It again demonstrates that the proper defendant in intent cases is the state officer enforcing the law, not the legislative body that passed the law. Accordingly, Defendants' attempts to distinguish each of these cases not only fail, but they reinforce the validity of Plaintiffs' argument and demonstrate that Plaintiffs have standing to sue the named Defendants in this case.

### C. Plaintiffs' Intentional Discrimination Claims are Not Superfluous and Plaintiffs Have a Right to Litigate All of Their Claims In This Proceeding

Defendants also argue for the first time that the Court should uphold its dismissal of Plaintiffs' intentional discrimination claims because they are superfluous. This argument is not only irrelevant to the issue before the Court, it is patently wrong. Plaintiffs' Amended Complaint contains five separate counts for relief. Count I encompasses Plaintiffs' Section 2 claims under the Voting Rights Act and Count II encompasses Plaintiffs' *Anderson-Burdick* and rational basis claims. For the most part, success on these claims is proven by the actual or anticipated effect of the voter ID law on Virginia citizens.[6] In contrast, Counts IV and V are intent-based claims. For an intent-based claim, the actual or anticipated effect of the voter ID law is not at issue. Rather, the claim is proven by looking at the motivations behind the passage of the law. Thus, at their cores, Plaintiffs' intent claims are fundamentally different than the claims in Counts I and II of Plaintiffs' Amended Complaint and, accordingly, are not superfluous.

Moreover, even if Counts IV and V were superfluous, it is well settled under the Federal Rules of Civil Procedure that a party may state as many separate claims and legal theories as he or she has. Fed. R. Civ. Proc. Rule 8(d)(3); *see also Munzer v. Swedish Am. Line*, 30 F. Supp.

---

[6] A Section 2 claim can also be proven by intent, and Plaintiffs intend to do so at trial.

789, 790 (S.D.N.Y. 1939) ("[A] party may state as many separate claims as he has and he is not bound to select a particular theory upon which he seeks a judgment.") (citation omitted). Thus, even if there was some validity to Defendants' argument, which there is not, dismissing Plaintiffs' intentional discrimination claims on these grounds would be wholly improper. Accordingly, Defendants' argument on this point fails.

## CONCLUSION

For the reasons stated herein and in Plaintiffs' Motion for Reconsideration and Memorandum in Support thereof, Plaintiffs respectfully request that this Court reconsider its dismissal of Counts IV and V of Plaintiffs' Amended Complaint and, upon reconsideration, that the Court reinstate Plaintiffs' claims.

Respectfully submitted,

DATED: February 2, 2016

By: */s/ Amanda R. Callais*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
Aria Branch (VSB # 83682)
Amanda R. Callais (VSB # 85891)
Ceridwen Cherry (admitted *pro hac vice*)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com
Email: EFrost@perkinscoie.com
Email: ABranch@perkinscoie.com
Email: ACallais@perkinscoie.com
Email: CCherry@perkinscoie.com

- 14 -

        Joshua L. Kaul (admitted *pro hac vice*)
**PERKINS COIE LLP**
1 East Main Street, Suite 201
Madison, WI 53703-5118
Telephone: 608.663.7460
Facsimile: 608.283.1007
Email: JKaul@perkinscoie.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    On February 2, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Dana J. Finberg
Arent Fox LLP
55 Second Street, 21st Floor
San Francisco, CA 94105
Tel: 415.757.5500
Fax: 415.757.5501
dana.finberg@arentfox.com

Mark F. (Thor) Hearne, II
Arent Fox LLP
112 S. Hanley Road, Suite 200
Clayton, MO 63105
Tel: 314.296.4000
Fax: thornet@ix.netcom.com

Stephen G. Larson
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Tel: 213.629.7400
Fax: 213.629.7401
stephen.larson@arentfox.com

*Attorneys for Defendants*

                By */s/ Amanda R. Callais*
                Amanda R. Callais (VSB #85891)
                Perkins Coie LLP
                700 13th St. N.W., Suite 600
                Washington, D.C. 20005-3960
                Phone: (202) 654-6396
                Fax: (202) 654-9106
                ACallais@perkinscoie.com

                *Attorney for Plaintiffs*