## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

BARBARA H. LEE, *et al.*,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　)　　　Civil Action No. 3:15CV357–HEH
　　　　　　　　　　　　　　　　)
VIRGINIA STATE BOARD OF　　　　)
ELECTIONS, *et al.*　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　)

### MEMORANDUM OPINION
**(Defendants' Motion to Exclude Expert Testimony of Lorraine Minnite)**

This lawsuit challenges the constitutionality of Virginia's law requiring voters to present photographic identification before casting ballots. Presently before the Court is Defendants' Motion to Exclude Expert Testimony of Lorraine Minnite as both irrelevant and unreliable. Defendants contend that her conclusions are analytically unsound and founded on questionable data and sources.

Among the experts designated by Plaintiffs in this case is Dr. Lorraine C. Minnite ("Dr. Minnite"), an associate professor of political science at Rutgers University. As required by this Court's discovery order, Dr. Minnite filed an extensive expert report detailing her "expert analyses and opinions regarding the incidence of voter fraud in American elections; the reasons for allegations of widespread voter fraud; and voting restrictions, both in elections nationwide and in the Commonwealth of Virginia." (Defs.' Mot. to Exclude Expert Test., Ex. A at 3, hereinafter "Expert Report," ECF No. 130-1.) Dr. Minnite concludes in her expert report that widespread allegations of voter fraud as

rampant are unsupported by empirical evidence. Her research has convinced her that the incidents of voter fraud in Virginia—and nationally—are exceedingly rare but not nonexistent. Finally, Dr. Minnite concludes that "[h]aving no basis in fact, [allegations of widespread voter fraud] are usually motivated by political interests, and are designed to make voting harder for certain populations." (Expert Report 3.)

This Court has thoroughly reviewed Dr. Minnite's expert report, as well as memoranda filed by each party supporting their respective positions. The admissibility of expert testimony is governed by Federal Rule of Evidence 702.[1]

Application of Rule 702 is further informed by the teachings of *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Importantly, the standards articulated in *Daubert* do not turn on whether the proffered opinion is correct, but whether its foundation is reliable.[2]  In describing the gate-keeping function established in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Another critical consideration is whether the expert's opinion

---

[1] Federal Rule of Evidence 702 states:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

[2] The test of reliability discussed in *Daubert* is "'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. The law grants wide latitude to a district court in assessing reliability. *Id.* at 142.

would be potentially helpful to the trier of fact. *See United States v. Lespier*, 725 F.3d

437, 449; *cert. denied*, 134 S. Ct. 974 (2014). Although the rule announced in *Daubert*

focused on scientific testimony, the United States Supreme Court in *Kumho Tire* clarified

its broader application to all expert testimony falling within the ambit of Rule 702.

*Kumho Tire*, 526 U.S. at 141.

The Defendants' challenge has two broad facets: Dr. Minnite's opinion is

unmoored to the specific facts of the case at hand, and "there is simply too great an

analytical gap between the data and the opinion proffered." (Defs.' Mot. to Exclude 3,

ECF No. 130.) Statistically, the Defendants maintain that Dr. Minnite employs an overly

restrictive definition of voter fraud, namely "the intentional corruption of the voting

process by voters." (*Id.*) Defendants further point out that Dr. Minnite's analysis relies

only on reports of voter fraud which result in prosecution.   In their view, her opinion

seems to imply that if a reported incident of voter or election fraud does not result in an

actual prosecution, it is either unfounded or irrelevant.[3] Defendants also take issue with

Dr. Minnite's conclusion that the issue of voter fraud is politically contrived and that

voter identification laws are irrational and serve no public policy purpose. (Defs.' Mot.

to Exclude 4.) Based on the absence of any compelling reason supporting the General

Assembly's enactment of the voter ID law, Defendants argue that Dr. Minnite appears to

conclude that its only logical purpose is suppression of minority votes.

Plaintiff's counter that Dr. Minnite is a "preeminent expert on voter fraud in

---

[3] In Virginia, discretion to determine which cases merit prosecution is vested by statute in elected Commonwealth's Attorneys in each jurisdiction. Va. Code § 15.2-1627(B).

American elections." (Pls.' Opp'n to Mot. to Exclude 2, ECF No. 137.) They add that "not a single court has questioned her qualifications to offer expert testimony in cases like this one." (*Id.*) Plaintiffs note that other courts and respected social scientists have uniformly accepted her methodology and research in the area of voter fraud. (*Id.*)

Plaintiffs maintain that Dr. Minnite's expert opinion is highly relevant to this Court's assessment of the General Assembly's rationale for adopting the voter ID law in question and whether it presents a genuine threat to the electoral process.

The overarching hypothesis of Dr. Minnite's analysis of voter fraud prosecution statistics is that there is simply no rational basis for the General Assembly's enactment of the voter ID law in the Commonwealth of Virginia—despite the fact that over two dozen other states have done so. (Expert Report 15, n.44; 16, n.46.) Defendants are correct that her statistical base marginalizes allegations which do not result in prosecution. (Expert Report 21.) Dr. Minnite also acknowledges that there appears to be no reliable database or tracking system to assess with accuracy the number of complaints or allegations of voter fraud in Virginia. She maintains that her research has revealed that most reported election irregularities do not involve actual fraud (*id.* 9–14) and would not affect the outcome of elections.[4] Drawing on this deduction, she concludes that there is no systemic problem of voter fraud in Virginia warranting legislative action.

Dr. Minnite's viewpoint is arguably at odds with the Supreme Court's opinion in *Crawford v. Marion County Election Board* where the Court observed that the voter

---

[4] Dr. Minnite does not conclude that voter fraud is nonexistent, but only that "it rarely exists." (Pls.' Opp'n to Mot. to Exclude 5.)

identification law passed in Indiana was "amply justified by the valid interest in protecting 'the integrity and reliability of the electoral process.'" 553 U.S. 181, 204 (2008) (internal citations omitted). In *Crawford*, Justice Stevens writing for the court,

> closely related to the State's interest in preventing voter fraud, public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process. As the Carter-Baker Report observed, the electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of the voters.

*Id.* at 197 (internal quotation marks and citations omitted). Much of Dr. Minnite's expert opinion appears to take issue with the reasoning of the court in *Crawford*.

In the final analysis, this Court concurs with Plaintiffs that Dr. Minnite's expert opinion on the extent of voter fraud in the Commonwealth of Virginia, and its effect on the electoral process, is sufficiently relevant and reliable to satisfy the standard articulated in *Daubert.* 509 U.S. at 589.[5] The depth of data relied upon by Dr. Minnite is grist for the cross-examination mill, not a bar to admissibility. Her assessment of the effect of voter fraud on the integrity of the electoral process stands on equal footing. This Court, however, hastens to add that the task of assessing the magnitude of a perceived problem and determining what legislative action is appropriate is the statutory and constitutional duty of the General Assembly.

While the Court will deny Defendants' Motion to Exclude Dr. Minnite's testimony in its entirety, some limitations are appropriate. Dr. Minnite will not be permitted to comment on the wisdom or reasoning of the Supreme Court's decision in *Crawford*.

---

[5] Of course, Dr. Minnite's opinion must be premised on an appropriate foundation and otherwise comply with the Rules of Evidence.

Furthermore, she may not speculate or opine on the deliberative process or motives of the General Assembly, or any of its members, without evidentiary support.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Dated: **Feb. 10, 2016**
Richmond, Virginia

6